as filed with the SEC; and (d) pleadings and papers (including related materials) filed in various court proceedings by the various parties to this action.

## PARTIES TO THE ACTION

1.  Vivos Holdings, LLC ("Vivos Holdings") is a limited liability company organized under the law of the Commonwealth of Virginia with its principal place of business at 22 Baltimore Road, Rockville, Maryland 20850. It is managed by Dr. Naveen Doki.

2.  Vivos Real Estate Holdings, LLC ("Vivos REH") is a limited liability company organized under the law of the Commonwealth of Virginia with its principal place of business at 22 Baltimore Road, Rockville, Maryland 20850. It is managed by Dr. Naveen Doki.

3.  Vivos REH is the owner of the property located at 22 Baltimore Road, Rockville, MD 20850.

4.  Dr. Naveen Doki is an individual over the age of 18 who resides in the Commonwealth of Virginia and works as a hematologist in Virginia.

5.  Maslow Media Group, Inc. ("Maslow") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business at 22 Baltimore Road, Rockville, MD 20850.

6.  Maslow is a workforce solution company that offers managed services, employer of record services, staffing and executive services, and video production services.

7.  Reliability Incorporated is a corporation organized under the laws of the State of Texas in 1953 with its principal place of business at 22 Baltimore Road, Rockville, MD 20850. From 1971 to 2007, Reliability was principally engaged in the design, manufacture, market, and support of high-performance equipment used to test and condition integrated circuits. This business was closed down in 2007.

4

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 2 of 150

8. Between 2007 and 2019, Reliability has had no operating activities and remained a "shell company" as defined by the United States Securities Exchange Act of 1934, as amended, (the "Exchange Act").

9. Reliability's Common Stock is currently quoted on the OTCQB of the OTC Marketplace under the symbol of "RLBY"

10. Nicholas Peter Tsahalis is an individual who on information and belief resides at 12124 Skylark Rd., Clarksburg, MD 20871.

11. Speck is an individual, who on information and belief resides at 43033 Lago Stella Place, Ashburn, Va. 20148.

12. Lone Star Value Management, LLC ("Lone Star Management"), is a Connecticut limited liability company with its principal place of business located at 53 Forest Av, Old Biblewich, CT 06870.

13. Jeffrey E. Eberwein is an individual, and on information and belief, is resident of Connecticut.

14. Mr. Eberwein is the sole member of Lone Star Management.

## JURISDICTION AND VENUE

15. Jurisdiction is vested in this Court pursuant to Maryland Code, Courts and Judicial Proceedings Article ("CJP") §6-102 and §§6-103(b)(1) and (2).

16. Venue is proper in this Court pursuant to Maryland Code, CJP § 6-201 because the cause of action arose in Montgomery County, Reliability and Maslow's principal offices in Maryland are in Montgomery County, Tsahalis and Speck are employed by Reliability and Maslow in Montgomery County, Maryland and as the Directors and Officers of Reliability and Maslow often conduct business in Montgomery County, Maryland.

17.    All of the acts or omissions giving rise to the claims alleged in these papers were committed in the State of Maryland.

## FACTS COMMON TO ALL COUNTS

18.    Vivos Holdings and Vivos REH are owned and controlled by Dr. Naveen Doki and his business partner Dr. Silvija Valleru.

### *Vivos Intercompany Promissory Notes & Guanrantee*

19.    On November 9, 2016, Vivos Holdings acquired 100% of Maslow through a stock purchase, which Vivos has fully-paid.

20.    Maslow originally focused on providing qualified production crews to Washington, D.C.'s television, cable, and multimedia outlets. Over time, Maslow expanded its reach, adding managed services, employer of record services, and executive recruiting services to clients throughout the United States.

21.    On November 15, 2016, Maslow executed an intercompany promissory note receivable with Vivos Holdings in the amount of $1,400,000. (Herein after referred to as "Intercompany Promissory Note 1").

22.    As defined by the Intercompany Promissory Note 1, the loan consisted of two periods, whereby the first period from November 15, 2016 until September 30, 2018, no principal or interest payments were required. Interest accrued monthly and a new loan in the amount of $1,773,439 was due on September 20, 2023.

23.    On November 15, 2017, Maslow executed an intercompany promissory note receivable with Vivos Holdings Real Estate, LLC in the amount of $771,928. (Hereinafter referred to as "Intercompany Promissory Note 2")

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 4 of 150

24.     As defined Intercompany Promissory note 2, the loan consists of two periods, whereby during the first period from November 15, 2017 until March 31, 2018, no principal or interest payments are required. During the first loan period, interest accrued monthly and the new loan amount of $780,947 was subject to a second loan period. The principal balance plus accrued and unpaid interest is due on March 31, 2023("Intercompany Promissory Note 2").

25.     Effective March 31, 2019, the terms on the second phase of Intercompany Note 2 receivables were changed. Accrued interest on a quarterly basis began to be capitalized into the principle instead of being paid as per the original agreement.

26.     Intercompany Promissory Note 1 and Intercompany Promissory Note 2 as amended, are herein after collective defined as "Vivos Intercompany Promissory Notes".

27.     Although the Vivos Intercompany Promissory Notes do not mature until 2023, on June 12, 2019, Dr. Doki, personally guaranteed to Maslow repayment of $3,000,000 of the balance all indebtedness incurred with Maslow by Vivos Holdings, LLC within the 2019 calendar year via cash, stock, or other business assets.

28.     The parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made by any of the Makers in 2019 or prior to the maturity date of the Vivos Intercompany Promissory Notes in 2023.

29.     It was agreed, understood and contemplated by the parties that Dr. Doki will not make such cash contributions to Maslow prior to the maturity dates of the Vivos Intercompany Promissory Notes but rather through mergers with other entities and stock transfers.

30.     On September 5, 2019, Maslow entered into a Promissory Note agreement with Vivos Holdings, in the principal amount of $750,000 to be paid monthly between December 2019 and November 2026.

31.     In connection with the transaction described above, Maslow was required to pay management fees to Vivos Management Company, LLC.

### *Maslow under Vivos' Management*

32.     While managed by Vivos Management, Maslow's Revenue for the twelve months ending on December 31, 2018 increased 7.4% to $37,637,982 as compared to $35,059,999 for the twelve months that ended December 31, 2017.

33.     Maslow's Gross Profits for the same period increased by 1.5% to $3,864,463 from $3,806,430 for the twelve months ending on December 31, 2017.

34.     Maslow, while under the control of and while being managed by Vivos Management Company, LLC, hired Third-Party Defendants Tsahalis and Speck, as at will employees, primarily to expand Maslow's business.

35.     Tsahalis and Speck were specifically hired and charged with the responsibility to expand Maslow's domestic coverage by acquiring specialized staffing and workforce management organizations that allow it to grow and strengthen its geographic reach, prime customer relationships, customer count, and core capabilities.

36.     Further, Tsahalis and Speck were charged with continuing to enhance Maslow's core competencies through potential acquisitions of businesses with strong staffing and solution specialties.

### *The Maslow Merger Agreement*

37.     On September 18, 2019, a merger agreement (the "Maslow Merger Agreement") was entered into among (i) Reliability, (ii) R-M Merger Sub, Inc., a Virginia corporation and a wholly owned subsidiary of Reliability ("Merger Sub"), (iii) Maslow, (iv) Jeffrey Eberwein ("Eberwein"), (v) Naveen Doki ("Dr. Doki") and (vii) Dr. Silvija Valleru.   A copy of the Maslow

Merger Agreement is attached as **Exhibit 1** and is incorporated herein by reference.

38.     The Maslow Merger Agreement provided for, among other things, a business combination whereby Merger Sub will merge with and into Maslow, with Maslow as the surviving entity (the "Merger").

39.     In Paragraph 2.03 of the Maslow Merger Agreement, the Parties agreed, inter alia, as follows:

> … (b)  The Articles of Incorporation of Maslow shall be the Articles of Incorporation of the Surviving Company, until duly amended or repealed in accordance with the provisions thereof and of applicable Law; and
>
> (c)     The Bylaws of Maslow shall be the Bylaws of the surviving Company, until duly amended or repealed in accordance with the provisions thereof and of applicable Law.

40.     In Paragraph 10.09 of the Maslow Merger Agreement, the Parties agreed as follows:

> This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by all of the Parties, … No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by such Party. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

41.     Under the Maslow Merger Agreement, the parties contemplated that, given the equity being acquired by or on behalf of Third-Party Plaintiffs, they would constitute a majority of the board of directors of Reliability.

42.      In Paragraph 2.15(c) of the Maslow Merger Agreement, the parties specifically

agreed that at the Closing, the

> "Reliability Board shall elect Naveen Doki, Silvija Valleru, Shirisha
> Janumpally, Mark Speck to the Reliability Board, and one current
> member of the Reliability Board as designated by Mr. Eberwein
> shall remain on the Reliability Board for a period of two years
> following the Closing, and all other directors shall resign when such
> election is complete, leaving those five named individuals as the
> sole directors of Reliability. Notwithstanding the foregoing, Mr.
> Eberwein shall retain the option to remain an observer to the
> Reliability Board for a period of two years following the Closing,
> provided that Reliability may exclude Mr. Eberwein from such
> observer rights to the extent that Reliability is advised by legal
> counsel that such exclusion is required in connection with the
> fiduciary or other duties of the Reliability Board."

*See* **Exhibit 1** ¶ 2.15(c).

43.      Under the Maslow Merger Agreement, at Closing, "the officers of Reliability as

of immediately before the Closing shall resign, and the Reliability Board, as newly constituted

under Section 2.15(c), shall elect new officers of Reliability, Maslow, and each corporation or

other entity as to which Reliability or Maslow owns, directly or beneficially, a majority of the

voting power." See **Exhibit 1** ¶ 2.15(c).

*Maslow Articles of Incorporation and Bylaws*

44.      Maslow is a Virginia Corporation and is governed by the laws of the

Commonwealth of Virginia.  Attached hereto and incorporated herein as **Exhibit 2** is a copy of

Maslow's corporate documents including the operative Articles of Incorporation and Bylaws.

45.      The Maslow Articles of Incorporation do not provide that Maslow's Directors

may be removed only for cause. *See* **Exhibit 2**.

46.      Pursuant to the Maslow Articles of Incorporation and applicable law, the

Maslow shareholders were vested with the authority to remove one or more directors with or

without cause.

47.       Section 2 of Maslow's Bylaws provides, in pertinent part. "Special meetings of the stockholders for any purpose o[r] purposes, unless otherwise prescribed by statute. may be called by the president or by the directors, **and shall be called by the president at the request of the stockholders of not less than two-thirds of all outstanding shares of the corporation entitled to vote at the meeting.**"  (Emphasis added).

48.       Maslow's Bylaws provide in paragraph 9 that "… Directors may be removed without cause only by majority vote of the stockholders."

49.       On or before October 29, 2019 Maslow's majority shareholders were as follows:

| | |
|---|---|
| Dr. Naveen Doki | 3.9% |
| Dr. Dr. Silvija Valleru | 1.95% |
| Judos Trust | 62.48% |
| Igly Trust | 15.62% |
| Shirisha Janumpally | 3.9% |
| Federal Systems | 7.81% |
| Kalyan Pathuri | 1.95% |
| Others | 2.39% |

50.       As a result of the multimillion-dollar investment in Reliability, the Maslow shareholders wanted to condition the Merger on having control of the new board and thus required that Dr. Naveen Doki, Dr. Silvija Valleru, and Dr. Shirisha Janumpally be appointed to the new Reliability Board after the merger to make sure their investment are protected  and to have a say in the management of the company after the merger.

*Reliability's Bylaws*

51.       Section 4.1 of Reliability's 04/06/2007 Amended and Restated Bylaws, a copy of which is attached as **Exhibit 3** and is incorporated herein by reference, provides, *in pertinent part*, as follows:

11

The business and affairs of the Company shall be managed and controlled by the board of directors; and, subject to any restrictions imposed by law, by the articles of incorporation, or by these bylaws, the board of directors may exercise all the powers that the Company is authorized to exercise. The board of directors shall consist of six (6) members. Such number may be increased or decreased by amendment of these bylaws, provided that no decrease shall effect a shortening of the term of any incumbent director. Directors need not be residents of Texas or shareholders of the Company absent provision to the contrary in the articles of incorporation or laws of the State of Texas. Except as otherwise provided in Section 4.3 of these bylaws, each position of the board of directors shall be filled by election at the annual meeting of shareholders. Any such election shall be conducted in accordance with Section 3.8 of these bylaws.

Each person elected a director shall hold office, unless removed in accordance with Section 4.2 of these bylaws, until the next annual meeting of the shareholders and until his successor shall be been duly elected and qualified.

52.     Section 4.2 of Reliability's 03/12/2004 Amended and Restated Bylaws,

provides, in pertinent part, as follows:

Any director or the entire board of directors may be removed from office, with or without cause, at any special meeting of shareholders by the affirmative vote of a majority of the shares of the shareholders present in person or by proxy and entitled to vote at such meeting, if notice of the intention to act upon such matter shall have been given in the notice calling such meeting. If the notice calling such meeting shall have so provided, the vacancy caused by such removal may be filled at such meeting by the affirmative vote of a majority in number of the shares of the shareholders present in person or by proxy and entitled to vote.

Each person elected a director shall hold office, unless removed in accordance with Section 4.2 of these bylaws, until the next annual meeting of the shareholders and until his successor shall be been duly elected and qualified.

53.     Section 6.10 of Reliability's 03/12/2004 Amended and Restated Bylaws

addressees Indemnification of Officers and Directors and provides, *inter alia*, as follows:

The Company shall indemnify to the full extent allowed by law any person who was or is a party or is threatened to be made a party to

any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit, or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding by reason of the fact that he is or was a director, officer, employee, or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee, partner, venturer, proprietor, trustee, agent, or similar functionary of another corporation, partnership, joint venture, trust, other enterprise, or employee benefit plan.

This indemnification shall, to the extent permitted by law, be against judgments, penalties, fines, settlements and reasonable expenses actually incurred in connection with such investigation, action, suit or proceeding but if the person is found liable to the Company or is found liable on the basis that personal benefit was improperly received by the person, indemnification shall be limited to reasonable expenses actually incurred by the person in connection with the proceeding and shall not be made in respect of any proceedings in which the person shall have been found liable for willful or intentional misconduct in the performance of his duty to the Company. **A person acting in his official capacity as a director of the Company must have conducted himself in good faith and reasonably believed his actions to have been in the Company's best interests. A person acting in any other capacity must have conducted himself in good faith and reasonably have believed his actions were not opposed to the Company's best interests**. In the case of any criminal proceeding, indemnification requires that the person indemnified have had no reasonable cause to believe his conduct was unlawful.

Any indemnification under this section shall be made by the Company only as authorized in the specific case upon a determination that indemnification is proper because the director, officer, employee or agent **has met the applicable standard of conduct as set forth in the laws of the State of Texas**, and the amount of indemnification (before or after termination of the proceedings) shall be made only as set forth in the laws of the State of Texas. Such determinations shall be made as set forth in the laws of the State of Texas.

Any indemnification of or advance of expenses with respect to an action, suit, proceeding or investigation to any officer, director, employee, or agent of the Company shall be reported in writing to the shareholders with or before the notice or waiver of notice of the next shareholder's meeting or with or before the next submission to

shareholders of a consent to action without a meeting pursuant to Section 3.14 hereof and, in any case, within the twelve-month period immediately following the date of the indemnification or advance.

*          *          *

54.      Section 6.12 of Reliability's 03/12/2004 Amended and Restated Bylaws addressees Meeting by phone and provides, inter alia, as follows:

> Meetings by Telephone. Subject to the provisions required or permitted by these bylaws or the laws of the State of Texas for notice of meetings, shareholders, … may participate in and hold any meeting required or permitted under these bylaws by telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other. Participation in a meeting pursuant to this Section shall constitute presence in person at such a meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

55.      Section 7.1 of Reliability's 03/12/2004 Amended and Restated Bylaws addresses alternations or amendments to the Bylaws and provides, *in pertinent part*, as follows:

> These bylaws may be altered, amended, or repealed, or new bylaws may be adopted, by a majority of the board of directors at any duly held meeting of directors, provided that notice of such proposed action shall have been contained in the notice of any such meeting, unless the articles of incorporation or the laws of the State of Texas reserve the power exclusively to the shareholders in whole or in part, or the shareholders in amending, repealing or adopting a particular bylaw expressly provide that the board of directors may not amend or repeal that bylaw. Unless the articles of incorporation or a bylaw adopted by the shareholders provides otherwise as to all or some portion of the Company's bylaws, the holders of a majority of the shares represented at any duly held meeting of the shareholders, provided that notice of such proposed action shall have been contained in the notice of any such meeting, may amend, repeal or adopt the Company's bylaws.

56.      On April 6, 2007 Reliability's Board of Directors Amended only Section 4.1 of the company's Amended and Restated Bylaws.  Attached hereto and incorporated herein as

**Exhibit 4** is a copy of the April 6, 2007 Amendment to Section 4.1.

57.      Section 4.1 of the April 6, 2007 Amended and Restated section 4.1 of the Bylaws

provides as follows:

> The business and affairs of the Company shall be managed and controlled by the board of directors; and , subject to any restrictions imposed by law, by the articles of incorporation, or by these bylaws, the board of directors may exercise all the powers that the Company is authorized to exercise. The board of directors shall consist of six (6) members. Such number may be increased or decreased by amendment of these bylaws, provided that no decrease shall effect a shortening of the term of any incumbent director. Directors need not be residents of Texas or shareholders of the Company absent provision to the contrary in the articles of incorporation or laws of the State of Texas. Except as otherwise provided in Section 4.3 of these bylaws, each position of the board of directors shall be filled by election at the annual meeting of shareholders. Any such election shall be conducted in accordance with Section 3.8 of these bylaws.

> Each person elected a director shall hold office, unless removed in accordance with Section 4.2 of these bylaws, until the next annual meeting of the shareholders and until his successor shall be been duly elected and qualified.

### *Conspiracy to defraud Dr. Doki and Maslow's Shareholders and to induce the Merger*

58.      After the parties entered into the Maslow Merger Agreement, Dr. Naveen Doki,

Dr. Silvija Valleru, and Shirisha Janumpally, were informed by Speck that because of the Vivos

Intercompany Promissory Notes, they could not serve on Reliability's Board of Directors after the

merger.

59.      Eberwein, individually and as the agent of Lone Star Management, recognized

that if Dr. Naveen Doki, Dr. Silvija Valleru, and Shirisha Janumpally could not be appointed to

the post-merger Board of Directors as provided in the Maslow Merger Agreement, he and Lone

Star Management would lose a multimillion dollar opportunity that they would gain as a result of

the Maslow merger.

60.    Speck also recognized that without the Maslow merger he could not secure any interests in Reliability and will be unable to personally profit form the Maslow Merger.

61.    Eberwein, individually and as agent of Lone Star Management, then conspired with Speck and Tsahalis to induce Dr. Doki and Dr. Valleru to waive the requirements stated in Section 10.09 of the Maslow Merger Agreement and to induce them to proceed with the Maslow Merger Agreement.

62.    Specifically, a few days before the Closing, on October 21, 2019, Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, represented to Dr. Doki and Dr. Valleru that in accordance with Reliability's Bylaws and the applicable law, if they consent, then Eberwein and Speck will appoint new members as recommended by Dr. Doki and the majority shareholders of Reliability.

63.    They also represented that if De. Doki agreed to the merger, the new Board of Directors which will be comprised of Mr. Speck, Ms. Bible, one of Lone Star's employees and agents, will appoint those Board members recommended by Dr. Doki and Dr. Valleru, and that Dr. Doki and the resulting majority shareholders of Reliability, will have the authority to remove any directors for cause or no cause and to replace any member of the Reliability Board for cause or no cause.

64.    At the time those representations were made Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis knew those representations were false as they had already agreed that they would not approve any members recommended by Dr. Doki and Dr. Valleru and they agreed not to allow them to have a majority representation on the Board since they intended to shut them out and divest them of their voting rights immediately upon completion of the merger between Maslow and Reliability.

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 14 of 150

65.     Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis represented to Dr. Doki and Dr. Valleru that their investment in Reliability will be protected after the merger even if they were not on the board, as they will be able to always remove and appoint Reliability's Board of Directors after the merger as a result of their voting rights..

66.     This representation was untrue when made as Eberwein, Tsahalis and Speck had already agreed to shut out Dr. Doki and the other post-merger shareholders as they perceived them as ignorant investors.

67.     Those Representations were false at the time they were made, as Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis had agreed to shut out those shareholders whom they perceived as ignorant and self-serving, from electing any members of the board or to have any say in the direction in which Maslow was to proceed in the future.

68.     Speck and Tsahalis, because of their positions of control and authority as officers and/or directors of pre-merger Maslow, were able to, and did, directly and/or indirectly, exercise control over the various misleading statements disseminated by them to Dr. Doki and Dr. Valleru to induce the Third-Party Plaintiffs to proceed with the Maslow merger.

69.     Because of their advisory, executive, managerial and directorial positions, each of Speck and Tsahalis during the period between October 21, 2019 and the Closing in which they held their respective positions had access to adverse, non-public information about Lone Star's scheme and their plan to shut out the shareholders immediately after Closing and to proceed with the scheme to divest them of their voting rights and to entrench themselves as the members of the Board to do as they will with the assets of Malow and to act against the shareholders interest in

Reliability.

70.     Tsahalis and Speck hid that information from the Third-Party Plaintiffs.

71.     The third-Party plaintiffs were justified to rely on the false representation made by Tsahalis and Speck, as they were officers of Maslow and owed Dr. Doki and the pre-merger Maslow shareholders fiduciary obligations at the time.

72.     Speck, Tsahalis, and Eberwein, individually and as the agent of Lone Star Management, made the misrepresentations to Dr. Doki and Dr. Valleru solely to implement the scheme they devised to obtain full control of Maslow after the merger, to shut out the Reliability post-merger shareholders whom they perceived as ignorant and self-serving, and to secure a huge windfall for themselves by giving themselves huge salaries and bonuses and ultimate control of Maslow and Reliability.

73.     Speck, Tsahalis, and Eberwein, individually and as the agent of Lone Star Management, failed to reveal material facts concerning their scheme, such that Third-Party Plaintiffs and other Maslow shareholders could have made informed decisions about merger between Maslow and Reliability.

74.     Naveen Doki and Dr. Silvija Valleru, had no way of finding out that Maslow's employees, Speck and Tsahalis were conspiring with Mr. Eberwein, individually and as the agent of Lone Star Management, to defraud them from their interest in Maslow and to shut them out after the merger with Reliability.

75.     In reliance on those false representations, on October 23, 2019 Dr. Doki and Dr. Valleru agreed to authorize the merger between Maslow and Reliability and waived the requirements of Section 10.09 of the Merger Agreement. *See* **Exhibit 5**.

76.     Eberwein, individually and as the agent of Lone Star Management, as well as

Speck and Tsahalis made those false representations with the intent to defraud the Third-Party Plaintiffs to proceed with the Closing.

77.     But for the false representations, Third-Party Plaintiffs would not have proceeded with the Closing, would not have waived the provision of paragraph 10.09 of the merger Agreement and would have sought to rescind the Maslow Merger Agreement as having a majority representation on the Reliability Board of Directors was a material condition of the Maslow Merger Agreement.

78.     At the time the representations were made by Eberwein, Tsahalis and Speck to induce Dr. Doki and Dr. Valleru to modify the Merger Agreement, Speck, Tsahalis and Eberwein knew that those representation were false as they had agreed to shut them out after the merger.

79.     At the time the Representations were made, Eberwein, Tsahalis and Speck did not intend to elect the board members recommended by the Third-Party Plaintiffs or to allow them to call any Special Shareholder meeting for the specific purpose of appointing or removing any members of the post-merger Reliability Board of Directors if they were to remove either one of them from the Board.

80.     The Representations were made intentionally, to obtain Third-Party Plaintiff's commitment to proceed with the Closing, and to tie up and control Maslow.

*Long Star Agreements*

81.     On October 28, 2019, after inducing Naveen Doki to proceed with the Closing, one day in advance of the Closing of the Maslow Merger Agreement, Reliability entered into a debt conversion agreement with LSV Co-Invest and another one with LSV Investors (together, the "Debt Conversion Agreements"), whereby Reliability converted substantially all of its issued and outstanding liabilities and debts into 1,085,307 shares of its authorized, issued and outstanding

common stock, pursuant to which $50,000 and $70,000 in principal and interest accrued through September 18, 2019, was converted into 514,893 and 570,414 shares of Reliability's common stock for LSV Investors and LSV Co-Invest, respectively.

82. Lone Star Value Management was the investment manager of Lone Star Value Investors, LP and Lone Star Value Co-Invest I, LP

83. As of the date of the Debt Conversion Agreements, each of LSV Investors and LSV Co-Invest were significant shareholders of Reliability's common stock.

84. Since April 25, 2014, Hannah Bible was and continues to be a paid executive employee of Lone Star Value Management, the investment manager of Lone Star Value Investors, LP and Lone Star Value Co-Invest I, LP and the record owners of the majority of Reliability's stock before the merger.

85. Since April 25, 2014 until the present, Hannah Bible has been appointed as one of Reliability's Board of Directors.

86. At all relevant times to the Maslow Merger Agreement and until the closing on October 29, 2019, Ms. Bible was acting as the President and Chief Executive Officer of Reliability.

*The Closing*

87. The Merger Closed in accordance with the terms of the Maslow Merger Agreement on October 29, 2019 ("Closing").

88. The Merger was consummated on October 29, 2019 by the filing of a Articles of Merger with the Secretary of the Commonwealth of Virginia and by making other filings or recordings required under the Virginia Stock Corporation Act in connection with the Merger. A copy of the Articles of Merger is attached as **Exhibit 6** and is incorporated herein by reference.

89. At the Closing, the members of the Reliability Board of Directors consisted of

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 18 of 150

Hannah Bible, Shawn Miles, and Julia Dayton.  They subsequently elected Speck to serve on the Reliability Board of Directors.

90.     As per the Malow Merger Agreement, Eberwein remained on the Reliability Board as an observer.

91.     Although Reliability's Bylaws required six (6) Directors, consistent with the conspiracy between Speck, Tsahalis and Eberwein, immediately upon electing Mr. Speck on the Board, each of Mr. Miles and Ms. Dayton resigned from Reliability's Board of Directors as ordered by Eberwein.

92.     Pursuant to the Maslow Merger Agreement, at Closing, the separate corporate existence of Merger Sub ceased, and Maslow continued as the surviving corporation and a wholly owned subsidiary of Reliability.

93.     Pursuant to the Maslow Merger Agreement, at Closing, Merger Sub, merged with and into Maslow.

94.     Pursuant to the Maslow Merger Agreement, at Closing, Maslow became the surviving corporation and became Reliability's wholly owned subsidiary.

95.     Pursuant to the Maslow Merger Agreement, at Closing, all of the outstanding Maslow Common Stock was converted into shares of Reliability Common Stock.

96.     As a result of the Closing, Reliability ceased to be a "shell" company as defined by Rule 12b-2 of the U.S. Exchange Act and solely by virtue of its ownership of Maslow became an indirect operating entity.

97.     At Closing, all shares of Maslow common stock issued and outstanding were converted into a number of shares of Reliability common stock constituting 94% of the total issued and outstanding shares of Reliability common stock

21

98.     As a result of the Merger, Reliability acquired the business of Maslow and continued the existing business operations of Maslow as a publicly traded company under the name Reliability Incorporated.

99.     Reliability is not quoted on any exchange that has director independence requirements, or any other exchange. Its Common Stock is quoted on the OTC Marketplace, which does not have director independence requirements.

100.    SEC rules do not require OTC quoted companies to have independent members on their board of directors or have standing audit, compensation or nominating committees of their board.

101.    The shareholders of Reliability as of immediately prior to the Closing collectively retained a total aggregate number of shares of Reliability common stock constituting 6% of the issued and outstanding shares of Reliability common stock immediately following the effective time of the Merger.

102.    As a result of the Closing each of (1) Speck together with his entity, Hawkeye Enterprises, Inc., and (2) Tsahalis were issued 1% interest in Reliability.

103.    The following is a list of all known shareholders of Reliability, and its sole subsidiary, Maslow after the Closing:

| | |
|---|---|
| Speck & Hawkeye Enterprises, Inc. | 1.1% |
| Tsahalis | 1.1% |
| Dr. Naveen Doki | |
| Federal Systems | |
| Judos Trust | |
| Dr. Shirisha Janumpally | 69.13% |
| and Dr. Dr. Silvija Valleru | |
| Igly Trust | |
| Kalyan Pathuri | 17.2% |
| | |
| Lone Star Value Management, LLC, | |
| Lone Star Value Investors, LP, | |

Lone Star Value Co-Invest I, LLP
Lone Star Value Investors GP, LLC,                                    1.3%

Others                                                                10.4%

104.     Immediately after the Closing, the officers of Reliability the Reliability Board

of Directors, consistent with the conspiracy between Speck, Tsahalis and Eberwein, individually

and as the agent of Lone Star Management, the Reliability Members of the Board elected Tsahalis

(as President) and Speck (as Chief Financial Officer and Secretary) of both Reliability and Maslow

to serve as officers of Maslow and Reliability.

105.     Immediately after the Closing, Reliability entered into a Lock-Up Agreement

with each of Eberwein, Dr. Doki, Dr. Shirisha Janumpally ("Dr. Janumpally"), Dr. Valleru, Igly

Trust, a trust for which Kalyan Pathuri was sole trustee and beneficiary, and Judos Trust, a trust

for which Dr. Janumpally was the sole trustee and beneficiary pursuant to which each of the above

agreed not to (i) offer for sale, sell, pledge or otherwise dispose of (or enter into any transaction or

device that is designed to, or could be expected to, result in the disposition by any person at any

time in the future of) any shares of Reliability Common Stock; (ii) enter into any swap or other

derivatives transaction that transfers to another, in whole or in part, any of the economic benefits

or risks of ownership of shares of Reliability Common Stock, whether any such transaction is to

be settled by delivery of shares of Reliability Common Stock or other securities, in case or

otherwise; or (iii) publicly disclose the intention to do (i) or (ii).

106.     After the Closing, Dr. Doki, Dr. Shirisha Janumpally, Dr. Valleru, Igly Trust, a

trust for which Kalyan Pathuri was sole trustee and beneficiary, and Judos Trust, a trust for which

Dr. Janumpally was the sole trustee and beneficiary, and Federal Systems (a company owned and

controlled by Dr. Janumpally) became the majority shareholders of Reliability's stock (hereinafter

"Majority Shareholders").

FILED: NEW YORK COUNTY CLERK 07/31/2020 06:38 PM

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 21 of 150

107.     Dr. Janumpally, Federal Systems, Mr. Pathuri and Eberwein were not subject to the terms of the Lock-Up Agreement. However, their shares were restricted and could not be sold without registration or an exemption from registration.

108.     Immediately after the Closing, the Reliability Stock closed at Fifty-Seven Cents Per Share ($0.57). This made the company's net worth to exceed $120 Million.

109.     On October 30, 2019, the Members of the Reliability Board of Directors, consistent with the conspiracy between Speck, Tsahalis and Eberwein, individually and as the agent of Lone Star Management, appointed Tsahalis, Maslow's newly appointed President, as a member of the Board of Directors.

110.     Although Naveen Doki, and the majority Shareholders recommended new members to be appointed to Reliability's Board of Directors, Speck, Tsahalis and Eberwein, consistent with their scheme, refused to elect them to the Board claiming that they "were not impressed" with the Majority Shareholders' recommendations for the Board.

111.     To further the conspiracy, Hannah Bible was instructed by Eberwein to support Tsahalis and Speck on the Reliability Board of Directors.

112.     As the employee of one of Eberwein's entities, Ms. Bible complied and remained complacent with the conspiracy between Eberwein, Tsahalis and Speck.

*The Merger with Intelligent Quality Solutions, Inc. or "IQS"*

113.     On November 20, 2019, pursuant to terms of the Promissory Notes, Maslow Media Group, Inc. as a wholly owned subsidiary of Reliability Incorporated, entered into an Asset Purchase Agreement (the "IQS Purchase Agreement") to be effective on December 1, 2019, with Vivos Holdings Inc., a Delaware Corporation and Dr. Doki.

114.     Pursuant to the IQS Purchase Agreement, Maslow purchased from Vivos

Holdings certain assets, properties, and rights related to full-service software quality management and testing solutions constituting Intelligent Quality Solutions Inc. (referred to herein as "IQS").

115. IQS is a full-service Software Quality Management solutions IT consulting company, offering a wide range of Quality Management services.

116. As a result, Maslow acquired the following from IQS: (i) working capital required to run the business of IQS (ii) all information exclusively related to the customers of IQS, including customer agreements, customer contact and account information, historical data for each customer including work logs, project notes, revenue, and refunds or adjustments; (iii) a list containing the business name, contact name, business postal mailing address, telephone number and email contact address of each customer that previously used or presently uses IQS; (iv) the Seller's IQS customer lists, lists or reports of agreements related exclusively to IQS and financial data related exclusively to IQS; (v) the registered trademarks and service marks, trademark and service mark applications, common law trademarks and service marks, logos, tag lines, Internet domains, URLs, domain names, and naming rights associated exclusively with IQS; (vi) IQS marketing collateral in published, electronic, digital or other form, which is deemed current and is in use prior to December 5, 2019 (the "Closing Date" of the Purchase Agreement); (vii) fixed assets such as computers, servers and office furniture which are used by IQS personnel; (viii) any other assets material to the operation of IQS or which Seller exclusively uses for IQS, including but not limited to customer and prospect databases; (ix) the lease(s) for the premises from which the principal business of IQS are provided, and the furniture therein; (x) normal and customary accounts receivable from customers of IQS and certain accounts payable applicable to the cost of revenue to vendors other than vendors who are creditors pursuant to any type of commercial factoring agreement and (xi) with respect to customers of IQS, any other information which, while

not exclusively related to a customer of IQS, the Seller would in good faith believe a reasonable purchaser would or should want to know about an IQS customer.

117.    Steve Crowell is the Founder and CEO of IQS.

118.    As a result, amounts owed by the promissory Notes were reduced by a minimum of $1,417,717.

*Ultra Vires Indemnification of Officers and Directors*
*Under Reliability Organizational Documents*

119.    After acquiring IQS, Tsahalis, Speck and Eberwein, individually and on behalf of Lone Star Management, instead of taking efforts to improve the shareholders' value in Maslow, Maslow took actions to further their scheme to shut out Dr. Doki and Reliability's Majority Shareholders from the benefit of their bargain.

120.    Tsahalis, Speck and Eberwein immediately took actions to implement their scheme to entrench Tsahalis and Speck as directors and officers of Reliability and Maslow, and to defraud Reliability's majority shareholders, whom they often called, *inter alia*, ignorant, of their voting rights, and to divest them of their status as majority interest holders in Reliability, to reverse split their shares, to dilute their interest in Reliability, to block the majority shareholders from electing directors as allowed by the Bylaws and applicable law, and to forbid the majority shareholders from terminating the current Board Members.

121.    On December 13, 2019, Tsahalis and Speck, with the approval of Eberwein, individually and on behalf of Lone Star Management, appointed Hannah M. Bible, a longtime employee of Lone Star Management, to serve as Chairperson of the Board, effective immediately.

122.    Notwithstanding the repeated requests by the majority of Reliability's Shareholders to appoint 6 members to the board of Directors, Tsahalis, Speck and Ms. Bible, refused to elect any additional members to the Board of Directors.

123.    Tsahalis, Speck and Ms. Bible recognized that if they allowed other members to the board, the conspiracy between Eberwein, Tsahalis and Speck would be discovered and defeated.

124.    To further enlist Ms. Bible's loyalty to the conspiracy, Tsahalis and Speck, proposed and voted in favor of compensating Ms. Bible $5,000 per quarter on the condition that she continues to be a passive member of the board and to allow Tsahalis, Speck and Eberwein, individually and as the agent of Lone Star Management to continue with their scheme to dilute the interests of Dr. Doki and the former Maslow Shareholders and to them out.

125.    This resolution was done notwithstanding the fact that Reliability's cashflow predictions for 2020 were negative in excess of $500,000.

126.    When Dr. Doki and Reliability's Majority Shareholders complained to Tsahalis and Speck about their failures as Officers and Members of the Board, and demanded that they comply with their fiduciary obligations owed to the Reliability's Shareholders as required by the applicable law, Tsahalis and Speck with the guidance and help of Eberwein and Lone Star Management, took certain *ulta vires*, actions to protect themselves and to shut out the Majority Shareholders and entrench themselves until their scheme is completed.

127.    While Maslow's cashflow predictions for 2020 were negative $500,000, on December 13, 2019, the Board appointed Eric D. Young to serve as Maslow's General Counsel, effective January 6, 2020.

128.    Mr. Young was paid a large salary.

129.    Tsahalis, Speck and Eberwein continued to block any Board candidates proposed by the shareholders to keep their control of the company.

130.    Tsahalis, Speck and Eberwein attempted to dilute the interest Dr. Doki and other

27

shareholders by attempting to issue more company shares.

131.    However, when Dr. Doki and others refused to do so, then Tsahalis, Speck and Eberwein charged Mr. Young with finding out ways to divest the shareholders of their voting rights.

132.    Upon discovering the unauthorized and intentional acts of Tsahalis, Speck and Eberwein to entrench themselves as officers of the company, and to siphon all of Maslow's assets for their sole benefit and gain, the Majority Shareholders along with Dr. Doki called for the termination of Tsahalis and Speck from Reliability's Board of Directors

133.    After recognizing that Speck and Tsahalis' actions in wasting business assets posed severe risks to the financial and operating viability of Maslow and Reliability, Judos Trust, Igly Trust, Federal Systems, LLC, Naveen Doki, Shirish Janumpally, Kalyan Pathuri, Dr. Valleru complained to Ms. Bible and Eberwein, about the unauthorized acts of both Speck and Tsahalis.

134.    Ms. Bible and Eberwein ignored those complaints.

135.    Dr. Doki in November 2019, to satisfy the Guarantee issued to Maslow and to pay off the Vivos Promissory Notes, offered a merger with Senryo, Innova Consulting Services, LLC, and Futuris Technology Services, Inc., however Tsahalis, Speck. Bible and Eberwein, refused to properly consider or approve those proposed mergers.

136.    Instead, Tsahalis, Speck. Bible and Eberwein continued to carry out their plan to strip Dr. Doki and the other majority Shareholders of their voting rights for Reliability and to destroy Maslow.

137.    Tsahalis and Speck instructed Young to mount a campaign to poison the employee opinions of the majority shareholders and to take steps to entrench Tsahalis and Speck as directors and officers of Maslow.

INDEX NO. 653529/2020
Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 26 of 150
RECEIVED NYSCEF: 07/31/2020

138.    Tsahalis and Speck instructed Young to explore avenues for diluting Dr. Doki, and the other "ignorant" Majority Shareholders' interest in Reliability through a reverse split.

139.    To add insult to injury, while carrying out their scheme to defraud Dr. Doki and the Majority Shareholders of their interest, Tsahalis and Speck, along with Eberwein and Bible as the employees of Lone Star Management, took actions to shield themselves from any and all liability as they carried out their conspiracy.

140.    Tsahalis and Speck, with the acquiescence of Ms. Bible, as instructed by her employer Lone Star Management and Mr. Eberwein, on December 20, 2019, the Board of Directors of Reliability entered into an Indemnification Agreement with each of Tsahalis and Speck (hereinafter the Indemnification Agreements). *See* December 20, 2019 Form 8 K and attached Indemnification Agreement, attached hereto and incorporated herein as **Exhibit 6**.

141.    The Indemnification Agreements did not conform to and indeed expanded those terms contained in Reliability or Maslow's Articles of Incorporation and Bylaws and the applicable law.

142.    Further, Tsahalis and Speck to further entrench themselves as Officers of Maslow and Reliability and to protect themselves from the Majority Shareholders' calls for their resignation, sought to enter into contract with an employment contract with Reliability and Maslow to secure their positions as officers against the will of the majority shareholders, whom they continued to perceive as "ignorant."

143.    Recognizing that the Majority Shareholders had a statutory right to terminate Tsahalis and Speck as members of Reliability's Board of Directors when they requested a Special Meeting, they took *ultra vires* actions specifically aimed at preventing those Shareholders from calling such a meeting or getting access to the list of Shareholders to call one themselves.

144.    Tsahalis and Speck with the assistance of Eberwein and Bible immediately refused the Shareholders request that the company call a Special Meeting of Shareholders.

145.    On February 14, 2020, frustrated by the actions of Tsahalis and Speck in refusing to merge with the entities proposed by the Majority Shareholders and to appoint members to the board when recommended by the Majority Shareholders and Dr. Doki, they requested in writing that the Board of Directors pursuant to Sections 3.2 and 3.3 of Reliability's Bylaws and Sections 21.409 of the Texas Business Organizations Code call a Special Meeting of the shareholders to be held at the Company's Offices located at 22 Baltimore Road, Rockville, MD 20850 on February 28, 2020 for the specific purpose of terminating Tsahalis and Speck from the Board and to appoint new 6 members of the Board as per the Merger Agreement including Hannah Bible, Lawrence Gaffey, Phakir Doki, Srinivas Kalidindi and Katherine Martell.  See Letter Dated February 14, 2020 attached hereto and incorporated herein as __Exhibit 7__.

146.    Section 21.409 of the Texas Business Organizations Code provides, in pertinent part:

> **(a)** Except as otherwise provided by the certificate of formation or bylaws of a corporation or this subchapter, **the shareholders of the corporation may remove a director or the entire board of directors of the corporation, with or without cause**, at a meeting called for that purpose, by a vote of the holders of a majority of the shares entitled to vote at an election of the director or directors. (Emphasis added).

*       *       *

147.    Instead of calling the special meeting as allowed by the Bylaws and the applicable law, , and instead of allowing the super Majority Shareholders access to the Exchange Agent so that they can get access to Reliability's shareholder list to call the Special Meeting, Tsahalis and Speck, doubled down, and blocked Dr. Doki from calling the special shareholder meeting to remove Tsahalis and Speck as members of the board of directors.

148.     Tsahalis and Speck, using Reliability's and Maslow financial resources immediately engaged the services of various counsel in Texas and Maryland, to sue Dr. Doki and the other Majority Shareholders with an intent to deprive them from calling the special meeting of Shareholders and to divest them of their voting rights and the benefits of the Malow Merger Agreement.

149.     Eberwein, individually and as the agent of Lone Star Management supported Tsahalis and Speck and instructed Ms. Bible to stand by Tsahalis and Speck's actions.

150.     Ms. Bible, as instructed by her employer, Eberwein and Lone State Management, notwithstanding the conflict between Tsahalis, Speck and the majority Shareholders, voted to approve the overreaching and *ultra vires* Indemnity Agreement in December 2019.

151.     Tsahalis and Speck, consistent with their conspiracy with Eberwein individually and on behalf of Lone Star Management voted to sue the Majority Shareholders in Texas to divest them of their voting rights and to shut them out from exercising their statutory rights to elect members of the broad by a special meeting.

152.     All the while, Ms. Bible holding the position of Chairman of the Board, stood by as without concern or interest in protecting the Majority Shareholder's right to call the Special Shareholder meeting as allowed by law and the company Bylaws.

153.     She failed to do so because her employer was a part of the conspiracy with Tsahalis and Speck.

154.     Ms. Bible realizing that objecting to the unlawful actions of Speck and Tsahalis would not only upset her employer who was conspiring with these individuals, but also recognized that allowing such a Special Meeting would likely result in her losing her undeserved quarterly compensation of $5,000 as it was not part of the Maslow Merger Agreement or approved by the

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 29 of 150

Shareholders, continued to support Tsahalis and Speck's *ultra vires* actions.

155.     All of the actions taken by Reliability's Board of Directors were intended to harm Dr. Doki and Reliability's Majority Shareholders and to divest them of their rights under the Bylaws and the applicable law and to dilute their interest in Reliability.

156.     If the Majority Shareholders interest is diluted, Tsahalis, Speck and Eberwein, individually and as the agent of Lone Star management, stood to gain financially as they were able to do as they please without any deprecation as they had protection under the December 2019 Indemnity Agreement.

157.     Those actions taken by the Third-Party defendants Tsahalis, Speck, Eberwein individually and as the agent to Lone Star Management, were intentional and deliberate.

158.     Those violations of the Bylaws and the applicable law adversely affected the Third-Party Plaintiffs and the Reliability Majority Shareholders and has violated the Third-Party Defendants' fiduciary duties owed of good faith and fair dealings.

159.     On February 25, 2020 Maslow initiated the present action in the Circuit Court for Montgomery County, Maryland.

160.     Recognizing that the Courts in Maryland would not allow their misconduct, on March 1, 2020, Maslow, Reliability, as well as Tsahalis, and Speck, in their individual capacity, filed a Petition for temporary restraining and permanent injunctive order in Texas.

161.     In the pleadings filed in Texas, Maslow, Reliability, and Tsahalis and Speck individually, falsely asserted that Majority Shareholders are not entitled to call a Special Meeting and that they wanted to remove Tsahalis and Speck as Members of the Board solely because they allegedly took action by filing this action on February 25, 2020.  *See* Paragraph 2 and 3 of the March 1, 2020 Original Petition and Application for Temporary Restraining Order and Temporary

32

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 30 of 150

and Permanent Injunction attached hereto and incorporated herein as **Exhibit 8**.

162.     While none of the Majority Shareholders regularly conducted any business in Texas, nor lived or worked in Texas and as none of them submitted to the jurisdiction of Texas, Maslow, Reliability, Tsahalis and Speck filed the action in Texas as they knew that those individuals would not be able to secure Texas counsel to respond to the TRO unless they submitted to the jurisdiction in Texas.

163.     Dr. Doki and the Majority Shareholders own a substantial amount of Reliability's stock evidencing a controlling interest in the Company.

164.     As a direct and proximate result of the acts and omissions of Maslow, Tsahalis, individually, Speck, individually, Reliability, Incorporated, and Lone Star Value Management, LP, the Reliability Stock has dropped to only 10.5 cents reducing Reliability's total net worth from $130 Million Dollars to only $30 Million Dollars, which amounts to approximately a $100 Million Dollar loss of value.

165.     As a direct and proximate result of the acts and omissions of Tsahalis, Speck, Eberwein and Lone Star Management, Dr. Doki and the majority Shareholders have suffered and will continue to suffer damages in excess of $86 Million.

166.     All the while Tsahalis and Speck continue to receive $330 Thousand as salaries, plus other benefits.

167.     On March 18, 2020, Kalyan Pathuri sent a letter to Reliability demanding: (1) a list of shareholders; (2) any procedure by which Reliability recognizes the shareholder as the beneficial owner of shares registered in the name of the nominee; (3) any statement filed with Maslow by a nominee regarding the beneficial owner; and (4) Board of Director meeting minutes from October 29 to the present. See March 20, 2020 letter attached hereto and incorporated herein

as **Exhibit 9**.

168.    Reliability and Maslow once again have refused to comply with this statutory request solely as a result of the conspiracy between Tsahalis, Speck and Eberwein individually and as the agent of Lone Star Management.

169.    Consistent with the conspiracy between Speck, Tsahalis and Eberwein, individually and on behalf of Lone Star Management to induce Dr. Doki to merge Maslow with Reliability and to subsequently take over Maslow from Dr. Doki and the Majority Shareholders, on April 21, 2020 at 11:01 AM in a telephone call, Eberwein confirmed the plan and told Mr. Suresh Doki, that if the Majority Shareholders surrendered all their shares to Lone Star Management, Speck and Tsahalis, he will order Maslow, and the Tsahalis, Speck and Bible, who controlled Reliability's Board of Directors, to dismiss all lawsuits filed against Dr. Doki in Maryland and the Majority Shareholders in Texas.

170.    Otherwise, Mr. Eberwein stated that Speck, Tsahalis and Eberwein, individually and as the gent of Lone Star Management, will make sure that the lawsuits are dragged on for a very long time to destroy the Majority Shareholders investment, will continue to shut out Dr. Doki and the Majority Shareholders from calling a special meeting to terminate Speck and Tsahalis or to appoint any new Directors, and to destroy Maslow especially since the Indemnity Agreement they put in place protected them all from any liability for their acts and omissions.

*Breaches of Fiduciary Duties*

171.    Dr. Doki, and all of Reliability's shareholders have a fundamental right as outlined in the Bylaws to vote to remove members of the board of directors for cause or no cause at all.

172.    Dr. Doki, and all of Reliability's shareholders have a fundamental right as

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 32 of 150

outlined in the Bylaws to call a special meeting of all shareholders so that the Shareholders can

vote removed directors for cause or no cause.

173.     Tsahalis and Speck, with the assistance of Eberwein, have refused to allow Dr.

Doki and the Majority Shareholders from exercising their fundamental right as shareholders.

174.     Ms. Bible has acquiesced to Tsahalis, Speck and Eberwein' actions in blocking

Dr. Doki and the majority Shareholders from calling a Special meeting of shareholders or getting

access to the list of all the company's shareholders to call such a meeting.

175.     Tsahalis and Speck are members of Reliability's Board and authorized an

invalid Indemnity Agreement in violation of Reliability's Articles of Incorporation and Bylaws,

their duties to the Shareholders and he applicable  law, aimed solely to shield them from liability

for violations of the applicable law, and breaches of their fiduciary duties as they carried out their

conspiracy with Eberwein individually and as the agent of Lone Star Management.

176.     This agreement was approved by the board after the Majority Shareholders

demanded that the Board of Directors comply with the terms of the Maslow Merger Agreement.

177.     This Indemnification Agreement made it impossible for the Majority

Shareholders to hold Tsahalis and Speck or Eberwein responsible for their *ultra vires* acts when

the Majority Shareholders were demanding that Tsahalis and Speck be held liable for their *ultra

vires* acts that were in contravention to the terms of the Maslow Merger Agreement and the intent

of the parties in connection with the merger between Reliability and Maslow.

178.     Reliability's Board of Directs, to date has refused to act independently of

Tsahalis and Speck and has acquiesced to their wrongful acts in blocking the Shareholder Vote to

elect and remove Directors of the board as allowed by the Bylaws and the applicable statutes.

179.     This sweeping indemnity is not in the best interest of Reliability nor was it

Case 1:20-cv-07109-KPF  Document 1-1  Filed 09/01/20  Page 33 of 150

approved by the Majority Shareholders.

180.     The treasonous acts by Speck and Tsahalis were made for their individual gain

and the gain of their co-conspirators, Eberwein and Lone Star Management.

181.     To shut out the Majority Shareholders, and to create an onerous, unreasonable,

and unlawful obstacle designed solely to prevent the majority Shareholders from exercising the

statutory rights to terminate the members of the Reliability Board as allowed by the applicable

Articles of Incorporation, Bylaws and the  applicable law, Ms. Bible, Tsahalis and Speck refused

to call a Special Meeting of Board when asked, to authorize the stock transfer agent to allow the

Majority Shareholders to the access the list of Reliability's Shareholders to call the Special

Meeting of Shareholders.

182.     Although Maslow's and Reliability's Bylaws allow for a general meeting of

Shareholders, to date the Reliability's Board has refused to call such a Shareholder Meeting as per

the applicable Bylaws, even when such a meeting can be held remotely.

183.     The reason for not calling such a meeting is clear: The Majority Shareholder

will be able to vote to terminate Tsahalis and Speck.

184.     As they were at-will employees, if they are terminated as Directors, then both

Tsahalis and Speck will be terminated as employees of Maslow and they would each lose over

$300,000 per year salary and benefits.

185.     Without Tsahalis and Speck on the Reliability Board, Lone Star Management

will lose control of the Board and will be unable to continue its scheme of having its cake and eat

it too:  to get all the sales proceeds from the Maslow Merger, make Reliability an active entity with

value and own Maslow for free.

186.     It is axiomatic that Tsahalis and Speck, as directors of a public corporation, owe

the Company's shareholders fiduciary duties, including the duties of good faith, loyalty, and due care.

187.    Under all applicable law, the power of corporate directors must be exercised in accordance with their fiduciary duties to the shareholders.

188.    Those duties must not be exercised to shut out the Shareholders from exercising their statutory rights, and their rights under the company's Articles of Incorporation and Bylaws.

189.    The Board of Director's fiduciary duties must not be exercised to the sole benefit of the Directors and the detriment of the Shareholders.

190.    Giving granting a sweeping broad Indemnity to Speck and Tsahalis for their acts and omissions under false pretenses and not in accordance with the applicable Bylaws, especially when the Majority Shareholders were calling for their termination, and use the Company funds to defend them against claims for breach of fiduciary duties by the majority Shareholders is an obvious acts of *ulta vires* a breach of all applicable fiduciary duties.

191.    The Indemnity Agreement approved by the board in December 2019 was an obvious self-interested agreement unauthorized by the law or the Reliability Bylaws.

192.    Tsahalis and Speck had a material self-interest in all their actions against the best interest of reliability and its Shareholders and this constituted a breach of their fiduciary duties.

193.    They acted with the sole purpose of reducing their risk of being liable to reliability and the Majority Shareholders.

194.    By approving the Indemnification Agreement, Tsahalis and Speck gave themselves the freedom to do everything the Majority Shareholders were complaining about in 2019 when they were calling for the removal of Tsahalis and Speck from Reliability's Board.

195.    Eberwein, Tsahalis and Speck have unlawfully placed their best interests above

the interests of the Company's shareholders to whom they owed fiduciary duties.

196.    Tsahalis and Speck's disloyal and bad faith efforts to shut out the majority

Shareholders, and to impose barriers to their legal and statutory rights to remove Directors for any

cause as allowed by applicable law and Reliability's bylaws has harmed Reliability and Maslow

and fall outside the scope of any authority they have been granted by Malow's Reliability's

Articles of Incorporation, Bylaws or the applicable law.

197.    The Texas Code and Reliability's Articles of Incorporation and Bylaws invest

the Majority Shareholders with the power to call a Special Meeting of Shareholders for the specific

purpose of removing directors of the Board, for cause or no cause.

198.    Recognizing that they would be removed if they allowed such a meeting, for

personal reasons only, Tsahalis and Speck engaged in conduct with the help of Eberwein and Lone

Star Management, through actions of its employees and agents on the Reliability Board of

Directors, namely Jeffrey Eberwein and Hannah Bible, they instructed the stock transfer agent not

to share a list of all the shareholders, and refused to authorize the Board to call a special meeting

of the shareholders to allow the Shareholders to vote.

199.    The acts and omissions by Speck and Tsahalis are aimed at preventing Dr. Doki

and the Majority Shareholders from exercising their individual statutory rights and their individual

rights under Reliability's bylaws.

### *Aiding and Abetting/Conspiracy*

200.    Third-Party Defendants Speck, Tsahalis, and Eberwein, individually and as the

agent of Lone Star Management, and each of them, are sued as participants and as aiders and

abettors herein alleged.

201.    At all relevant times, each Third-Party was and is the agent of each of the

remaining Third-Party Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency.

202.    Each Third-Party Defendant ratified and/or authorized the wrongful acts of each of the other Third-Party Defendants.

203.    There is a unity of interest and ownership between the defendants listed above, such that the acts of the one is for the benefit and can be imputed as the acts of the other.

204.    A majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule

*Derivative Allegations*

205.    Dr. Doki brings this action derivatively in the right and for the benefit of Reliability to redress the breaches of fiduciary duty, waste of corporate assets, unjust enrichment and other wrongful conduct by the Individual Third-Party Defendants as alleged herein.

206.    Dr. Doki, owns and has continuously owned common stock in Reliability beneficially during the period of the wrongdoing alleged herein and are and was a shareholder of Reliability at the time of the transgressions complained of.

207.    Dr. Doki will adequately and fairly represent the interests of Reliability and its shareholders in enforcing and prosecuting its rights and has retained counsel experienced in prosecuting this type of action.

208.    The wrongful acts complained of herein have subjected and will continue to subject Reliability to continuing harm because the adverse consequences of the actions by the Reliability Board of Directors are still in effect and ongoing.

209.    The wrongful acts complained of herein were unlawfully concealed from

Reliability and Maslow's shareholders by Eberwein, individually and as the agent of Lone Star Management and by Tsahalis and Speck.

210.     Any demands for action by the Board are futile because the alleged wrongdoings are against the exact Directors of reliability who are depriving the Shareholders from exercising their statutory right to elect members of the board and their rights under the Articles of Incorporation, operative Bylaws and the law to do the same.

211.     As a direct result of the wrongdoing referred to herein and the Individual Third-Party Defendants' concealment thereof the Third-Party Plaintiffs have been defrauded into approving the Merger between Maslow and reliability and are now being deprived of protecting and securing their investment, all the while the current board is making every effort to dilute their interest, to destroy the company and to entrench themselves.

212.     Reliability and Maslow have been caused to expend tens of thousands of dollars in prosecuting frivolous actions promulgated by Tsahalis and Speck with the aid and assistance of Eberwein and Lone Star Management against the shareholders.

213.     As a direct consequence of the wrongful acts of the Board of Directors, Reliability has incurred and will continue to incur substantial litigation costs and expenses fighting the shareholders when they are only asking to exercise their statutory rights and the rights allowed by the bylaws.

214.     As a direct and proximate result of the act and omissions of the current Board, Reliability has suffered and will continue to suffer substantial harm to an extent not yet fully capable of determination, including the significant deterioration in the market value of the Company's stock.

215.     The wrongdoing of each of the individual Third-Party Defendants, as described

herein, was an essential link in the damages caused and being caused to Reliability and its shareholders as a result thereof.

216.     As a direct and proximate result of such wrongdoing, Reliability has expended and will continue to expend large sums of money and irreparable hard to it business relations with other third parties that will destroy its business and reputation.

217.     Reliability has been severely damaged by these repeated revelations of misconduct by Speck and Tsahalis.

218.     Immediately after Closing Reliability's shares traded at Fifty-Seven Cents ($0.57) per stock.    As a result of the acts and omissions of the current Officers and Directors, Reliability' stock even before March 15, 2020, plummeted to a mere ten cents ($0.10) per share, reflecting the continuing deterioration of the Company as a result of months of misconduct by the Third-Party Defendants.

219.     The actions taken by Tsahalis and Speck, as supported and aided and abetted by Eberwein and Bible in breaching their fiduciary duties are not in the best interest of Reliability in  that they are using their powers for their personal gain and are adverse to the to the interests of Reliability and its shareholders, who are the equitable owners of the company.

### COUNT I
### (Declaratory Judgment)

220.     Counter-Plaintiffs and Third-Party Plaintiffs restate and incorporates by reference all of the allegations contained in all preceding paragraphs.

221.     This is a claim for declaratory judgment pursuant to the Maryland Uniform Declaratory Judgments Act, Maryland Code, CJP § 3-401, *et seq*.

222.     An actual controversy exists between the parties as to the following:  (i) the rights and liabilities of the parties as Shareholders of Reliability Incorporated and as parties to the

Maslow Merger Agreement and the Intercompany Promissory Notes and Guarantee by Dr. Doki;
(ii) whether Counter-Plaintiffs and Third-Party Plaintiffs, as the majority of Reliability's
Shareholders are entitled to call a Special Meeting of Shareholders to terminate any members of
the Board of Directors for cause or no cause; (iii) whether the termination of Tsahalis and Speck
as directors is a right that Counter-Plaintiffs and Third-Party Plaintiffs are entitled to exercise in
their capacity as the majority of Reliability's Shareholders; (iv) whether Tsahalis and Speck have
acted to frustrate the exercise of Counter-Plaintiffs and Third-Party Plaintiffs, as the majority of
Reliability's Shareholders to call a Special Meeting of Shareholders; (v) whether the actions by
Tsahalis and Speck to dilute the interests of majority Shareholders is *ulta vires* and unauthorized;
(vi) whether any action by Tsahalis and Speck as a result of their actions in contravention to the
expressed interest of the majority Shareholder of Reliability is unauthorized and utra vires; (vii)
whether Naveen Doki, Shirisha Janumpally, Judos Trust, Federal Systems, Dr. Silvija Valleru,
Kalyan Pathuri, and Igly Trust actually and/or substantially complied in providing notice to
Reliability Incorporated herein's shareholders for the Special Meeting of the Shareholders on
February 28, 2020; (viii) whether votes or other actions taken during the February 28, 2020,
including the removal of Tsahalis and Speck from the Board of Directors and the election of Phakir
Doki, Madhavi Doki, and Sridhar Badam, were not defective corporate actions due to defendants'
failure to provide the notice required by Reliability Incorporated herein's bylaws and the Texas
Business Organizations Code and are, therefore, void; (xi) whether Reliability Incorporated's
Board of Directors is illegally constituted and in contraventions of the Maslow Merger Agreement
and Reliability's Bylaws and any action taken by that Board, now or in the future, is void as the
product of an illegally constituted Board unauthorized or approved by the majority Shareholders;
(x) whether the failure to afford whether Counter-Plaintiffs, as the majority of Reliability's

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 40 of 150

Shareholders, to serve on the Board of Directors or cause a new election invalidates any and all actions taken by the present Board of Directors; (xi) whether the failure to elect Counter-Plaintiffs as Directors or failure to allow such persons to delegate such Directors (or even vote on Directors) is grounds for rescission of the Maslow Merger Agreement; (xii) whether the Indemnification Agreement is ultra-vires, not validly authorized, and/or the product of self-interest of the Board of Directors; (xiii) whether the parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made in 2019 or prior to the maturity date of the Intercompany Promissory Notes in 2023; (xiv) whether, in approving the Malow Merger Agreement, the Third-Party Plaintiffs and/or did not contemplate authorization for enforcement of the Intercompany Promissory Notes prior to maturity; (xv) whether there was any requirement or understanding that Maslow would require repayment of these notes in 2019; (xvii) whether Dr. Doki's purported guarantee is void as lacking any consideration by Maslow, and/or the result of detrimental reliance and/or fraud in obtaining control of Maslow against his interest; (xvii) whether Maslow agreed, understood and contemplated, as confirmed by its verified announcements that the Intercompany Promissory Notes would not be paid, called, or collected prior to maturity; (xviii) whether Dr. Doki was not expected to make any contribution to Maslow prior to the maturity dates of the Intercompany Promissory Notes; (xix) whether and to what extent amounts owed under the Intercompany Promissory Notes were extinguished and/or reduced as a result of the IQS transaction; (xx) whether Dr. Doki is in breach his Guarantee.

223.   The Court should enter a declaratory judgment declaring the following:  (i) the rights and liabilities of the parties as Shareholders of Reliability Incorporated and as parties to the Maslow Merger Agreement and the Intercompany Promissory Notes and Guarantee by Dr. Doki; (ii) Counter-Plaintiffs and Third-Party Plaintiffs, as the majority of Reliability's Shareholders are

entitled to call a Special Meeting of Shareholders to terminate any members of the Board of Directors for cause or no cause; (iii) the termination of Tsahalis and Mark Peck as Directors is a right that Counter-Plaintiffs and Third-Party Plaintiffs are entitled to exercise in their capacity as the majority of Reliability's Shareholders; (iv) Tsahalis and Speck have acted to frustrate the exercise of Counter-Plaintiffs and Third-Party Plaintiffs, as the majority of Reliability's Shareholders to call a Special Meeting of Shareholders; (v) the actions by Tsahalis and Speck to dilute the interests of majority Shareholders are *ulta vires* and unauthorized; (vi) any action by Tsahalis and Speck as a result of their actions in contravention to the expressed interest of the majority Shareholder of Reliability is unauthorized and ultra vires; (vii) Naveen Doki, Shirisha Janumpally, Judos Trust, Federal Systems, Dr. Silvija Valleru, Kalyan Pathuri, and Igly Trust actually and/or substantially complied in providing notice to Reliability Incorporated's shareholders for the Special Meeting of the Shareholders on February 28, 2020; (viii) votes or other actions taken during the February 28, 2020, including the removal of Tsahalis and Speck from the Board of Directors and the election of Phakir Doki, Madhavi Doki, and Sridhar Badam, were not defective corporate actions due to defendants' failure to provide the notice required by Reliability Incorporated's bylaws and the Texas Business Organizations Code and are, therefore, void; (xi) Reliability Incorporated's Board of Directors is illegally constituted and in contraventions of the Maslow Merger Agreement and Reliability's Bylaws and any action taken by that Board, now or in the future, is void as the product of an illegally constituted Board unauthorized or approved by the majority Shareholders; (x) the failure to afford whether Counter-Plaintiffs, as the majority of Reliability's Shareholders, to serve on the Board of Directors or cause a new election invalidates any and all actions taken by the present Board of Directors; (xi) the failure to elect Counter-Plaintiffs as Directors or failure to allow such persons to delegate such

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 42 of 150

Directors (or even vote on Directors) is grounds for rescission of the Maslow Merger Agreement; (xii) the Indemnification Agreement is ultra-vires, not validly authorized, and/or the product of self-interest of the Board of Directors; (xiii) the parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made in 2019 or prior to the maturity date of the Intercompany Promissory Notes in 2023; (xiv) in approving the Malow Merger Agreement, the Third-Party Plaintiffs and/or did not contemplate authorization for enforcement of the Intercompany Promissory Notes prior to maturity; (xv) there was no requirement or understanding that Maslow would require repayment of these notes in 2019; (xvii) Dr. Doki's purported guarantee is void as lacking any consideration by Maslow, and/or the result of detrimental reliance and/or fraud in obtaining control of Maslow against his interest; (xvii) Maslow agreed, understood and contemplated, as confirmed by its verified announcements that the Intercompany Promissory Notes would not be paid, called, or collected prior to maturity; Dr. Doki was not required to make payment , (xviii) Dr. Doki was not expected to make any contribution to Maslow prior to the maturity dates of the Intercompany Promissory Notes; (xix) amounts owed under the Intercompany Promissory Notes were reduced and extinguished in the amount of at least $1,417,717;  (xx) Dr. Doki is not in breach his Guarantee.

## COUNT II
### (Complaint for Temporary Restraining Order and Preliminary and Permanent Injunctive Relief)

224.    Counter-Plaintiffs and Third Party-Plaintiffs restate and incorporates by reference all of the allegations contained in all preceding paragraphs.

225.    Counter-Defendant and Third-Party Defendants conduct in oppressing Counter-Plaintiff and Third-Party Plaintiffs requires the use of the court's equitable powers to preserve the status quo and protect the rights of the parties.  Said oppressive conduct is described herein, and

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 43 of 150

includes but is not limited to the failure to allow the majority shareholders to remove or elect directors, failing to comply with the Maslow Merger Agreement regarding the appointment of Counter-Plaintiffs as Directors, use of corporate assets to oppress, silence, and sue Counter-Plaintiffs to give them leverage in the operation of the Company.

226.   As a result of the Individual Defendants' unlawful actions, Counter-Plaintiffs and Third-Party Plaintiffs will be irreparably harmed in that they will be unable to effectively deter, stop, and seek redress for legal harms caused by directors and officers of Reliability or elect directors as allowed by the Bylaws and the applicable statutes.

227.   Counter-Plaintiffs and Third-Party Plaintiffs have no adequate remedy at law.

228.   Only through the exercise of this Court's equitable powers can Counter -Plaintiffs and Third-Party Plaintiffs be fully protected from the irreparable injury that Counter Defendants and Third-Party Defendants actions are causing.

229.   Unless this Court enjoins Third-Party Defendants from enforcing the Bylaws, the Third Party Defendants will continue to knowingly, willfully, or recklessly, and in bad faith, breach their fiduciary duties owed to Counter -Plaintiffs and Third-Party Plaintiffs, and keep them from effectively deterring, stopping, and seeking redress for legal harms caused by Tsahalis, Speck and Lone Star management.

230.   Unless Counter-Defendant and Third-Party Defendants' oppressive conduct is restrained, Counter-Plaintiff and Third-Party Plaintiffs will suffer immediate, substantial, and irreparable injury.

231.   Such injury includes loss of credit rating, inability to exercise majority control of their Company, wasting of Company assets, and the potential sale of Company assets, which has been offered to third-parties.

232.    There exists a strong likelihood that Counter-Plaintiff and Third-Party Plaintiffs will succeed on the merits of their claims, including because they are equitable owners of a majority of the Company's assets.

233.    The benefits to Counter-Plaintiff and Third-Party Plaintiffs in obtaining injunctive relief are equal to or outweigh the potential harm which Counter-Defendant and Third-Party Defendants would incur is this Court grants the requested injunctive relief.

234.    The public interest is best served by granting the injunction.

### COUNT III
### (Reformation and/or Rescission)

235.    Counter-Plaintiffs and Third-Party Plaintiffs restate and incorporates by reference all of the allegations contained in all preceding paragraphs.

236.    Cross-Defendant and Third-Party Defendants conduct, oppression, and failure to afford or allow Counter-Plaintiff and Third-Party Plaintiffs the opportunity to serve, delegate or vote on Board of Directors, and the refusal to allow a Special Meeting, election, and/or replacement of the Board of Directors, constitutes grounds for rescission of the Maslow Merger Agreement, and ensuing merger, and/or grounds for reformation of the Maslow Merger Agreement, which should be reformed to allow Counter-Plaintiff and Third-Party Plaintiffs to designate eligible persons of their choosing to serve as Directors.

### COUNT IV
### (Fraud Against Lone Star Management, Eberwein, Speck And Tsahalis)

237.    Counter-Plaintiffs and Third-Party Plaintiffs reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint as if set forth at length herein.

238.    Mr. Eberwein, individually and as the agent of Lone Star Management, together

47

with Speck and Tsahalis, made the Representations to induce Counter-Plaintiffs and Third-Party

Defendants to proceed with the Closing on the Maslow Merger Agreement, to fund and obligate

themselves in connection with transaction, and to not withdraw and rescind from said transaction.

239.    At all relevant times, Mr. Eberwein acted on behalf of Lone Star Management

as a principal to further his own personal interest and interest of Lone Star Management.

240.    The contribute represented that because the Bylaws and applicable Law

provided that Reliability's shareholders can remove any directors for cause or no cause, their

investment in Reliability will be protected after the merger, and their requirements under the

Maslow Merger Agreement, that as majority shareholders they will at least control 50% of

Reliability's Board of Directors, will be secure (the "Representations").

241.    The foregoing Representations were false when made, with no intention to

perform as stated.

242.    Mr. Eberwein, individually and as the agent of Lone Star Management, together

with Speck and Tsahalis knew, or should have known, that the Representations were false,

misleading, and/or omitted material facts at the time they were made and at all material times.

243.    Mr. Eberwein, individually and as the agent of Lone Star Management, together

with Speck and Tsahalis made the Representations with the intent that Counter-Plaintiffs and

Third-Party Defendants rely on same.

244.    Counter-Plaintiffs and Third-Party Defendants reasonably relied on the

Representations, including proceeding the Closing on the Maslow Merger Agreement, and

contributing valuable assets towards such consummation, and by authorizing such merger.

Case 1:20-cv-07109-KPF  Document 1-1  Filed 09/01/20  Page 46 of 150

245.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis knew, or should have known, that Counter-Plaintiffs and Third-Party Defendants would reasonably rely on the representations.

246.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis made the Representations with negligent and/or reckless disregard for their truth or falsity.

247.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis made the Representations with the intent to mislead and defraud Counter-Plaintiffs and Third-Party Defendants reasonably.

248.    Counter-Plaintiffs and Third-Party Defendants reasonably believed the Representations to be true and accurate.

249.    In reasonable reliance upon the Representations, Counter-Plaintiffs and Third-Party Defendants reasonably authorized the consummation and Closing of the Maslow Merger.

250.    Counter-Plaintiffs and Third-Party Defendant reliance on the Representations was justified and reasonable under the circumstances.

251.    As a direct and proximate result of Counter-Plaintiffs and Third-Party Defendants' reasonable reliance on the Representations, they have incurred direct, indirect, consequential and incidental damages in an amount to be determined at trial, including additional damages which sums exceed $75,000.00

252.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis actions in knowingly making false and fraudulent Representations to Homeowners was were done in bad faith and in a willful and wanton manner with complete

disregard for the rights of Counter-Plaintiffs and Third-Party Defendants, justifying an award of punitive damages.

**COUNT V**
**(Conspiracy)**

253.     Counter-Plaintiffs and Third-Party Plaintiffs reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint as if set forth at length herein.

254.     Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis agreed and conspired among themselves to share and coordinate their knowledge, data, research activity, and decisions to defraud Counter-Plaintiff and Third-Party Plaintiffs into proceeding with the Maslow Merger Agreement, to tie up their equity, and enable Eberwein, Lone Star Management, Speck and Tsahalis to control the Board of Directors.

255.   Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis agreed and conspired among themselves to share and coordinate their knowledge, data, research activity, and to defraud Counter-Plaintiff and Third-Party Plaintiffs into proceeding with the Maslow Merger Agreement, to tie up their equity, and enable Eberwein, Lone Star Management, Speck and Tsahalis to control the Board of Directors.

256.   As a result of the Defendants' conspiracy, Counter-Plaintiff and Third-Party Plaintiffs was damaged in the amount exceeding $75,0000.

**COUNT VI**
**(Tortious Interference with Business and/or Contract Expectancy and/or Prospective Business Advantage)**

257.     Counter-Plaintiffs and Third-Party Plaintiffs reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint as if set forth at length herein.

258.     Third-Party Plaintiffs were parties to the Maslow Merger Agreement, and the Majority Shareholders of Reliability.

259.     Defendants Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, knew of and even induced Third-Party Defendants into such business arrangement.

260.     Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, as set forth in this pleading, have intentionally and willfully acted to undermine Third-Party Plaintiffs business, in a manner calculated to cause damage to the Third-Party Plaintiffs in their lawful business, with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of such third-party defendants (which constitutes malice), and actual damage and loss has resulted.

### COUNT VII
### (Constructive Trust, Resulting Trust, and/or Receivership)

261.     Counter-Plaintiffs and Third-Party Plaintiffs reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint as if set forth at length herein.

262.     Under the circumstances described herein, it would be improper and inequitable for Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, individually and/or collectively, to continue to exercise control over Reliability or Maslow, and their retention of control is at the expense and contrary to the interests of the Majority Shareholders, including Third-Party Plaintiffs.

263.     Under the circumstances herein, it work a fraud an injustice against Third-Party Plaintiffs if Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis were allowed to retain control of Reliability or Maslow, including certain funds

obtained from the federal government as part of the Payroll Protection Program Loan, which on information and belief are approximately $6.5 Million (the "PPPL Loan Funds").

264.   Said conduct of Third-Party Defendants are illegal, oppressive, and fraudulent, including as to Third-Party Plaintiffs.

265.   On information and belief, Third-Party Defendants are engaged in a plan to siphon off assets or sell assets at a discount, including the Intercompany Promissory Notes, to directly and indirectly damage Third-Party Plaintiffs.

266.   Under the circumstances described herein, principles of Equity should declare that any interest Reliability, Maslow, including the PPPL Loan Funds, and other assets, including the Intercompany Promissory Notes be held in an implied trust/ constructive trust / resulting trust, for the benefit and preservation of the Companies' Shareholders.

267.   In the interest of equity and justice, and as a matter of law, the Court should declare that Third-Party Plaintiffs holds an equitable lien against the shares of Maslow, including Intercompany Promissory Notes, the PPPL Loan Funds, in whole or part, and impose a implied trust/ constructive trust/ resulting trust upon any interest of Third-Party Defendants, including Reliability in such assets, for the benefit of Third-Party Plaintiffs,  and the interest of Reliability and Maslow be subject to Third-Party Plaintiffs' rights.

268.   Third-Party Plaintiffs also request that Doki or other Third-Party Plaintiff be appointed receiver of Reliability and/or Maslow, including its assets during the pendency of this lawsuit.

## COUNT VIII
### (Direct Action by Stockholder Against Corporate Directors for Breach of Fiduciary Duty)

269.   Counter-Plaintiffs and Third-Party Plaintiffs reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint

Case 1:20-cv-07109-KPF    Document 1-1    Filed 09/01/20    Page 50 of 150

as if set forth at length herein.

270.    Speck, Tsahalis and Eberwein, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. By reasons of their positions as officers and/or directors and fiduciaries and because of their ability to control the business and corporate affairs of Reliability, Speck, Tsahalis and Eberwein owe the Company and its stockholders fiduciary obligations of trust, loyalty, good faith, candor and due care, and were required to do their utmost to control and manage the affairs of Reliability in a fair, just, honest and equitable manner, including to protect and honor stockholder's right to call a special meeting of shareholders for the specific purpose of electing or removing directors as allowed by the organizational documents and applicable law.

271.    Speck, Tsahalis and Eberwein were required to act in furtherance of the best interests of Reliability and its stockholders so as to benefit all stockholders equally, and not in furtherance of their own personal interests or benefit.

272.    Each officer and director of Reliability owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

273.    In failing to fulfill these duties, Speck, Tsahalis and Eberwein repeatedly and continuously, throughout the Relevant Period, made material misstatements of fact regarding the Reliability Board's intent and obligations to the shareholders, to respect the shareholders' rights to appointment members of the aboard, to enforce the shareholders' right to terminate the member s of the board as allowed by the Bylaws and the applicable statutes, to protect the shareholders

interest in Reliability after the Merger, not to engage in self-dealing above the interests of Reliability's shareholders.

## COUNT IX
### (Derivative Action)

274.    Counter-Plaintiff and Third-Party Plaintiff Dr. Doki realleges and incorporates each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint as if set forth at length herein.

275.    This is a shareholder's derivative action brought for the benefit of Third-Party Defendant Reliability.

276.    This derivative action is brought on behalf of Reliability against certain members of Reliability's  Board of Directors and certain of its executive officers as well as their co-conspirator Lone Star Management seeking to remedy their violations of applicable law and breaches of fiduciary duty from November 1, 2019 until the present, as identified herein.

277.    Counter-Plaintiffs and Third-Party Plaintiffs have made sufficient demand upon the Reliability, as set forth herein.

278.    To the extent that additional demand is required, such demand is futile.

279.    As direct and proximate result of the various breaches by the members of the board of directors of Reliability, Reliability has lost in excess of $100 Million in damages.

280.    All of the actions and omissions committed by the members of the Board were not in the best interests of Reliability and were solely committed for the sole purposes of entrenching Tsahalis and Speck as officers and directors of Reliability and Maslow, so that they could carry out the conspiracy and divest the majority shareholders of Reliability of their voting rights and to waste corporate assets.

281.    Further, Dr. Doki in this derivative claim, on behalf of Reliability and himself

demands that Reliability to comply with its own bylaws and call a shareholder meeting for the removal of board members, and election of a new board.

WHEREFORE, Counter-Plaintiffs and Third-Party Plaintiffs, as a result of incurring in excess of $86 Million in losses and damages, respectfully requests that the Court enter the following relief:

A.      The Court should enter a declaratory judgment declaring the following:  (i) the rights and liabilities of the parties as Shareholders of Reliability Incorporated and as parties to the Maslow Merger Agreement and the Intercompany Promissory Notes and Guarantee by Doki; (ii) Counter-Plaintiffs and Third-Party Plaintiffs, as the majority of Reliability's Shareholders are entitled to call a Special Meeting of Shareholders to terminate any members of the Board of Directors for cause or no cause; (iii) the termination of Tsahalis and Speck as directors is a right that Counter-Plaintiffs and Third-Party Plaintiffs are entitled to exercise in their capacity as the majority of Reliability's Shareholders; (iv) Tsahalis and Speck have acted to frustrate the exercise of Counter-Plaintiffs and Third-Party Plaintiffs, as the majority of Reliability's Shareholders to call a Special Meeting of Shareholders; (v) the actions by Tsahalis and Speck to dilute the interests of majority Shareholders are *ulta vires* and unauthorized; (vi) any action by Tsahalis and Speck as a result of their actions in contravention to the expressed interest of the majority Shareholder of Reliability is unauthorized and ultra vires; (vii) Naveen Doki, Shirisha Janumpally, Judos Trust, Federal Systems, Dr. Silvija Valleru, Kalyan Pathuri, and Igly Trust actually and/or substantially complied in providing notice to Reliability Incorporated's shareholders for the Special Meeting of the Shareholders on February 28, 2020; (viii) votes or other actions taken during the February 28, 2020, including the removal of Tsahalis and Speck from the Board of Directors and the election of Phakir Doki, Madhavi Doki, and Sridhar Badam, were not defective corporate actions due to

Case 1:20-cv-07109-KPF Document 1-1 Filed 09/01/20 Page 53 of 150

defendants' failure to provide the notice required by Reliability Incorporated's bylaws and the Texas Business Organizations Code and are, therefore, void; (xi) Reliability Incorporated's Board of Directors is illegally constituted and in contraventions of the Maslow Merger Agreement and Reliability's Bylaws and any action taken by that Board, now or in the future, is void as the product of an illegally constituted Board unauthorized or approved by the majority Shareholders; (x) the failure to afford whether Counter-Plaintiffs, as the majority of Reliability's Shareholders, to serve on the Board of Directors or cause a new election invalidates any and all actions taken by the present Board of Directors; (xi) the failure to elect Counter-Plaintiffs as Directors or failure to allow such persons to delegate such Directors (or even vote on Directors) is grounds for rescission of the Maslow Merger Agreement; (xii) the Indemnification Agreement is ultra-vires, not validly authorized, and/or the product of self-interest of the Board of Directors; (xiii) the parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made in 2019 or prior to the maturity date of the Intercompany Promissory Notes in 2023; (xiv) in approving the Malow Merger Agreement, the Third-Party Plaintiffs and/or did not contemplate authorization for enforcement of the Intercompany Promissory Notes prior to maturity; (xv) there was no requirement or understanding that Maslow would require repayment of these notes in 2019; (xvii) Dr. Doki's purported guarantee is void as lacking any consideration by Maslow, and/or the result of detrimental reliance and/or fraud in obtaining control of Maslow against his interest; (xvii) Maslow agreed, understood and contemplated, as confirmed by its verified announcements that the Intercompany Promissory Notes would not be paid, called, or collected prior to maturity; Dr. Doki was not required to make payment , (xviii) Dr. Doki was not expected to make any contribution to Maslow prior to the maturity dates of the Intercompany Promissory Notes; (xix) amounts owed under the Intercompany Promissory Notes were reduced and extinguished in the

amount of at least $1,417,717;  (xx) Dr. Doki is not in breach his Guarantee.

B.      That the Court impose an equitable lien, constructive trust, and/or resulting trust  in favor of Third-Party Plaintiffs and against the respective interests of Third-Party Defendants, including Reliability and Maslow, in the shares and assets of Maslow, including Intercompany Promissory Notes, the PPPL Loan Funds, and that Dr. Doki or other Third-Party Plaintiff be appointed receiver of Reliability and/or Maslow, including its assets during the pendency of this lawsuit, and for such other relief as may be just and equitable.

C.      That the Court rescind the Maslow Merger Agreement, and return the parties to the status quo ante, including returning all property, funds, shares of Maslow to Third-Party Plaintiffs.

D.      That the Court enter judgment in an amount in excess of $75,000, to be proven at trial, which is expected to be not less than $86 Million, in favor of the Third-Party Plaintiffs against Third-Party Defendants, plus pre- and post-judgment interest, reasonable attorney's fees and costs.

E.      That the Court enter punitive damages in an amount in excess of $75,000, in favor of the Third-Party Plaintiffs against Third-Party Defendants.

F.      That the Court enter temporary, preliminary and permanent injunction mandating that Third-Party Defendants to immediately call a shareholder meeting for the specific purpose of allowing Reliability shareholders to remove the existing board of directors and to elect new directors as allowed by the organizational documents and applicable law; and that the Court enjoin Third-Party Defendants from blocking the shareholders from holding such special meeting of shareholders; that the Court order that board of directors call an immediate annual meeting of shareholders pursuant to the organizational documents and applicable law; that the Court prohibit Third-Party Defendants from wasting assets of Maslow, including preserving any PPPL Proceeds, and preserving the Vivos Intercompany Notes.

G.    That the Court award such other relief as may be just and proper.

### JURY DEMAND

Counter-Plaintiffs and Third-Party Plaintiffs, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

**VIVOS HOLDINGS, LLC,**
**VIVOS REAL ESTATE HOLDINGS, LLC**
**NAVEEN DOKI**
**KAYLAN PATHURI**
**JUDOS TRUST, BY SHIRISHA**
**JANUMPALLY, TRUSTEE AND**
**IGLY TRUST, BY KAYLAN PATHURI,**
**TRUSTEE**
*By Counsel.*

**SABOURA, GOLDMAN & COLOMBO, P.C.**

By: _____

Elias G. Saboura-Polkovotsy, Esq.
11200 Rockville Pike, Suite 405
North Bethesda, Maryland 20852
*esboura@sabouralaw.com*
(301) 245-3230
 (301) 881-8885 Fax
*Counsel for Counter-Plaintiff and Third-Party*
*Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2020, the foregoing was served by first-class mail, postage prepaid, to:

Eric Pelletier, Esq.
Hampden Square Building
4800 Montgomery Lane, 9th Floor
Bethesda, MD 20814
*Counsel for Maslow Media Group, Inc.*

_____

Elias G. Saboura-Polkovotsy, Esq.

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 56 of 150

# EXHIBIT 9

FILED: NEW YORK COUNTY CLERK 07/31/2020 06:38 PM
NYSCEF DOC. NO. 10
Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 57 of 150

INDEX NO. 653529/2020
RECEIVED NYSCEF: 07/31/2020

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MASLOW MEDIA GROUP, INC.    *

    Plaintiff,    *

    v.    *    **Case No.: 479883V**

VIVOS HOLDINGS, LLC, et al    *

    Defendants.    *

_____    *

VIVOS HOLDINGS, LLC, et al    *

    Counter/Third-Party Plaintiffs    *

    v.    *

MASLOW MEDIA GROUP, INC., *et al*    *

    Counter/Third-Party Defendants    *

## PETITION TO COMPEL ARBITRATION AND TO STAY CASE

Plaintiff and Counter/Third-Party Defendant Maslow Media Group, Inc. ("Maslow"), petitions this Honorable Court to Compel this litigation into arbitration, and if some but not all claims in this lawsuit are not compelled into arbitration, to stay those claims that are not compelled into arbitration until the arbitration is concluded, and in support of this Petition state:

1.    Maslow is a corporation organized under Virginia law, with its principle office in Rockville, Maryland.

2.    Maslow filed this action on February 25, 2020, against Vivos Holdings, LLC ("Vivos"), Vivos Real Estate Holdings, Inc. ("VREH"), and Naveen Doki ("Doki") asserting the following claims:

Count I – Breach of November 15, 2016 Promissory Note ("Note 1") for $1,750,000.00 against Vivos;

Count <u>II</u> – Breach of November 15, 2017 Promissory Note ("Note 2") for $780,000.00 against VREH;

Count <u>III</u> – Breach of September 5, 2019 Promissory Note (Note 3) for $750,000.00 against Vivos; and,

Count <u>IV</u> – Breach of June 12, 2019 Personal Guaranty against Doki for Payment of Note 1 in the amount of $1,750,000.00.

3.      In response, on May 7, 2020, Vivos, VREH, Doki, Kaylan Pathuri ("Pathuri"), Judos Trust by Shrishsha Janumpally, its trustee ("Judos") and Igly Trust by Kaylan Pathuri, its trustee, ("Igly") filed a Counterclaim and Third-Party Complaint for Damages, Declaratory and Injunctive Relief (the "Counter/Third-Party claim").[1] The Counter/Third-Party claim seeks relief relating to the Merger Agreement (defined below).

## THE MERGER AGREEMENT

4.      On September 18, 2019, Maslow merged with Reliability Inc., a Texas corporation, ("RI") and the merger was memorialized by a merger agreement ("Merger Agreement"), the parties to which are: RI, R-M Merger Sub, Inc., a Virginia corporation ("Sub"), Maslow, Eberwein, Naveen Doki ("Doki"), and Silvija Valleru ("Valleru"). **Exhibit 1**.

5.      The Merger Agreement contains an arbitration requirement which states in pertinent part:

Section 10.10 <u>Dispute Resolution.</u>

(a)      If there is any dispute or controversy relating to this Agreement or any of the Contemplated Transactions[2] (each, a "Dispute"), such Dispute shall be resolved in accordance with this Section 10.10.

---

[1] The Counter/Third-Party Complaint is not a proper Third-Party Complaint for purposes of Md. Rule 2-311.
[2] The Merger Agreement defines the term the "Contemplated Transactions" as "the transactions contemplated by [the Merger] Agreement, together with the transactions contemplated by the other Transaction Documents. The Merger Agreement defines the term "Transaction Documents" as "th[is] [Merger] Agreement, the Maslow Disclosure Schedule, the Reliability Disclosures Schedule, the Registration Rights Agreement, the FIRTPA Affidavits [as defined in §2.16], the Lock-Up Agreements [as defined in Section 2.15], the Joinder Agreements, and any other document, certificate, or agreement to be delivered hereunder."

(b)     The Party claiming a Dispute shall deliver to each of the other Parties a written notice (a "Notice of Dispute") that will specify in reasonable detail the dispute that the claiming Party wishes to have resolved. In any such arbitration pursuant to this Section 10.10 Reliability shall have the power to act for and to bind Merger Sub and Mr. Eberwein *and Maslow shall have the power to bind the Shareholders*. If Maslow, the Shareholders and Reliability are not able to resolve the dispute within five (5) Business Days of a Party's receipt of an applicable Notice of Dispute, then such Dispute shall be submitted to binding arbitration in accordance with this Section 10.10.

                    *          *          *          *          *

(d)     The arbitration shall be conducted in New York, NY.

**Exhibit 1**, §10.10. (Emphasis added).

6.     As their signature pages reflect, Eberwein, Doki, and Valleru all entered the Merger Agreement in a limited capacity to bind themselves to the terms of Article 10, which includes the arbitration requirement within §10.10.

7.     The Merger Agreement defines the term "Shareholders" as "the meaning set forth in the Preamble, subject to the provisions of Section 6.10. The Preamble defines "Shareholders" as Doki and Valleru. Section 6.10 of the Merger Agreement adds to the roster of "Shareholders" and states:

Section 6.10 Additional Shareholders. In the event that, prior to the Closing, Maslow has issued any Equity Securities or any Derivatives of Maslow as set forth in Section 3.02(a) and in the Maslow Capitalization Table, then, with respect to any recipient thereof who has who has beneficial ownership (as determined in accordance with the rules under the Exchange Act) of in excess of 10% of the issued and outstanding shares of Maslow Common Stock following such issuance (each, a "'New Shareholder"), at the Closing, Maslow shall obtain from such New Shareholder a written joinder agreement wherein such New Shareholder agrees to join this Agreement for the purposes of Article IX *and Article X,* in form and substance as reasonably acceptable to Reliability and Maslow (the "Joinder Agreements"). Any such New Shareholder shall also be required to deliver a Lock-Up Agreement at the Closing as set forth in Section 2.15(a). In the event that there are any New Shareholders as of the Closing, such New Shareholders shall be deemed "Shareholders" for purposes of Article II.

3

**Exhibit 1**, §6.10. (Emphasis added). Thus, when new Shareholders join Maslow, they enter a "Joinder Agreement" and agree to be bound to Article X, and the arbitration provision in §10.10.

8.      Third-Party Plaintiffs Judos Trust and Igly Trust entered into Joinder Agreements, and thus are subject to arbitration pursuant to §6.10 and §10.10. **Exhibit 2** (Joinder Agreements).

9.      Third-Party Plaintiff Kaylan Pathuri ("Pathuri"), is Trustee of Igly Trust. Pathuri has beneficial ownership of the Igly Trust's shares as determined in accordance with the rules under the Exchange Act, and Section 6.10 of the Merger Agreement, which is discussed *infra*. Igly Trust has no existence independent of Pathuri, and is Pathuri's alter ego. Finally, in paragraph 103 of the Counter/Third-Party claim, Pathuri alleges to be a shareholder in Reliability and Maslow. For these reasons, Pathuri is subject to arbitration pursuant to Sections 6.10 and 10.10 of the Merger Agreement.

10.     The table below lists the persons and entities named as parties to this case and identifies whether such person is subject to the arbitration provisions of §10.10 (either by virtue of being parties to the Merger Agreement or by virtue of being parties to a Joinder Agreement), and lists those parties who are not currently subject to the arbitration provisions of §10.10.

| PARTY | ARBITRATION AGREEMENT/ ARBITRATION APPLIES |
| --- | --- |
| MASLOW | Merger Agreement |
| TSAHALIS | Merger Agreement |
| SPECK | Not bound |
| RELIABILITY | Merger Agreement |
| EBERWEIN | Merger Agreement |
| LSVM | Not bound |

| PARTY | ARBITRATION AGREEMENT/ ARBITRATION APPLIES |
|---|---|
| VIVOS HOLDINGS | Not bound |
| VREH | Not bound |
| SILVIJA VALLERU[3] | Merger Agreement |
| DOKI | Merger Agreement |
| JUDOS TRUST | Joinder Agreement |
| IGLY TRUST | Joinder Agreement |
| PARUTHI (individually) | Merger Agreement |

11.     Article X, §10.11 of the Merger Agreement contains a choice of law provision which states:

**Section 10.11** Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.

**This Agreement shall be governed by and construed in accordance with the internal laws of the State of Virginia** without giving effect to any choice or conflict of law provision or rule (whether of the State of Virginia or any other jurisdiction).

SUBJECT TO SECTION 10.10, ANY LEGAL SUIT, ACTION OR PROCEEDING ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE OTHER TRANSACTION DOCUMENTS OR THE CONTEMPLATED TRANSACTIONS MAY BE INSTITUTED IN THE FEDERAL COURTS OF THE UNITED STATES OF AMERICA **OR THE COURTS OF THE STATES OF** TEXAS, NEW YORK AND **MARYLAND AND EACH PARTY IRREVOCABLY SUBMITS TO THE PERSONAL JURISDICTION OF SUCH COURTS IN ANY SUCH SUIT,** ACTION OR PROCEEDING. SERVICE OF PROCESS, SUMMONS, NOTICE OR OTHER DOCUMENT BY MAIL.

---

[3] Silvija Valleru is not a party in the action pending before this Court.

Ex. 1 §10.11. (Emphasis added in bold). Therefore, §10.11 states that the Merger Agreement is governed by Virginia law but confers jurisdiction upon the courts of Maryland (among others) to address this Petition to Compel Arbitration for disputes arising out of the Merger Agreement.

## THE MERGER

12.     Described in the most general of terms, the Merger Agreement caused an entity known as "R-M Merger Sub, Inc.," ("R-M Sub") a Virginia corporation, to merge with another Virginia corporation, Plaintiff (*i.e.*, Maslow Media Group, Inc.), leaving Plaintiff as the surviving entity. **Exhibit 1**, Preamble and §2.01, §2.03. As part of the merger, the shares of stock of the Shareholders of Maslow were cancelled in exchange for the "Merger Consideration", as that term is defined in Section 2.07 of the Merger Agreement. **Exhibit 1**, §2.07. The Merger Consideration paid Maslow Shareholders 94% of the stock of RI (which is a Texas corporation), and left RI's shareholders and debt holders retaining 6% of RI's stock. Ex. 1 §2.07(b). As a result of these transaction, Maslow became a wholly-owned subsidiary of RI.

## THE COUNTER/THIRD-PARTY CLAIMS RELATE TO THE AGREEMENT OR THE CONTREMPLATED TRANSACTIONS

13.     The Counter/Third-Party claims relate directly to the merger and the terms of the Merger Agreement, as follows:

●     Count I seeks declaratory relief regarding the rights of the parties under the Merger Agreement in paragraph 222 (i), (ix),(xi) and (xiv); subparts (ii) – (vii) all relate to the issue of whether the parties to the merger agreement contemplated that Doki and his other shareholders would have majority control. ¶222.

●     Count II seeks an injunction for "failing to comply with the Merger Agreement," and thus necessarily relates to Merger Agreement. ¶225.

●     Count III seeks to rescind or reform the Merger Agreement. ¶236.

- Count IV alleges fraud based on representations in the Merger Agreement, against certain individual parties (Tsahalis, Eberwein, and LSVM) to the Merger Agreement. ¶238.

- Count V alleges a conspiracy against certain individual parties (Tsahalis, Eberwein, and LSVM) to the Merger Agreement. ¶¶254-255.

- Count VI asserts a claim for tortious interference by against certain individual parties (Tsahalis, Eberwein, and LSVM) to the Merger Agreement, but oddly claims the Third-Party Plaintiffs were "induced" into the Merger Agreement. ¶¶258-259.

- Count VII seeks relief in the form of the appointment of a trustee or receiver to take control of Maslow, to vindicate the rights of Doki under the Merger Agreement. ¶262-263.

- Count VIII asserts a claim for breach of fiduciary duty against the directors of RI, which relates to the Merger Agreement because the core issues pertain to the management of RI and whether the Merger Agreement contemplated that the Doki family would control RI. ¶270.

- Count IX purports to be a derivative claim brought on behalf of RI, the same as Count VIII, which is a direct claim, alleging contravention of the Merger Agreement. Complaint p. 56.

14.    Therefore, all counts of the Counter/Third-Party claims relate to the Merger Agreement and the Contemplated Transactions and, thus, all of the claims of the Counter/Third-Party Complaint are subject to mandatory arbitration under §10.10.

## APPLICABLE LAW FAVORS ARBITRATION
## AND PERMITS THE COURT TO STAY ALL REMAINING ISSUES

15.    As stated *supra*, the Merger Agreement selects Virginia law as governing, and submits the parties thereto to the jurisdiction of *inter alia*, the courts of the State of Maryland.

Both Maryland and Virginia have enacted their own adaptations of the Uniform Arbitration Act.

Md. Code Ann., Cts. & Jud Proc. §3-201 *et seq.*; Va. Code Ann. §8.01-581.04.

16.     In relevant part, the Virginia Arbitration Act (the "Act") provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract.

Va. Code Ann. §8.01-581.01. Under the Act, where there is an agreement to arbitrate, and a party

to that agreement refuses to arbitrate, the proponent of arbitration may petition to compel

arbitration and, the court may compel arbitration. Va. Code Ann. §8.01-581.02.A. Under

subsection "A" of the relevant provision of the Act, if the opponent disputes the existence of an

arbitration agreement, the court shall "proceed summarily" to determine whether an agreement to

arbitrate exists and, if so "shall order arbitration...." *Id.* The Act permits "any court of competent

jurisdiction" to hear applications for arbitration. Va. Code Ann. §8.01-581.02.C. *See also* Va.

Code Ann. §8.01-581.01.

17.     Under the Act, where some parties or issues in an arbitrable dispute pending in a

court are compelled into arbitration but others are not, the Court may stay that portion of court

proceedings involving issues and parties that are not ordered into arbitration. The Act states:

> Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section. However, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include the stay.

Va. Code Ann. §8.01-581.02.D.

18.     The Virginia Supreme Court held that an arbitration clause calling for arbitration

of disputes "relating to" an arbitration agreement (as is true here), is the broadest type of arbitration

clause, which compels arbitration not only for breaches of an agreement containing an arbitration

clause, but also arbitration of disputes "relating to" whatever venture that generated by the agreement containing the arbitration provision. *McMullin v. Union Land & Mgmt. Co.*, 410 S.E.2d 636, 638-39, 242 Va. 337, 341 (1991). "This broad language encompasses venture-generated or venture-related disputes between the parties, however labeled. It is immaterial whether the basis for the claim is in the language of the joint-venture agreement or the relationship itself." *Id.* 410 S.E.2d at 638-39*, (quoting Sindler v. Batleman*, 416 A.2d 238, 243 (D.C. 1980)). The *McMullin* court explained:

> Such a clause "is not limited to disputes over the terms of the contract or to disputes arising during the performance of the contract." Rather, "[b]road language of this nature covers contract-generated or contract-related disputes between the parties however labeled." *Id.* at 616. Indeed, "[a]n arbitration clause covering claims 'relating to' a contract is broader than a clause covering claims 'arising out of' a contract."

*Id.* 410 S.E.2d at 638-39 (quoting *Maldonado v. PPG Industries, Inc.*, 514 F.2d 614, 616 n.6 (1st Cir. 1975), and *Int'l Talent Group, Inc. v. Copyright Management, Inc.*, 629 F.Supp. 587, 592 (S.D.N.Y. 1986)).

19.    To the extent that this matter implicates the Federal Arbitration Act ("FAA"), §2 of the FAA provides for the compulsion of arbitration where there is:

> A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal....

9 USCS §2. As it would pertain to this case, "'[c]ommerce'...means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia...." 9 USCS §1.

20.    The merger resulted in one Virginia corporation merging into another Virginia corporation, and resulted in the surviving entity, Maslow, becoming a wholly owned subsidiary of

a Texas corporation, RI. Also, one signatory to the Merger Agreement, Eberwein, is a resident of Connecticut. Thus, the merger and the Merger Agreement affected interstate commerce.

21.     "[T]he United States Supreme Court has made it clear that state courts are bound to recognize and enforce §2 even to the exclusion of inconsistent state law." *Regina Constr. Corp. v. Envirmech Contracting Corp.*, 80 Md. App. 662, 667, 565 A.2d 693, 696 (1989); *citing Southland Corp. v. Keating*, 465 U.S. 1, 14-15, 104 S.Ct. 852, 860-861, 79 L.Ed.2d 1 (1984); *Perry v. Thomas*, 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987).

22.     In *Regina Constr. Corp. v. Envirmech Contracting Corp.*, 80 Md. App. 662, 667, 565 A.2d 693, 696 (1989), the Court of Special Appeals (Wilner, J.) explained that Maryland courts are empowered to enforce the FAA:

> the Maryland Arbitration Act is Maryland's analogue to the Federal Arbitration The Maryland Uniform Act is the State analogue, to the Federal Arbitration Act. Md. Cts. & Jud. Proc. Code Ann. §3-206(a), the counterpart of §2 of the Federal Act, makes "a provision in a written contract to submit to arbitration any controversy arising between the parties in the future" valid, enforceable, and irrevocable, "except upon grounds that exist at law or in equity for the revocation of a contract." Section 3-206(a) has to be read in conjunction with §3-202, however; that section states that an agreement 'providing for arbitration *under the law of the State*' confers jurisdiction 'on a court to enforce the agreement and enter judgment on an arbitration award.' (Emphasis added.)
>
> Whether the emphasized language in §3-202 serves to limit application of the Act to agreements specifically referring to Maryland law is not clear but, for purposes of this appeal, is not important. If the Maryland Uniform Act applies, the procedure for enforcing it "shall be in accordance with said act." Md. Rule E1. *If the Act does not apply, the procedure for application to a court to enforce an arbitration agreement "shall be as nearly as practicable the same as that provided for such an application in arbitration to which said act applies."*

*Regina Constr. Corp.*, 80 Md. App. at 667-68, 565 A.2d at 696 (1989) (Emphasis added in bold and italics).

23.     Md. Rule 15-101(b) governs arbitration "conducted or sought to be conducted" under law other than Maryland law, and states that unless otherwise required by other law, the

Maryland Uniform Arbitration Act applies and, to the extent practicable, the procedure of

obtaining judicial relief (such as a stay) other than proceedings to confirm, vacate, modify or enter

judgment on a final award "shall be the same procedure in connection with an arbitration under

the Maryland Uniform Arbitration Act." Md. Rule 15-101(b).

### THE COURT SHOULD COMPEL ARBITRATION AND
### STAY ALL PROCEEDINGS AS TO ISSUES THAT ARE SEVERED

24.     As explained *supra,* all ten (10) counts of the Counter/Third-Party claim "relate to"

the Merger Agreement or "relate to" the Contemplated Transactions.  Further, as the table *supra,*

shows, 8 of the 13 parties to this action, namely, Maslow, Tsahalis, Reliability, Eberwein, Doki,

the Igly Trust, Pathuri and the Judos Trust are bound to arbitration by either the Merger Agreement

or by a Joinder Agreement, and thus must arbitrate the claims of the Counter/Third-Party claim,

and do so in New York, as required by the Merger Agreement.  This is particularly true where,

under these circumstances, the Virginia Arbitration Act, the FAA and the Maryland Uniform

Arbitration Act establish each jurisdiction's strong preference for Arbitration.  *See TM Delmarva*

*Power, L.L.C. v. NCP of Va.*, L.L.C., 263 Va. 116, 122-23, 557 S.E.2d 199, 202 (2002) ("[T]he

public **policy** of Virginia favors arbitration,") and *Holmes v. Coverall North America*, 336 Md.

534, 541 649 A.2d 365, 368 (1994) ("The same policy favoring enforcement of arbitration

agreements is present in both [the Maryland] and the federal acts.").  Also, as to claims involving

parties who are not compelled into arbitration, the Court should stay all such claims pending

completion of arbitration by the other parties.[4]

---

[4] Maslow is willing to agree to submit into arbitration those claims presently pending in this action for which it is a party, but which involve parties and claims that are not currently subject to an applicable arbitration agreement, so that all claims involving all parties in this action are heard and decided together.

## MASLOW HAS NOTIFIED THE OTHER
## RELEVANT PARTIES OF ITS DEMAND FOR ARBITRATION

25.   In accordance with §10.10, May 29, 2020, Maslow served a "Notice of Dispute"

on all parties named in the Counter/Third-Party claim.  **Exhibit 3**.  Because the dispute identified

in the Notice of Dispute was not resolved within five (5) business days, this Court should compel

arbitration for all claims involving the parties listed in the previous paragraph pursuant to

Subsection 10.10(b) of the Merger Agreement, and should stay the balance of this case.

WHEREFORE, Maslow petitions this Honorable Court to Compel arbitration of this case

and to stay any claims that remain in this Court, rather than arbitration.

Respectfully submitted,

James M. Hoffman (CPF #8512010278)
Eric Pelletier (CPF 9512130302)
Offit Kurman, P.A.
4800 Montgomery Lane, 9th Floor
Bethesda, MD 20814
240-507-1710; 240-507-1735 fax
epelletier@offitkurman.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2020, I served a copy of the foregoing *Petition to Compel
Arbitration and Stay Case* via first class mail, postage prepaid to:

Bizahan Bieramee, Esq.
Bieramee Law Group PC
7508 Wisconsin Ave
2nd Floor
Bethesda, Maryland 20814

Elias G. Saboura-Polkovsky, Esq.
Saboura, Goldman & Colombo, P.C.
11200 Rockville Pike
#405
N. Bethesda, Maryland 20852

Eric Pelletier

4836-4200-2879, v. 1

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| MASLOW MEDIA GROUP, INC. | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Case No.: 479883V |
| | * |
| VIVOS HOLDINGS, LLC, et al | * |
| | * |
| Defendants. | * |
| ———————————————— | * |
| | * |
| VIVOS HOLDINGS, LLC, et al | * |
| | * |
| Counter/Third Party Plaintiffs | * |
| | * |
| v. | * |
| | * |
| MASLOW MEDIA GROUP, INC., *et al* | * |
| | * |
| Counter/Third-Party Defendants | * |
| | * |

## ORDER GRANTING
## PETITION TO COMPEL ARBITRATION AND STAYING CASE

UPON CONSIDERATION OF Plaintiff Maslow Media Group, Inc.'s ("Maslow")

"Petition to Compel Arbitration and to Stay Case," and any opposition filed in response thereto,

it be and hereby is this _____ day of _____, 2020,

ORDERED, each party listed as "bound" in the "Arbitration Agreement/Arbitration

Applies" column in the table below is ordered to immediately submit to arbitration all of such

party's claims and defenses arising out of, or relating to this action, and to do so before the

American Arbitration Association in New York, New York, as required by the parties'

arbitration agreement. It is further,

ORDERED, that any party listed as "bound" in the "Arbitration Agreement/Arbitration

Applies" column of the table below who has not yet appeared in this case, or become subject to

the Court's jurisdiction in this case, but who subsequently appears in this case, is likewise

ordered to immediately submit all of such party's claims and defense to arbitration among the

existing parties to this action, ordered above, and it is further,

ORDERED, that all claims between all parties to this action, which are not ordered to be

submitted to arbitration as specified in this Order are hereby STAYED.

| PARTY | ARBITRATION AGREEMENT/ARBITRATION APPLIES |
|---|---|
| Maslow Media Group, Inc. | Bound to arbitration |
| Nicholas Tsahalis | Bound to arbitration |
| Mark Speck | Not bound to arbitration |
| Reliability Incorporated | Bound to arbitration |
| Jeffrey E. Eberwein | Bound to arbitration |
| Lone Star Value Management, LLC | Not bound to arbitration |
| Vivos Holdings, LLC | Not bound to arbitration |
| Vivos Real Estate Holdings, LLC | Not bound to arbitration |
| Naveen Doki | Bound to arbitration |
| Judos Trust | Bound to arbitration |
| Igly Trust | Bound to arbitration |
| Kaylan Pathuri | Bound to arbitration |

_____
Judge, Circuit Court for
Montgomery County

4821-5964-4863, v. 1

# EXHIBIT 10

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

MASLOW MEDIA GROUP, INC.    *
                            *
   Plaintiff,               *
                            *
v.                          *    **Case No.: 479883V**
                            *
VIVOS HOLDINGS, LLC, et al   *
                            *
   Defendants.              *
                            *
_____   *
                            *
VIVOS HOLDINGS, LLC, et al   *
                            *
   Counter/Third Party Plaintiffs   *
                            *
v.                          *
                            *
MASLOW MEDIA GROUP, INC., *et al*    *
                            *
   Counter/Third-Party Defendants    *
                            *

# ENTERED

JUL 1 6 2020 AH

Clerk of the Circuit Court
Montgomery County, Md.

## ORDER GRANTING
## PETITION TO COMPEL ARBITRATION AND STAYING CASE

UPON CONSIDERATION OF Plaintiff Maslow Media Group, Inc.'s ("Maslow")

"Petition to Compel Arbitration and to Stay Case," and any opposition filed in response thereto,

it be and hereby is this 15th day of July, 2020,

ORDERED, each party listed as "bound" in the "Arbitration Agreement/Arbitration

Applies" column in the table below is ordered to immediately submit to arbitration all of such

party's claims and defenses arising out of, or relating to this action, and to do so before the

American Arbitration Association in New York, New York, as required by the parties'

arbitration agreement. It is further,

ORDERED, that any party listed as "bound" in the "Arbitration Agreement/Arbitration

Applies" column of the table below who has not yet appeared in this case, or become subject to

that the Petition is DENIED.

the Court's jurisdiction in this case, but who subsequently appears in this case, is likewise ordered to immediately submit all of such party's claims and defense to arbitration among the existing parties to this action, ordered above, and it is further,

ORDERED, that all claims between all parties to this action, which are not ordered to be submitted to arbitration as specified in this Order are hereby STAYED.

| PARTY | ARBITRATION AGREEMENT/ARBITRATION APPLIES |
|---|---|
| Maslow Media Group, Inc. | Bound to arbitration |
| Nicholas Tsahalis | Bound to arbitration |
| Mark Speck | Not bound to arbitration |
| Reliability Incorporated | Bound to arbitration |
| Jeffrey E. Eberwein | Bound to arbitration |
| Lone Star Value Management, LLC | Not bound to arbitration |
| Vivos Holdings, LLC | Not bound to arbitration |
| Vivos Real Estate Holdings, LLC | Not bound to arbitration |
| Naveen Doki | Bound to arbitration |
| Judos Trust | Bound to arbitration |
| Igly Trust | Bound to arbitration |
| Kaylan Pathuri | Bound to arbitration |

Robert A. Greenberg

Judge, Circuit Court for
Montgomery County

4821-5964-4863, v. 1

ENTERED

JUL 1 6 2020

Clerk of the Circuit Court
Montgomery County, Md.

# EXHIBIT 11

AMERICAN ARBITRATION ASSOCIATION
(Northeast Case Management Center)

**RELIABILITY INCORPORATED**

Claimant,

v.

Case No. 01-20-0005-5053

**NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY (individually and in her capacity as trustee of JUDOS TRUST), KALYAN PATHURI (individually in his capacity as trustee of IGLY TRUST), and FEDERAL SYSTEMS**

Respondents

**NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY (individually and in her capacity as trustee of JUDOS TRUST), KALYAN PATHURI (individually in his capacity as trustee of IGLY TRUST), and FEDERAL SYSTEMS**

Counterclaimants/Third-Party Claimants

v.

**MASLOW MEDIA GROUP, INC.**

and

**NICHOLAS PETER TSAHALIS**
12124 Skylark Rd.
Clarksburg, MD 20871

and

**MARK SPECK**
43033 Lago Styella PL
Ashburn, Va. 20148

and

**RELIABILITY INCORPORATED**,
(Principal Executive Offices)
22 Baltimore Road
Rockville, Maryland 20850

Serve: Resident Agent
      CSC Lawyers Incorporating Company
      7 St. Paul Street
      # 820
      Baltimore, MD 21202

      Corporation Service Company
      50 Weston Street
      Hartford, CT 06120-1537

      Corporation Service Company d/b/a/
      CSC-Lawyers Incorporating Service
      Company
      211 East 7th Street,
      Suite 620
      Austin, TX 78701-3218

and

**LONE STAR VALUE MANAGEMENT, LLC**, a Connecticut limited liability company

      Attn: Jeffrey Eberwein
      53 Forest Ave
      Old Greenwich, CT 06870

Serve: Corporation Service Company
Registered Agent
Lone Star Value Management, LLC
50 Weston Street
Hartford, Connecticut 06120-1537

and

**LONE STAR VALUE INVESTORS, LP**,
a Delaware limited partnership

      Attn: Jeffrey Eberwein
      c/o Lone Star Value Management, LLC
      53 Forest Ave
      Old Greenwich, CT 06870

Serve: Registered Agent
      Corporation Service Company
      251 Little Falls Drive
      Wilmington, DE 19808

and

**LONE STAR VALUE CO-INVEST I, LP**,
a Delaware limited partnership

      Attn: Jeffrey Eberwein
      c/o Lone Star Value Management, LLC
      53 Forest Ave
      Old Greenwich, CT 06870

Serve:  Registered Agent
        Corporation Service Company
        251 Little Falls Drive
        Wilmington, DE 19808

and

**JEFFREY EBERWEIN**
  c/o Lone Star Value Management, LLC
  53 Forest Ave
  Old Greenwich, CT 06870

**ANSWERING STATEMENT, REQUEST FOR DISMISSAL OF ARBIRATION COUTNERCLAIM AND THIRD-PARTY CLAIM AGAINST THE PARTIES TO THE MERGER AGREMENT, NAMELY MALSOW MEDIA GROUP, INC., JEFFREY ENERWEIN, MARK R. SPECK, NICH TSAHALIS, LONE STAR VALUE MANAGEMENT, LLC, LONE STAR VALUE INVESTORS, LP AND LONE STAR VALUE CO-INVEST I, LP**

Reliability filed this demand for arbitration not as an effort to enforce any legitimate rights under the September 18, 2019 Merger Agreement by and between (i) Reliability Incorporated, a Texas corporation ("Reliability"), (ii) R-M Merger Sub, Inc., a Virginia corporation and a wholly owned subsidiary of Reliability ("Merger Sub"), (iii) The Maslow Media Group, Inc., a Virginia corporation ("Maslow"), (iv) Jeffrey Eberwein ("Mr. Eberwein") (v) Naveen Doki ("Dr. Doki"), and (vii) Silvija Valleru ("Dr. Valleru"), (viii) Shirisha Janumpally, (ix) Judos Trust, (x) Kalyan Pathuri and (xi) Igly Trust, but rather as an opportunistic pretext to support the conspiracy between its directs and officers who also happen to own 1% interest in Reliability to strip the majority shareholders of their interest in Reliability Incorporated, Inc. and to steal Maslow Media Group,

3

Inc., a Virginia entity previously owned by Drs. Naveen Doki and Silvija Valleru and subsequently owned by Reliability as a result of the merger in 2019. Federal Systems was not a party to the Merger Agreement and is not subject to any of its terms.

## PARTIES RELEVANT TO THIS ARBITRATION

1. Vivos Holdings, LLC ("Vivos Holdings") is a limited liability company organized under the law of the Commonwealth of Virginia with its principal place of business at 22 Baltimore Road, Rockville, Maryland 20850. It is managed by Dr. Naveen Doki.

2. Dr. Naveen Doki is an individual over the age of 18 who resides in the Commonwealth of Virginia and works as a hematologist in Virginia.

3. Maslow Media Group, Inc. ("Maslow") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business at 22 Baltimore Road, Rockville, MD 20850.

4. Maslow is a workforce solution company that offers managed services, employer of record services, staffing and executive services, and video production services.

5. Reliability Incorporated is a corporation organized under the laws of the State of Texas in 1953 with its principal place of business at 22 Baltimore Road, Rockville, MD 20850.

6. From 1971 to 2007, Reliability was principally engaged in the design, manufacture, market, and support of high-performance equipment used to test and condition integrated circuits. **This business was closed down in 2007**.

7. Between 2007 and 2019, Reliability has had no operating activities and remained a "shell company" as defined by the United States Securities Exchange Act of 1934, as amended, (the "Exchange Act").

8. Reliability's Common Stock is currently quoted on the OTCQB of the OTC Marketplace under the symbol of "RLBY"

9. Nicholas Peter Tsahalis is an individual who on information and belief resides at 12124 Skylark Rd., Clarksburg, MD 20871.

10. Mark R. Speck is an individual, resides at 43033 Lago Stella Place, Ashburn, Va. 20148.

11. Lone Star Value Management, LLC ("Lone Star Management"), is a Connecticut limited liability company with its principal place of business located at 53 Forest Av, Old Biblewich, CT 06870.

12. Jeffrey E. Eberwein is an individual, and on information and belief, is resident of Connecticut.

13. Mr. Eberwein is the sole member of Lone Star Management.

14. Vivos Holdings is owned and controlled by Dr. Naveen Doki and his business partner Dr. Silvija Valleru.

*Vivos Intercompany Promissory Notes & Guarantee*

15. On November 9, 2016, Vivos Holdings acquired 100% of Maslow through a stock purchase, which Vivos Holding has fully-paid.

16. Maslow originally focused on providing qualified production crews to Washington, D.C.'s television, cable, and multimedia outlets.

17. Over time, Maslow expanded its reach, adding managed services, employer of record services, and executive recruiting services to clients throughout the United States.

18. On November 15, 2016, Maslow executed an intercompany promissory note receivable with Vivos Holdings in the amount of $1,400,000. (Herein after referred to as "Intercompany Promissory Note 1").

19. As defined by the Intercompany Promissory Note 1, the loan consisted of two periods, whereby the first period from November 15, 2016 until September 30, 2018, no

principal or interest payments were required. Interest accrued monthly and a new loan in the amount of $1,773,439 was due on September 20, 2023.

20.    Although the Vivos Intercompany Promissory Note does not mature until 2023, on June 12, 2019, without consideration whatsoever, Dr. Doki, personally guaranteed to Maslow repayment of $3,000,000 of the balance all indebtedness incurred with Maslow by Vivos Holdings, LLC within the 2019 calendar year via cash, stock, or other business assets.

21.    The parties to the Vivos Intercompany Promissory Note did not agree or contemplate that any contributions would be made by any of the Makers in 2019 or prior to the maturity date of the Vivos Intercompany Promissory Notes in 2023.  Indeed this was admitted by Reliability in its various filings with the SEC.

22.    It was agreed, understood and contemplated by the parties that Dr. Doki will not make such cash contributions to Maslow prior to the maturity dates of the Vivos Intercompany Promissory Notes but rather through mergers with other entities and stock transfers.  This was all done and fully disclosed before the 2019 Merger.

*Maslow under Vivos' Management*

23.    Before the merger in 2019, while managed by Vivos Management, Maslow's Revenue for the twelve months ending on December 31, 2018 increased 7.4% to $37,637,982 as compared to $35,059,999 for the twelve months that ended December 31, 2017.

24.    Maslow's Gross Profits for the same period increased by 1.5% to $3,864,463 from $3,806,430 for the twelve months ending on December 31, 2017.

25.    Maslow, while under the control of and while being managed by Vivos Management Company, LLC, hired Tsahalis and Speck, as at will employees, primarily to expand Maslow's business.

26.    Tsahalis and Speck were specifically hired and charged with the responsibility

to expand Maslow's domestic coverage by acquiring specialized staffing and workforce management organizations that allow it to grow and strengthen its geographic reach, prime customer relationships, customer count, and core capabilities.

27.    Further, Tsahalis and Speck were charged with continuing to enhance Maslow's core competencies through potential acquisitions of businesses with strong staffing and solution specialties.

### *The Maslow Merger Agreement*

28.    On September 18, 2019, a merger agreement (the "Maslow Merger Agreement") was entered into among (i) Reliability, (ii) R-M Merger Sub, Inc., a Virginia corporation and a wholly owned subsidiary of Reliability ("Merger Sub"), (iii) Maslow, (iv) Jeffrey Eberwein ("Eberwein"), (v) Naveen Doki ("Dr. Doki") and (vii) Dr. Silvija Valleru.

29.    The Maslow Merger Agreement provided for, among other things, a business combination whereby Merger Sub will merge with and into Maslow, with Maslow as the surviving entity (the "Merger").

30.    In Paragraph 2.03 of the Maslow Merger Agreement, the Parties agreed, inter alia, as follows:

> … (b)  The Articles of Incorporation of Maslow shall be the Articles of Incorporation of the Surviving Company, until duly amended or repealed in accordance with the provisions thereof and of applicable Law; and
>
> (c)    The Bylaws of Maslow shall be the Bylaws of the surviving Company, until duly amended or repealed in accordance with the provisions thereof and of applicable Law.

31.    In Paragraph 10.09 of the Maslow Merger Agreement, the Parties agreed as follows:

> This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by all of the Parties, … No waiver by any Party of any of the provisions hereof shall be effective unless

7

explicitly set forth in writing and signed by such Party. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

32.     Under the Maslow Merger Agreement, the parties contemplated that, given the equity being acquired by or on behalf of Respondents, they would constitute a majority of the board of directors of Reliability.

33.     In Paragraph 2.15(c) of the Maslow Merger Agreement, the parties specifically agreed that at the Closing, the

> "Reliability Board shall elect Naveen Doki, Silvija Valleru, Shirisha Janumpally, Mark Speck to the Reliability Board, and one current member of the Reliability Board as designated by Mr. Eberwein shall remain on the Reliability Board for a period of two years following the Closing, and all other directors shall resign when such election is complete, leaving those five named individuals as the sole directors of Reliability. Notwithstanding the foregoing, Mr. Eberwein shall retain the option to remain an observer to the Reliability Board for a period of two years following the Closing, provided that Reliability may exclude Mr. Eberwein from such observer rights to the extent that Reliability is advised by legal counsel that such exclusion is required in connection with the fiduciary or other duties of the Reliability Board."

*See* **Exhibit 1** ¶ 2.15(c).

34.     Under the Maslow Merger Agreement, at Closing, "the officers of Reliability as of immediately before the Closing shall resign, and the Reliability Board, as newly constituted under Section 2.15(c), shall elect new officers of Reliability, Maslow, and each corporation or other entity as to which Reliability or Maslow owns, directly or beneficially, a majority of the voting power." See **Merger Agreement** ¶ 2.15(c).

*Maslow Articles of Incorporation and Bylaws*

35.   Maslow is a Virginia Corporation and is governed by the laws of the Commonwealth of Virginia.  Attached hereto and incorporated herein as **Exhibit 1** is a copy of Maslow's corporate documents including the operative Articles of Incorporation and Bylaws.

36.   The Maslow Articles of Incorporation do not provide that Maslow's Directors may be removed only for cause.  *See* **Exhibit 1**.

37.   Pursuant to the Maslow Articles of Incorporation and applicable law, the Maslow shareholders were vested with the authority to remove one or more directors with or without cause.

38.   Section 2 of Maslow's Bylaws provides, in pertinent part. "Special meetings of the stockholders for any purpose o[r] purposes, unless otherwise prescribed by statute. may be called by the president or by the directors, **and shall be called by the president at the request of the stockholders of not less than two-thirds of all outstanding shares of the corporation entitled to vote at the meeting**." (Emphasis added).

39.   Maslow's Bylaws provide in paragraph 9 that "… Directors may be removed without cause only by majority vote of the stockholders."

40.   On or before October 29, 2019 Maslow's majority shareholders were as follows:

| | |
|---|---|
| Dr. Naveen Doki | 3.9% |
| Dr. Dr. Silvija Valleru | 1.95% |
| Judos Trust | 62.48% |
| Igly Trust | 15.62% |
| Shirisha Janumpally | 3.9% |
| Federal Systems | 7.81% |
| Kalyan Pathuri | 1.95% |
| Others | 2.39% |

41.   As a result of the multimillion-dollar investment in Reliability, the Maslow shareholders wanted to condition the Merger on having control of the new board and thus required that Dr. Naveen Doki, Dr. Silvija Valleru, and Shirisha Janumpally be appointed to the

9

new Reliability Board after the merger to make sure their investment are protected and to have

a say in the management of the company after the merger.

*Reliability's Bylaws*

42.    Section 4.1 of Reliability's 04/06/2007 Amended and Restated Bylaws, a copy

of which is attached as **Exhibit 2** and is incorporated herein by reference, provides, *in pertinent*

*part*, as follows:

> The business and affairs of the Company shall be managed and
> controlled by the board of directors; and, subject to any restrictions
> imposed by law, by the articles of incorporation, or by these bylaws,
> the board of directors may exercise all the powers that the Company
> is authorized to exercise. The board of directors shall consist of six
> (6) members. Such number may be increased or decreased by
> amendment of these bylaws, provided that no decrease shall effect a
> shortening of the term of any incumbent director. Directors need not
> be residents of Texas or shareholders of the Company absent
> provision to the contrary in the articles of incorporation or laws of
> the State of Texas. Except as otherwise provided in Section 4.3 of
> these bylaws, each position of the board of directors shall be filled
> by election at the annual meeting of shareholders. Any such election
> shall be conducted in accordance with Section 3.8 of these bylaws.
>
> Each person elected a director shall hold office, unless removed in
> accordance with Section 4.2 of these bylaws, until the next annual
> meeting of the shareholders and until his successor shall be been
> duly elected and qualified.

43.    Section 4.2 of Reliability's 03/12/2004 Amended and Restated Bylaws,

provides, in pertinent part, as follows:

> Any director or the entire board of directors may be removed from
> office, with or without cause, at any special meeting of shareholders
> by the affirmative vote of a majority of the shares of the shareholders
> present in person or by proxy and entitled to vote at such meeting,
> if notice of the intention to act upon such matter shall have been
> given in the notice calling such meeting. If the notice calling such
> meeting shall have so provided, the vacancy caused by such removal
> may be filled at such meeting by the affirmative vote of a majority
> in number of the shares of the shareholders present in person or by
> proxy and entitled to vote.

Each person elected a director shall hold office, unless removed in accordance with Section 4.2 of these bylaws, until the next annual meeting of the shareholders and until his successor shall be been duly elected and qualified.

44.     Section 6.10 of Reliability's 03/12/2004 Amended and Restated Bylaws

addressees Indemnification of Officers and Directors and provides, *inter alia*, as follows:

The Company shall indemnify to the full extent allowed by law any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit, or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding by reason of the fact that he is or was a director, officer, employee, or agent of the Company, or is or was serving at the request of the Company as a director, officer, employee, partner, venturer, proprietor, trustee, agent, or similar functionary of another corporation, partnership, joint venture, trust, other enterprise, or employee benefit plan.

This indemnification shall, to the extent permitted by law, be against judgments, penalties, fines, settlements and reasonable expenses actually incurred in connection with such investigation, action, suit or proceeding but if the person is found liable to the Company or is found liable on the basis that personal benefit was improperly received by the person, indemnification shall be limited to reasonable expenses actually incurred by the person in connection with the proceeding and shall not be made in respect of any proceedings in which the person shall have been found liable for willful or intentional misconduct in the performance of his duty to the Company. **A person acting in his official capacity as a director of the Company must have conducted himself in good faith and reasonably believed his actions to have been in the Company's best interests. A person acting in any other capacity must have conducted himself in good faith and reasonably have believed his actions were not opposed to the Company's best interests**. In the case of any criminal proceeding, indemnification requires that the person indemnified have had no reasonable cause to believe his conduct was unlawful.

Any indemnification under this section shall be made by the Company only as authorized in the specific case upon a determination that indemnification is proper because the director, officer, employee or agent **has met the applicable standard of conduct as set forth in the laws of the State of Texas**, and the amount of indemnification (before or after termination of the

proceedings) shall be made only as set forth in the laws of the State of Texas. Such determinations shall be made as set forth in the laws of the State of Texas.

Any indemnification of or advance of expenses with respect to an action, suit, proceeding or investigation to any officer, director, employee, or agent of the Company shall be reported in writing to the shareholders with or before the notice or waiver of notice of the next shareholder's meeting or with or before the next submission to shareholders of a consent to action without a meeting pursuant to Section 3.14 hereof and, in any case, within the twelve-month period immediately following the date of the indemnification or advance.

\* \* \*

45.     Section 6.12 of Reliability's 03/12/2004 Amended and Restated Bylaws

addressees Meeting by phone and provides, inter alia, as follows:

Meetings by Telephone. Subject to the provisions required or permitted by these bylaws or the laws of the State of Texas for notice of meetings, shareholders, … may participate in and hold any meeting required or permitted under these bylaws by telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other. Participation in a meeting pursuant to this Section shall constitute presence in person at such a meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

46.     Section 7.1 of Reliability's 03/12/2004 Amended and Restated Bylaws

addresses alternations or amendments to the Bylaws and provides, *in pertinent part*, as follows:

These bylaws may be altered, amended, or repealed, or new bylaws may be adopted, by a majority of the board of directors at any duly held meeting of directors, provided that notice of such proposed action shall have been contained in the notice of any such meeting, unless the articles of incorporation or the laws of the State of Texas reserve the power exclusively to the shareholders in whole or in part, or the shareholders in amending, repealing or adopting a particular bylaw expressly provide that the board of directors may not amend or repeal that bylaw. Unless the articles of incorporation or a bylaw adopted by the shareholders provides otherwise as to all or some portion of the Company's bylaws, the holders of a majority of the shares represented at any duly held meeting of the shareholders, provided that notice of such proposed action shall have been

contained in the notice of any such meeting, may amend, repeal or adopt the Company's bylaws.

47.     On April 6, 2007 Reliability's Board of Directors Amended only Section 4.1 of the company's Amended and Restated Bylaws.  Attached hereto and incorporated herein as **Exhibit 3** is a copy of the April 6, 2007 Amendment to Section 4.1.

48.     Section 4.1 of the April 6, 2007 Amended and Restated section 4.1 of the Bylaws provides as follows:

> The business and affairs of the Company shall be managed and controlled by the board of directors; and , subject to any restrictions imposed by law, by the articles of incorporation, or by these bylaws, the board of directors may exercise all the powers that the Company is authorized to exercise. The board of directors shall consist of six (6) members. Such number may be increased or decreased by amendment of these bylaws, provided that no decrease shall effect a shortening of the term of any incumbent director. Directors need not be residents of Texas or shareholders of the Company absent provision to the contrary in the articles of incorporation or laws of the State of Texas. Except as otherwise provided in Section 4.3 of these bylaws, each position of the board of directors shall be filled by election at the annual meeting of shareholders. Any such election shall be conducted in accordance with Section 3.8 of these bylaws.
>
> Each person elected a director shall hold office, unless removed in accordance with Section 4.2 of these bylaws, until the next annual meeting of the shareholders and until his successor shall be been duly elected and qualified.

*Conspiracy to defraud Dr. Doki and Maslow's Shareholders and to induce the Merger*

49.     After the parties entered into the Maslow Merger Agreement, Dr. Naveen Doki, Dr. Silvija Valleru, and Shirisha Janumpally, were informed by Speck that because of the Vivos Intercompany Promissory Notes, they could not serve on Reliability's Board of Directors after the merger.

50.     Eberwein, individually and as the agent of Lone Star Management, recognized that if Dr. Naveen Doki, Dr. Silvija Valleru, and Shirisha Janumpally could not be appointed to the post-merger Board of Directors as provided in the Maslow Merger Agreement, he and Lone

13

Star Management would lose a multimillion dollar opportunity that they would gain as a result of the Maslow merger.

51.     Speck also recognized that without the Maslow merger he could not secure any interests in Reliability and will be unable to personally profit form the Maslow Merger.

52.     Eberwein, individually and as agent of Lone Star Management, then conspired with Speck and Tsahalis to induce Dr. Doki and Dr. Valleru to waive the requirements stated in Section 10.09 of the Maslow Merger Agreement and to induce them to proceed with the Maslow Merger Agreement.

53.     Specifically, a few days before the Closing, on October 21, 2019, Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, represented to Dr. Doki and Dr. Valleru that in accordance with Reliability's Bylaws and the applicable law, if they consent, then Eberwein and Speck will appoint new members as recommended by Dr. Doki and the majority shareholders of Reliability.

54.     They also represented that if De. Doki agreed to the merger, the new Board of Directors which will be comprised of Mr. Speck, Ms. Bible, one of Lone Star's employees and agents, will appoint those Board members recommended by Dr. Doki and Dr. Valleru, and that Dr. Doki and the resulting majority shareholders of Reliability, will have the authority to remove any directors for cause or no cause and to replace any member of the Reliability Board for cause or no cause.

55.     At the time those representations were made Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis knew those representations were false as they had already agreed that they would not approve any members recommended by Dr. Doki and Dr. Valleru and they agreed not to allow them to have a majority representation on the Board since they intended to shut them out and divest them of their voting rights

14

immediately upon completion of the merger between Maslow and Reliability.

56.     Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis represented to Dr. Doki and Dr. Valleru that their investment in Reliability will be protected after the merger even if they were not on the board, as they will be able to always remove and appoint Reliability's Board of Directors after the merger as a result of their voting rights..

57.     This representation was untrue when made as Eberwein, Tsahalis and Speck had already agreed to shut out Dr. Doki and the other post-merger shareholders as they perceived them as ignorant investors.

58.     Those Representations were false at the time they were made, as Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis had agreed to shut out those shareholders whom they perceived as ignorant and self-serving, from electing any members of the board or to have any say in the direction in which Maslow was to proceed in the future.

59.     Speck and Tsahalis, because of their positions of control and authority as officers and/or directors of pre-merger Maslow, were able to, and did, directly and/or indirectly, exercise control over the various misleading statements disseminated by them to Dr. Doki and Dr. Valleru to induce Vivos, Doki and Valleru to proceed with the Maslow merger.

60.     Because of their advisory, executive, managerial and directorial positions, each of Speck and Tsahalis during the period between October 21, 2019 and the Closing in which they held their respective positions had access to adverse, non-public information about Lone Star's scheme and their plan to shut out the shareholders immediately after Closing and to proceed with the scheme to divest them of their voting rights and to entrench themselves as the members of the Board to do as they will with the assets of Malow and to act against the

shareholders interest in Reliability.

61.     Tsahalis and Speck hid that information from the Respondents.

62.     Respondents were justified to rely on the false representation made by Tsahalis and Speck, as they were officers of Maslow and owed Dr. Doki and the pre-merger Maslow shareholders fiduciary obligations at the time.

63.     Speck, Tsahalis, and Eberwein, individually and as the agent of Lone Star Management, made the misrepresentations to Dr. Doki and Dr. Valleru solely to implement the scheme they devised to obtain full control of Maslow after the merger, to shut out the Reliability post-merger shareholders whom they perceived as ignorant and self-serving, and to secure a huge windfall for themselves by giving themselves huge salaries and bonuses and ultimate control of Maslow and Reliability.

64.     Speck, Tsahalis, and Eberwein, individually and as the agent of Lone Star Management, failed to reveal material facts concerning their scheme, such that Respondents and other Maslow shareholders could have made informed decisions about merger between Maslow and Reliability.

65.     Dr. Doki and Dr. Valleru, had no way of finding out that Maslow's employees, Speck and Tsahalis were conspiring with Mr. Eberwein, individually and as the agent of Lone Star Management, to defraud them from their interest in Maslow and to shut them out after the merger with Reliability.

66.     In reliance on those false representations, on October 23, 2019 Dr. Doki and Dr. Valleru agreed to authorize the merger between Maslow and Reliability and waived the requirements of Section 10.09 of the Merger Agreement. *See* **Exhibit 4**.

67.     Eberwein, individually and as the agent of Lone Star Management, as well as Speck and Tsahalis made those false representations with the intent to defraud the Respondents

to proceed with the Closing.

68.     But for the false representations, Respondents would not have proceeded with the Closing, would not have waived the provision of paragraph 10.09 of the merger Agreement and would have sought to rescind the Maslow Merger Agreement as having a majority representation on the Reliability Board of Directors was a material condition of the Maslow Merger Agreement.

69.     At the time the representations were made by Eberwein, Tsahalis and Speck to induce Dr. Doki and Dr. Valleru to modify the Merger Agreement, Speck, Tsahalis and Eberwein knew that those representation were false as they had agreed to shut them out after the merger.

70.     At the time the Representations were made, Eberwein, Tsahalis and Speck did not intend to elect the board members recommended by the Respondents or to allow them to call any Special Shareholder meeting for the specific purpose of appointing or removing any members of the post-merger Reliability Board of Directors if they were to remove either one of them from the Board.

71.     The representations were made intentionally, to obtain Respondents' commitment to proceed with the Closing, and to tie up and control Maslow.

*Long Star Agreements*

72.     On October 28, 2019, after inducing Dr. Doki and Dr. Valleru to proceed with the Closing, one day in advance of the Closing of the Maslow Merger Agreement, Reliability entered into a debt conversion agreement with LSV Co-Invest and another one with LSV Investors (together, the "Debt Conversion Agreements"), whereby Reliability converted substantially all of its issued and outstanding liabilities and debts into 1,085,307 shares of its authorized, issued and outstanding common stock, pursuant to which $50,000 and $70,000 in principal and interest accrued through September 18, 2019, was converted into 514,893 and

570,414 shares of Reliability's common stock for LSV Investors and LSV Co-Invest, respectively.

73.     Lone Star Value Management was the investment manager of Lone Star Value Investors, LP and Lone Star Value Co-Invest I, LP

74.     As of the date of the Debt Conversion Agreements, each of LSV Investors and LSV Co-Invest were significant shareholders of Reliability's common stock.

75.     Since April 25, 2014, Hannah Bible was and continues to be a paid executive employee of Lone Star Value Management, the investment manager of Lone Star Value Investors, LP and Lone Star Value Co-Invest I, LP and the record owners of the majority of Reliability's stock before the merger.

76.     Since April 25, 2014 until the present, Hannah Bible has been appointed as one of Reliability's Board of Directors.

77.     At all relevant times to the Maslow Merger Agreement and until the closing on October 29, 2019, Ms. Bible was acting as the President and Chief Executive Officer of Reliability.

*The Closing*

78.     The Merger Closed in accordance with the terms of the Maslow Merger Agreement on October 29, 2019 ("Closing").

79.     The Merger was consummated on October 29, 2019 by the filing of a Statement of Merger with the Secretary of the Commonwealth of Virginia and by making other filings or recordings required under the Virginia Stock Corporation Act in connection with the Merger.

80.     At the Closing, the members of the Reliability Board of Directors consisted of Hannah Bible, Shawn Miles, and Julia Dayton.  They subsequently elected Speck to serve on the Reliability Board of Directors.

81.     As per the Malow Merger Agreement, Eberwein remained on the Reliability Board as an observer.

82.     Although Reliability's Bylaws required six (6) Directors, consistent with the conspiracy between Speck, Tsahalis and Eberwein, immediately upon electing Mr. Speck on the Board, each of Mr. Miles and Ms. Dayton resigned from Reliability's Board of Directors as ordered by Eberwein.

83.     Pursuant to the Maslow Merger Agreement, at Closing, the separate corporate existence of Merger Sub ceased, and Maslow continued as the surviving corporation and a wholly owned subsidiary of Reliability.

84.     Pursuant to the Maslow Merger Agreement, at Closing, Merger Sub, merged with and into Maslow.

85.     Pursuant to the Maslow Merger Agreement, at Closing, Maslow became the surviving corporation and became Reliability's wholly owned subsidiary.

86.     Pursuant to the Maslow Merger Agreement, at Closing, all of the outstanding Maslow Common Stock was converted into shares of Reliability Common Stock.

87.     As a result of the Closing, Reliability ceased to be a "shell" company as defined by Rule 12b-2 of the U.S. Exchange Act and solely by virtue of its ownership of Maslow became an indirect operating entity.

88.     At Closing, all shares of Maslow common stock issued and outstanding were converted into a number of shares of Reliability common stock constituting 94% of the total issued and outstanding shares of Reliability common stock

89.     As a result of the Merger, Reliability acquired the business of Maslow and continued the existing business operations of Maslow as a publicly traded company under the name Reliability Incorporated.

90.      Reliability is not quoted on any exchange that has director independence requirements, or any other exchange.  Its Common Stock is quoted on the OTC Marketplace, which does not have director independence requirements.

91.      SEC rules do not require OTC quoted companies to have independent members on their board of directors or have standing audit, compensation or nominating committees of their board.

92.      The shareholders of Reliability as of immediately prior to the Closing collectively retained a total aggregate number of shares of Reliability common stock constituting 6% of the issued and outstanding shares of Reliability common stock immediately following the effective time of the Merger.

93.      As a result of the Closing each of (1) Speck together with his entity, Hawkeye Enterprises, Inc., and (2) Tsahalis were issued 1% interest in Reliability.

94.      The following is a list of all known shareholders of Reliability, and its sole subsidiary, Maslow after the Closing:

| | |
|---|---|
| Speck & Hawkeye Enterprises, Inc. | 1.1% |
| Tsahalis | 1.1% |
| Dr. Naveen Doki | |
| Federal Systems | |
| Judos Trust | |
| Dr. Shirisha Janumpally | 69.13% |
| and Dr. Dr. Silvija Valleru | |
| Igly Trust | |
| Kalyan Pathuri | 17.2% |
| | |
| Lone Star Value Management, LLC, | |
| Lone Star Value Investors, LP, | |
| Lone Star Value Co-Invest I, LLP | |
| Lone Star Value Investors GP, LLC, | 1.3% |
| | |
| Others | 10.4% |

95.      Immediately after the Closing, the officers of Reliability the Reliability Board of Directors, consistent with the conspiracy between Speck, Tsahalis and Eberwein, individually

20

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 95 of 150

and as the agent of Lone Star Management, the Reliability Members of the Board elected Tsahalis (as President) and Speck (as Chief Financial Officer and Secretary) of both Reliability and Maslow to serve as officers of Maslow and Reliability.

96.    Immediately after the Closing, Reliability entered into a Lock-Up Agreement with each of Eberwein, Dr. Doki, Dr. Shirisha Janumpally ("Dr. Janumpally"), Dr. Valleru, Igly Trust, a trust for which Kalyan Pathuri was sole trustee and beneficiary, and Judos Trust, a trust for which Dr. Janumpally was the sole trustee and beneficiary pursuant to which each of the above agreed not to (i) offer for sale, sell, pledge or otherwise dispose of (or enter into any transaction or device that is designed to, or could be expected to, result in the disposition by any person at any time in the future of) any shares of Reliability Common Stock; (ii) enter into any swap or other derivatives transaction that transfers to another, in whole or in part, any of the economic benefits or risks of ownership of shares of Reliability Common Stock, whether any such transaction is to be settled by delivery of shares of Reliability Common Stock or other securities, in case or otherwise; or (iii) publicly disclose the intention to do (i) or (ii).

97.    After the Closing, Dr. Doki, Dr. Shirisha Janumpally, Dr. Valleru, Igly Trust, a trust for which Kalyan Pathuri was sole trustee and beneficiary, and Judos Trust, a trust for which Dr. Janumpally was the sole trustee and beneficiary, and Federal Systems (a company owned and controlled by Dr. Janumpally) became the majority shareholders of Reliability's stock (hereinafter "Majority Shareholders"). They were not signatories to the Merger Agreement or subject to it arbitration terms.

98.    Dr. Janumpally, Federal Systems, Mr. Pathuri and Eberwein were not subject to the terms of the Lock-Up Agreement.

99.    However, their shares were restricted and could not be sold without registration or an exemption from registration.

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 96 of 150

100.     Immediately after the Closing, the Reliability Stock closed at Fifty-Seven Cents Per Share ($0.57).  This made the company's net worth to exceed $120 Million as a result of the Merger.

101.     On October 30, 2019, the Members of the Reliability Board of Directors, consistent with the conspiracy between Speck, Tsahalis and Eberwein, individually and as the agent of Lone Star Management, appointed Tsahalis, Maslow's newly appointed President, as a member of the Board of Directors.

102.     Although Naveen Doki, and the majority Shareholders recommended new members to be appointed to Reliability's Board of Directors, Speck, Tsahalis and Eberwein, consistent with their scheme, refused to elect them to the Board claiming that they "were not impressed" with the Majority Shareholders' recommendations for the Board.

103.     To further the conspiracy, Hannah Bible was instructed by Eberwein to support Tsahalis and Speck on the Reliability Board of Directors.

104.     As the employee of one of Eberwein's entities, Ms. Bible complied and remained complacent with the conspiracy between Eberwein, Tsahalis and Speck.

### *The Merger with Intelligent Quality Solutions, Inc. or "IQS"*

105.     On November 20, 2019, pursuant to terms of the Promissory Notes, Maslow Media Group, Inc. as a wholly owned subsidiary of Reliability Incorporated, entered into an Asset Purchase Agreement (the "IQS Purchase Agreement") to be effective on December 1, 2019, with Vivos Holdings Inc., a Delaware Corporation and Dr. Doki.

106.     Pursuant to the IQS Purchase Agreement, Maslow purchased from Vivos Holdings certain assets, properties, and rights related to full-service software quality management and testing solutions constituting Intelligent Quality Solutions Inc. (referred to herein as "IQS").

107.    IQS is a full-service Software Quality Management solutions IT consulting company, offering a wide range of Quality Management services.

108.    As a result, Maslow acquired the following from IQS:  (i) working capital required to run the business of IQS (ii) all information exclusively related to the customers of IQS, including customer agreements, customer contact and account information, historical data for each customer including work logs, project notes, revenue, and refunds or adjustments; (iii) a list containing the business name, contact name, business postal mailing address, telephone number and email contact address of each customer that previously used or presently uses IQS; (iv) the Seller's IQS customer lists, lists or reports of agreements related exclusively to IQS and financial data related exclusively to IQS; (v) the registered trademarks and service marks, trademark and service mark applications, common law trademarks and service marks, logos, tag lines, Internet domains, URLs, domain names, and naming rights associated exclusively with IQS; (vi) IQS marketing collateral in published, electronic, digital or other form, which is deemed current and is in use prior to December 5, 2019 (the "Closing Date" of the Purchase Agreement); (vii) fixed assets such as computers, servers and office furniture which are used by IQS personnel; (viii) any other assets material to the operation of IQS or which Seller exclusively uses for IQS, including but not limited to customer and prospect databases; (ix) the lease(s) for the premises from which the principal business of IQS are provided, and the furniture therein; (x) normal and customary accounts receivable from customers of IQS and certain accounts payable applicable to the cost of revenue to vendors other than vendors who are creditors pursuant to any type of commercial factoring agreement and (xi) with respect to customers of IQS, any other information which, while not exclusively related to a customer of IQS, the Seller would in good faith believe a reasonable purchaser would or should want to know about an IQS customer.

109. Steve Crowell is the Founder and CEO of IQS.

110. As a result, amounts owed by the promissory Notes were reduced by a minimum of $1,417,717.

### *Ultra Vires Indemnification of Officers and Directors*
### *Under Reliability Organizational Documents*

111. After acquiring IQS, Tsahalis, Speck and Eberwein, individually and on behalf of Lone Star Management, instead of taking efforts to improve the shareholders' value in Maslow, Maslow took actions to further their scheme to shut out Dr. Doki and Reliability's Majority Shareholders from the benefit of their bargain.

112. Tsahalis, Speck and Eberwein immediately took actions to implement their scheme to entrench Tsahalis and Speck  as directors and officers of Reliability and Maslow, and to defraud Reliability's majority shareholders, whom they often called, *inter alia*, ignorant, of their voting rights, and to divest them of their status as majority interest holders in Reliability, to reverse split their shares, to dilute their interest in Reliability, to block the majority shareholders from electing directors as allowed by the Bylaws and applicable law, and to forbid the majority shareholders from terminating the current Board Members.

113. On December 13, 2019, Tsahalis and Speck, with the approval of Eberwein, individually and on behalf of Lone Star Management, appointed Hannah M. Bible, a longtime employee of Lone Star Management, to serve as Chairperson of the Board, effective immediately.

114. Notwithstanding the repeated requests by the majority of Reliability's Shareholders to appoint 6 members to the board of Directors, Tsahalis, Speck and Ms. Bible, refused to elect any additional members to the Board of Directors.

115. Tsahalis, Speck and Ms. Bible recognized that if they allowed other members to the board, the conspiracy between Eberwein, Tsahalis and Speck would be discovered and

defeated.

116.    To further enlist Ms. Bible's loyalty to the conspiracy, Tsahalis and Speck, proposed and voted in favor of compensating Ms. Bible $5,000 per quarter on the condition that she continues to be a passive member of the board and to allow Tsahalis, Speck and Eberwein, individually and as the agent of Lone Star Management to continue with their scheme to dilute the interests of Dr. Doki and the former Maslow Shareholders and to them out.

117.    This resolution was done notwithstanding the fact that Reliability's cashflow predictions for 2020 were negative in excess of $500,000.

118.    When Dr. Doki and Reliability's Majority Shareholders complained to Tsahalis and Speck about their failures as Officers and Members of the Board, and demanded that they comply with their fiduciary obligations owed to the Reliability's Shareholders as required by the applicable law, Tsahalis and Speck with the guidance and help of Eberwein and Lone Star Management, took certain *ulta vires*, actions to protect themselves and to shut out the Majority Shareholders and entrench themselves until their scheme is completed.

119.    While Maslow's cashflow predictions for 2020 were negative $500,000, on December 13, 2019, the Board appointed Eric D. Young to serve as Maslow's General Counsel, effective January 6, 2020.

120.    Mr. Young was paid a large salary.

121.    Tsahalis, Speck and Eberwein continued to block any Board candidates proposed by the shareholders to keep their control of the company.

122.    Tsahalis, Speck and Eberwein attempted to dilute the interest Dr. Doki and other shareholders by attempting to issue more company shares.

123.    However, when Dr. Doki and others refused to do so, then Tsahalis, Speck and Eberwein charged Mr. Young with finding out ways to divest the shareholders of their voting

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 100 of 150

rights.

124.    Upon discovering the unauthorized and intentional acts of Tsahalis, Speck and Eberwein to entrench themselves as officers of the company, and to siphon all of Maslow's assets for their sole benefit and gain, the Majority Shareholders along with Dr. Doki called for the termination of Tsahalis and Speck from Reliability's Board of Directors

125.    After recognizing that Speck and Tsahalis' actions in wasting business assets posed severe risks to the financial and operating viability of Maslow and Reliability, Judos Trust, Igly Trust, Federal Systems, LLC, Naveen Doki, Shirisha Janumpally, Kalyan Pathuri, Dr. Valleru complained to Ms. Bible and Eberwein, about the unauthorized acts of both Speck and Tsahalis.

126.    Ms. Bible and Eberwein ignored those complaints.

127.    Dr. Doki in November 2019, to satisfy the Guarantee issued to Maslow and to pay off the Vivos Promissory Notes, offered a merger with Senryo, Innova Consulting Services, LLC, and Futuris Technology Services, Inc., however Tsahalis, Speck. Bible and Eberwein, refused to properly consider or approve those proposed mergers.

128.    Instead, Tsahalis, Speck. Bible and Eberwein continued to carry out their plan to strip Dr. Doki and the other majority Shareholders of their voting rights for Reliability and to destroy Maslow.

129.    Tsahalis and Speck instructed Young to mount a campaign to poison the employee opinions of the majority shareholders and to take steps to entrench Tsahalis and Speck as directors and officers of Maslow.

130.    Tsahalis and Speck instructed Young to explore avenues for diluting Dr. Doki, and the other "ignorant" Majority Shareholders' interest in Reliability through a reverse split.

131.    To add insult to injury, while carrying out their scheme to defraud Dr. Doki and

26

the Majority Shareholders of their interest, Tsahalis and Speck, along with Eberwein and Bible as the employees of Lone Star Management, took actions to shield themselves from any and all liability as they carried out their conspiracy.

132.    Tsahalis and Speck, with the acquiescence of Ms. Bible, as instructed by her employer Lone Star Management and Mr. Eberwein, on December 20, 2019, the Board of Directors of Reliability entered into an Indemnification Agreement with each of Tsahalis and Speck (hereinafter the Indemnification Agreements). *See* December 20, 2019 Form 8 K and attached Indemnification Agreement, attached hereto and incorporated herein as **Exhibit 5**.

133.    The Indemnification Agreements did not conform to and indeed expanded those terms contained in Reliability or Maslow's Articles of Incorporation and Bylaws and the applicable law.

134.    Further, Tsahalis and Speck to further entrench themselves as Officers of Maslow and Reliability and to protect themselves from the Majority Shareholders' calls for their resignation, sought to enter into contract with an employment contract with Reliability and Maslow to secure their positions as officers against the will of the majority shareholders, whom they continued to perceive as "ignorant."

135.    Recognizing that the Majority Shareholders had a statutory right to terminate Tsahalis and Speck as members of Reliability's Board of Directors when they requested a Special Meeting, they took *ultra vires* actions specifically aimed at preventing those Shareholders from calling such a meeting or getting access to the list of Shareholders to call one themselves.

136.    Tsahalis and Speck with the assistance of Eberwein and Bible immediately refused the Shareholders request that the company call a Special Meeting of Shareholders.

137.    On February 14, 2020, frustrated by the actions of Tsahalis and Speck in

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 102 of 150

refusing to merge with the entities proposed by the Majority Shareholders and to appoint members to the board when recommended by the Majority Shareholders and Dr. Doki, they requested in writing that the Board of Directors pursuant to Sections 3.2 and 3.3 of Reliability's Bylaws and Sections 21.409 of the Texas Business Organizations Code call a Special Meeting of the shareholders to be held at the Company's Offices located at 22 Baltimore Road, Rockville, MD 20850 on February 28, 2020 for the specific purpose of terminating Tsahalis and Speck from the Board and to appoint new 6 members of the Board as per the Merger Agreement including Hannah Bible, Lawrence Gaffey, Phakir Doki, Srinivas Kalidindi and Katherine Martell.

138. Section 21.409 of the Texas Business Organizations Code provides, in pertinent part:

> **(a)** Except as otherwise provided by the certificate of formation or bylaws of a corporation or this subchapter, **the shareholders of the corporation may remove a director or the entire board of directors of the corporation, with or without cause**, at a meeting called for that purpose, by a vote of the holders of a majority of the shares entitled to vote at an election of the director or directors. (Emphasis added).

*       *       *

139. Instead of calling the special meeting as allowed by the Bylaws and the applicable law, , and instead of allowing the super Majority Shareholders access to the Exchange Agent so that they can get access to Reliability's shareholder list to call the Special Meeting, Tsahalis and Speck, doubled down, and blocked Dr. Doki from calling the special shareholder meeting to remove Tsahalis and Speck as members of the board of directors.

140. Tsahalis and Speck, using Reliability's and Maslow financial resources immediately engaged the services of various counsel in Texas and Maryland, to sue Dr. Doki and the other Majority Shareholders with an intent to deprive them from calling the special meeting of Shareholders and to divest them of their voting rights and the benefits of the Malow

28

Merger Agreement.

141.    Eberwein, individually and as the agent of Lone Star Management supported Tsahalis and Speck and instructed Ms. Bible to stand by Tsahalis and Speck's actions.

142.    Ms. Bible, as instructed by her employer, Eberwein and Lone State Management, notwithstanding the conflict between Tsahalis, Speck and the majority Shareholders, voted to approve the overreaching and *ultra vires* Indemnity Agreement in December 2019.

143.    Tsahalis and Speck, consistent with their conspiracy with Eberwein individually and on behalf of Lone Star Management voted to sue the Majority Shareholders in Texas to divest them of their voting rights and to shut them out from exercising their statutory rights to elect members of the broad by a special meeting.

144.    All the while, Ms. Bible holding the position of Chairman of the Board, stood by as without concern or interest in protecting the Majority Shareholder's right to call the Special Shareholder meeting as allowed by law and the company Bylaws.

145.    She failed to do so because her employer was a part of the conspiracy with Tsahalis and Speck.

146.    Ms. Bible realizing that objecting to the unlawful actions of Speck and Tsahalis would not only upset her employer who was conspiring with these individuals, but also recognized that allowing such a Special Meeting would likely result in her losing her undeserved quarterly compensation of $5,000 as it was not part of the Maslow Merger Agreement or approved by the Shareholders, continued to support Tsahalis and Speck's *ultra vires* actions.

147.    All of the actions taken by Reliability's Board of Directors were intended to harm Dr. Doki and Reliability's Majority Shareholders and to divest them of their rights under the Bylaws and the applicable law and to dilute their interest in Reliability.

148.     If the Majority Shareholders interest is diluted, Tsahalis, Speck and Eberwein, individually and as the agent of Lone Star management, stood to gain financially as they were able to do as they please without any deprecation as they had protection under the December 2019 Indemnity Agreement.

149.     Those actions taken by the Third-Party Respondents Tsahalis, Speck, Eberwein individually and as the agent to Lone Star Management, were intentional and deliberate.

150.     Those violations of the Bylaws and the applicable law adversely affected the Respondents and the Reliability Majority Shareholders and has violated the third-party Respondents' fiduciary duties owed of good faith and fair dealings.

151.     On February 25, 2020 Maslow initiated the present action in the Circuit Court for Montgomery County, Maryland.

152.     Recognizing that The Arbitratorss in Maryland would not allow their misconduct, on March 1, 2020, Maslow, Reliability, as well as Tsahalis, and Speck, in their individual capacity, filed a Petition for temporary restraining and permanent injunctive order in Texas.

153.     In the pleadings filed in Texas, Maslow, Reliability, and Tsahalis and Speck individually, falsely asserted that Majority Shareholders are not entitled to call a Special Meeting and that they wanted to remove Tsahalis and Speck as Members of the Board solely because they allegedly took action by filing this action on February 25, 2020.  *See* Paragraph 2 and 3 of the March 1, 2020 Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunction attached hereto and incorporated herein as **Exhibit 8**.

154.     While none of the Majority Shareholders regularly conducted any business in Texas, nor lived or worked in Texas and as none of them submitted to the jurisdiction of Texas, Maslow, Reliability, Tsahalis and Speck filed the action in Texas as they knew that those

individuals would not be able to secure Texas counsel to respond to the TRO unless they submitted to the jurisdiction in Texas.

155.    Dr. Doki and the Majority Shareholders own a substantial amount of Reliability's stock evidencing a controlling interest in the Company.

156.    As a direct and proximate result of the acts and omissions of Maslow, Tsahalis, individually, Speck, individually, Reliability, Incorporated, and Lone Star Value Management, LP, the Reliability Stock has dropped to only 10.5 cents reducing Reliability's total net worth from $130 Million Dollars to only $30 Million Dollars, which amounts to approximately a $100 Million Dollar loss of value.

157.    As a direct and proximate result of the acts and omissions of Tsahalis, Speck, Eberwein and Lone Star Management, Dr. Doki and the majority Shareholders have suffered and will continue to suffer damages in excess of $86 Million.

158.    All the while Tsahalis and Speck continue to receive $330 Thousand as salaries, plus other benefits.

159.    On March 18, 2020, Kalyan Pathuri sent a letter to Reliability demanding: (1) a list of shareholders; (2) any procedure by which Reliability recognizes the shareholder as the beneficial owner of shares registered in the name of the nominee; (3) any statement filed with Maslow by a nominee regarding the beneficial owner; and (4) Board of Director meeting minutes from October 29 to the present.

160.    Reliability and Maslow once again have refused to comply with this statutory request solely as a result of the conspiracy between Tsahalis, Speck and Eberwein individually and as the agent of Lone Star Management.

161.    Consistent with the conspiracy between Speck, Tsahalis and Eberwein, individually and on behalf of Lone Star Management to induce Dr. Doki to merge Maslow with

31

Reliability and to subsequently take over Maslow from Dr. Doki and the Majority Shareholders, on April 21, 2020 at 11:01 AM in a telephone call, Eberwein confirmed the plan and told Mr. Suresh Doki, that if the Majority Shareholders surrendered all their shares to Lone Star Management, Speck and Tsahalis, he will order Maslow, and the Tsahalis, Speck and Bible, who controlled Reliability's Board of Directors, to dismiss all lawsuits filed against Dr. Doki in Maryland and the Majority Shareholders in Texas.

162.    Otherwise, Mr. Eberwein stated that Speck, Tsahalis and Eberwein, individually and as the gent of Lone Star Management, will make sure that the lawsuits are dragged on for a very long time to destroy the Majority Shareholders investment, will continue to shut out Dr. Doki and the Majority Shareholders from calling a special meeting to terminate Speck and Tsahalis or to appoint any new Directors, and to destroy Maslow especially since the Indemnity Agreement they put in place protected them all from any liability for their acts and omissions.

### *Breaches of Fiduciary Duties*

163.    Dr. Doki, and all of Reliability's shareholders have a fundamental right as outlined in the Bylaws to vote to remove members of the board of directors for cause or no cause at all.

164.    Dr. Doki, and all of Reliability's shareholders have a fundamental right as outlined in the Bylaws to call a special meeting of all shareholders so that the Shareholders can vote removed directors for cause or no cause.

165.    Tsahalis and Speck, with the assistance of Eberwein, have refused to allow Dr. Doki and the Majority Shareholders from exercising their fundamental right as shareholders.

166.    Ms. Bible has acquiesced to Tsahalis, Speck and Eberwein' actions in blocking Dr. Doki and the majority Shareholders from calling a Special meeting of shareholders or getting

access to the list of all the company's shareholders to call such a meeting.

167.     Tsahalis and Speck are members of Reliability's Board and authorized an invalid Indemnity Agreement in violation of Reliability's Articles of Incorporation and Bylaws, their duties to the Shareholders and he applicable law, aimed solely to shield them from liability for violations of the applicable law, and breaches of their fiduciary duties as they carried out their conspiracy with Eberwein individually and as the agent of Lone Star Management.

168.     This agreement was approved by the board after the Majority Shareholders demanded that the Board of Directors comply with the terms of the Maslow Merger Agreement.

169.     This Indemnification Agreement made it impossible for the Majority Shareholders to hold Tsahalis and Speck or Eberwein responsible for their *ultra vires* acts when the Majority Shareholders were demanding that Tsahalis and Speck be held liable for their *ultra vires* acts that were in contravention to the terms of the Maslow Merger Agreement and the intent of the parties in connection with the merger between Reliability and Maslow.

170.     Reliability's Board of Directs, to date has refused to act independently of Tsahalis and Speck and has acquiesced to their wrongful acts in blocking the Shareholder Vote to elect and remove Directors of the board as allowed by the Bylaws and the applicable statutes.

171.     This sweeping indemnity is not in the best interest of Reliability nor was it approved by the Majority Shareholders.

172.     The treasonous acts by Speck and Tsahalis were made for their individual gain and the gain of their co-conspirators, Eberwein and Lone Star Management.

173.     To shut out the Majority Shareholders, and to create an onerous, unreasonable, and unlawful obstacle designed solely to prevent the majority Shareholders from exercising the statutory rights to terminate the members of the Reliability Board as allowed by the applicable Articles of Incorporation, Bylaws and the applicable law, Ms. Bible, Tsahalis and Speck refused

to call a Special Meeting of Board when asked, to authorize the stock transfer agent to allow the Majority Shareholders to the access the list of Reliability's Shareholders to call the Special Meeting of Shareholders.

174.    Although Maslow's and Reliability's Bylaws allow for a general meeting of Shareholders, to date the Reliability's Board has refused to call such a Shareholder Meeting as per the applicable Bylaws, even when such a meeting can be held remotely.

175.    The reason for not calling such a meeting is clear: The Majority Shareholder will be able to vote to terminate Tsahalis and Speck.

176.    As they were at-will employees, if they are terminated as Directors, then both Tsahalis and Speck will be terminated as employees of Maslow and they would each lose over $300,000 per year salary and benefits.

177.    Without Tsahalis and Speck on the Reliability Board, Lone Star Management will lose control of the Board and will be unable to continue its scheme of having its cake and eat it too:  to get all the sales proceeds from the Maslow Merger, make Reliability an active entity with value and own Maslow for free.

178.    It is axiomatic that Tsahalis and Speck, as directors of a public corporation, owe the Company's shareholders fiduciary duties, including the duties of good faith, loyalty, and due care.

179.    Under all applicable law, the power of corporate directors must be exercised in accordance with their fiduciary duties to the shareholders.

180.    Those duties must not be exercised to shut out the Shareholders from exercising their statutory rights, and their rights under the company's Articles of Incorporation and Bylaws.

181.    The Board of Director's fiduciary duties must not be exercised to the sole benefit of the Directors and the detriment of the Shareholders.

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 109 of 150

182.     Giving granting a sweeping broad Indemnity to Speck and Tsahalis for their acts and omissions under false pretenses and not in accordance with the applicable Bylaws, especially when the Majority Shareholders were calling for their termination, and use the Company funds to defend them against claims for breach of fiduciary duties by the majority Shareholders is an obvious acts of *ulta vires* a breach of all applicable fiduciary duties.

183.     The Indemnity Agreement approved by the board in December 2019 was an obvious self-interested agreement unauthorized by the law or the Reliability Bylaws.

184.     Tsahalis and Speck had a material self-interest in all their actions against the best interest of reliability and its Shareholders and this constituted a breach of their fiduciary duties.

185.     They acted with the sole purpose of reducing their risk of being liable to reliability and the Majority Shareholders.

186.     By approving the Indemnification Agreement, Tsahalis and Speck gave themselves the freedom to do everything the Majority Shareholders were complaining about in 2019 when they were calling for the removal of Tsahalis and Speck from Reliability's Board.

187.     Eberwein, Tsahalis and Speck have unlawfully placed their best interests above the interests of the Company's shareholders to whom they owed fiduciary duties.

188.     Tsahalis and Speck's disloyal and bad faith efforts to shut out the majority Shareholders, and to impose barriers to their legal and statutory rights to remove Directors for any cause as allowed by applicable law and Reliability's bylaws has harmed Reliability and Maslow and fall outside the scope of any authority they have been granted by Malow's Reliability's Articles of Incorporation, Bylaws or the applicable law.

189.     The Texas Code and Reliability's Articles of Incorporation and Bylaws invest the Majority Shareholders with the power to call a Special Meeting of Shareholders for the

INDEX NO. 653529/2020
RECEIVED NYSCEF: 07/31/2020

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 110 of 150

specific purpose of removing directors of the Board, for cause or no cause.

190.     Recognizing that they would be removed if they allowed such a meeting, for personal reasons only, Tsahalis and Speck engaged in conduct with the help of Eberwein and Lone Star Management, through actions of its employees and agents on the Reliability Board of Directors, namely Jeffrey Eberwein and Hannah Bible, they instructed the stock transfer agent not to share a list of all the shareholders, and refused to authorize the Board to call a special meeting of the shareholders to allow the Shareholders to vote.

191.     The acts and omissions by Speck and Tsahalis are aimed at preventing Dr. Doki and the Majority Shareholders from exercising their individual statutory rights and their individual rights under Reliability's bylaws.

*Aiding and Abetting/Conspiracy*

192.     Third-Party Respondents Speck, Tsahalis, and Eberwein, individually and as the agent of Lone Star Management, and each of them, are sued as participants and as aiders and abettors herein alleged.

193.     At all relevant times, each Third-Party was and is the agent of each of the remaining third-party Respondents, and in doing the acts alleged herein, was acting within the course and scope of such agency.

194.     Each Third-Party Defendant ratified and/or authorized the wrongful acts of each of the other Third-Party Respondents.

195.     There is a unity of interest and ownership between the defendants listed above, such that the acts of the one is for the benefit and can be imputed as the acts of the other.

196.     A majority of the directors are so personally and directly conflicted or committed to the decision in dispute that they cannot reasonably be expected to respond to a demand in good faith and within the ambit of the business judgment rule

*Derivative Allegations*

197.     Dr. Doki brings this action derivatively in the right and for the benefit of Reliability to redress the breaches of fiduciary duty, waste of corporate assets, unjust enrichment and other wrongful conduct by the Individual Third-Party Respondents as alleged herein.

198.     Dr. Doki, owns and has continuously owned common stock in Reliability beneficially during the period of the wrongdoing alleged herein and are and was a shareholder of Reliability at the time of the transgressions complained of.

199.     Dr. Doki will adequately and fairly represent the interests of Reliability and its shareholders in enforcing and prosecuting its rights and has retained counsel experienced in prosecuting this type of action.

200.     The wrongful acts complained of herein have subjected and will continue to subject Reliability to continuing harm because the adverse consequences of the actions by the Reliability Board of Directors are still in effect and ongoing.

201.     The wrongful acts complained of herein were unlawfully concealed from Reliability and Maslow's shareholders by Eberwein, individually and as the agent of Lone Star Management and by Tsahalis and Speck.

202.     Any demands for action by the Board are futile because the alleged wrongdoings are against the exact Directors of reliability who are depriving the Shareholders from exercising their statutory right to elect members of the board and their rights under the Articles of Incorporation, operative Bylaws and the law to  do the same.

203.     As a direct result of the wrongdoing referred to herein and the Individual Third-Party Respondents' concealment thereof the Respondents have been defrauded into approving the Merger between Maslow and reliability and are now being deprived of protecting and securing their investment, all the while the current board is making every effort to dilute their

interest, to destroy the company and to entrench themselves.

204.     Reliability and Maslow have been caused to expend tens of thousands of dollars in prosecuting frivolous actions promulgated by Tsahalis and Speck with the aid and assistance of Eberwein and Lone Star Management against the shareholders.

205.     As a direct consequence of the wrongful acts of the Board of Directors, Reliability has incurred and will continue to incur substantial litigation costs and expenses fighting the shareholders when they are only asking to exercise their statutory rights and the rights allowed by the bylaws.

206.     As a direct and proximate result of the act and omissions of the current Board, Reliability has suffered and will continue to suffer substantial harm to an extent not yet fully capable of determination, including the significant deterioration in the market value of the Company's stock.

207.     The wrongdoing of each of the individual Third-Party Respondents, as described herein, was an essential link in the damages caused and being caused to Reliability and its shareholders as a result thereof.

208.     As a direct and proximate result of such wrongdoing, Reliability has expended and will continue to expend large sums of money and irreparable hard to it business relations with other third parties that will destroy its business and reputation.

209.     Reliability shareholders have been severely damaged by these repeated revelations of misconduct by Speck and Tsahalis.

210.     Immediately after Closing Reliability's shares traded at Fifty-Seven Cents ($0.57) per stock.   As a result of the acts and omissions of the current Officers and Directors, Reliability' stock even before March 15, 2020, plummeted to a mere ten cents ($0.10) per share, reflecting the continuing deterioration of the Company as a result of months of misconduct by

the Third-Party Respondents.

211.    The actions taken by Reliability through its directors and officers Tsahalis and Speck, as supported and aided and abetted by Eberwein and Bible in breaching their fiduciary duties are not in the best interest of Reliability in  that they are using their powers for their personal gain and are adverse to the to the interests of Reliability and its shareholders, who are the equitable owners of the company.

## MARYLAND LITIGATION

212.    In February 2020 Maslow Media Group, Inc., as a wholly owned subsidiary of Reliability Incorporated, filed a claim for breach of the promissory Notes against Dr. Doki and Vivos Holding, LLC seeking One Million Five Hundred Fifty-Six Thousand One Hundred Ninety-Four and 12/100 Dollars ($1,556,194.12), consisting of $1,554,072.90 in principal and $2,121.22 in prejudgment interest.  See **Exhibit 6**.

213.    On April 08, 2020 an Answer was filed.

214.    On May 07, 2020 a Cross Claim and Third-party Complaint was filed.  ***See*** **Exhibit 7.**

215.    Maslow also served discovery.

216.    On June 08, 2020, a Petition to Compel Arbitration was filed.

217.    On June 10, 2020 and Answer to the Counterclaim and Third-Party Complaint was also filed. *See* **Exhibit 8** (Docket sheet)

## THE TEXAS LITIGATION

218.    Notwithstanding the Arbitration provision contained in the Merger Agreement, on March 1, 2020 Reliability, Maslow, Tsahalis and Speck filed an action for a Temporary Restraining Order against the Respondents in this case based on the alleged breach of the merger Agreement.  **See Exhibit 9.**

219.     The Third-Party Respondents Reliability, Maslow, Tsahalis and Speck sought a Temporary Restraining Order and subsequently amended their petition on March 24, 2020 to seek and subsequently filed an Amended Petition for Relief.

220.     On June 2, 2020, Claimant and Third-Party Respondents Reliability, Maslow, Tsahalis and Speck filed responses to Claimant's motions challenging jurisdiction of The Arbitrators in Texas.

221.     On June 6, 2020 Third-Party Respondents Reliability, Maslow, Tsahalis and Speck filed an opposition to the Motion for contempt by Igly Trust.

222.     A hearing was held on June 5, 2020 on the Temporary Restraining Order and the Third-Party Respondents Reliability, Maslow, Tsahalis and Speck appeared in Court.

## DEMAND FOR ARBITRATION

223.     Recognizing that they have no defenses to the violation of the Texas law as outlined din the counterclaim filed in  the Texas Courts and the Maryland Court, the Claimants immediately filed this demand for arbitration in an attempt to sty proceedings in The Arbitrators that they initiated and now backfiring against them solely to allow them to further entrench themselves in Maslow and to steal it from its shareholders.

224.     In this action Claimant alleges fraud and breach of contract.

225.     As admitted by Claimant, Virginia law applies to this action.

## ARBITRATION IS IMPROPER AS IT HAS BEEN WAIVED

There is no dispute that on September 18, 2019 (i) Reliability Incorporated, ("Reliability"), (ii) R-M Merger Sub, Inc., a Virginia corporation and a wholly owned subsidiary of Reliability ("Merger Sub"), (iii) The Maslow Media Group, Inc. ("Maslow"), (iv) Jeffrey Eberwein ("Eberwein") (v) Naveen Doki ("Dr. Doki") for the limited purposes as set forth therein , and (vii)

Silvija Valleru ("Ms. Valleru") for the limited purposes as set forth there in entered into a therein entered into a Merger Agreement which provided as follows:

**Section 10.10** Dispute Resolution.

(a) If there is any dispute or controversy relating to this Agreement or any of the Contemplated Transactions (each, a "Dispute"), such Dispute shall be resolved in accordance with this Section 10.10.

(b) The Party claiming a Dispute shall deliver to each of the other Parties a written notice (a "Notice of Dispute") that will specify in reasonable detail the dispute that the claiming Party wishes to have resolved. In any such arbitration pursuant to this Section 10.10 Reliability shall have the power to act for and to bind Merger Sub and Mr. Eberwein and Maslow shall have the power to bind the Shareholders.

If Maslow, the Shareholders and Reliability are not able to resolve the dispute within five (5) Business Days of a Party's receipt of an applicable Notice of Dispute, then such Dispute shall be submitted to binding arbitration in accordance with this Section 10.10.

(c) Any arbitration hereunder shall be conducted in accordance with the rules of the American Arbitration Association then in effect. Maslow and Reliability shall each select one arbitrator, and the two arbitrators so selected shall select a third arbitrator, and the three arbitrators shall resolve the Dispute. The arbitrators will be instructed to prepare in writing as promptly as practicable, and provide to Reliability and Maslow such arbitrators' determination, including factual findings and the reasons on which the determination was based. The decision of the arbitrators will be final, binding and conclusive and will not be subject to review or appeal and may be enforced in any court having jurisdiction over the Parties.

Each party shall initially pay its own costs, fees and expenses (including, without limitation, for counsel, experts and presentation of proof) in connection with any arbitration or other action or proceeding brought under this Section 10.10, and the fees of the arbitrators shall be share equally, provided, however, that the arbitrators shall have the power to award costs and expenses in a different proportion.

(d) The arbitration shall be conducted in New York, NY.

**Section 10.11** Governing Law; Submission to Jurisdiction; Waiver of Jury Trial. (a) This Agreement shall be governed by and

construed in accordance with the internal laws of the State of Virginia without giving effect to any choice or conflict of law provision or rule (whether of the State of Virginia or any other jurisdiction).

In Paragraph 1.01 of the Merger Agreement, the terms "party" and "parties" is defined as "set forth in the recitals."

Equally undisputed is the fact that on October 21, 2019, pursuant to Section 6.10 of the Merger Agreement, Igly Trust, Judos Trust, and Shirisha Janumpally executed a Joinder Agreement deeming them a "Shareholder" to the Merger Agreement as defined therein in Section 1.01(ssss). Thus, for all purposes of the Merger Agreement, Igly Trust, Judos Trust and Shirisha Janumpally have the same obligations of a Shareholder as they had executed the August 18, 2019 Merger Agreement. However, neither Vivos Holdings, Vivos Real Estate, or Kaylan Pathuri, individually were parties to either the September 18, 2019 Merger Agreement or the October 21, 2019 Joinder Agreement. Similarly, neither Nick Tsahalis, Mark Speck nor Lone Star Value Management, LLC. were parties to the Merger Agreement or the Joinder Agreement. As such the arbitration clause is not applicable to any of them. Indeed, they did not even move in this case for any relief to compel or stay proceedings.

The terms Contemplated Transactions is defined by the Merger Agreement in Section 1.01(o) as the Merger between Maslow and R-M Merger Sub, Inc., the Lock-Up Agreements, the surrender of the Shareholders of their shares of Maslow Common Stock, and the issuance by the Reliability of 94% of its outstanding shares of common stock to the Shareholders.

a. **The Virginia Uniform Arbitration Act**

The VUAA is based on the Uniform Arbitration Act of 1956, which the National Conference of Commissioners on Uniform State Laws revised in 2000 when it promulgated the Revised Uniform Arbitration Act (UAA). *See* Va. Code Ann. §§ 8.01-581.01 et seq.; *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 557 S.E.2d 199, 202 (Va. 2002). Although

Virginia's appellate courts have not yet issued guidance on the question of waiver under the Act, a review of the applicable cases show that Virginia trial courts tend to follow persuasive federal jurisprudence when deciding that issue. *See, e.g., Bolton v. McKinney,* 97 Va. Cir. 7, 8 (Va. Cir. Ct. Rockingham County 2017); *Kidd v. Wall, 81 Va. Cir. 8,* 8 (Va. Cir. Ct. Amherst County 2010); *Shoosmith Bros., Inc. Hopewell Nursing Home, L.L.C.,* 78 Va. Cir. 427, 428 (Va. Cir. Ct. Hopewell 2009)*; Ahern v. Toll Bros.,* 55 Va. Cir. 18, 20 (Va. Cir. Ct. Fairfax County 2001).

### b. Interpretation of arbitration provisions and applications to third parties

Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. Because arbitration is based on contractual undertakings between parties, it is subject to the principles of contract interpretation. *Summer Rain v. Donning Co.,* 964 F.2d 1455, 1460 (4th Cir. 1992); *also see Piland Corp. v. League Construction Co.*, 283 Va. 187, 380 S.E. 2d 652 (Va. 1989). As such, The Arbitratorss are obliged to give effect to terms of the contract between the parties as expressed in their agreement. *Cara's Notions, Inc. v. Hallm ark Cards, Inc.,* 140 F.3d. 566, 569 (4th Cir. 1998) (observing that "a court may not require a party to submit to arbitration any dispute which he has not agreed so to submit" (internal quotation marks omitted)); *Doyle Russell, Inc. v. Roanoke Hospital Association*, 213 Va. 489, 193 S.E. 2d 662 (Va. 1973)(A party cannot be compelled to submit to arbitration unless the party has first agreed to arbitration).

In Virginia, contracts between parties are subject to basic rules of interpretation. Contracts are construed as written, without adding terms that were not included by the parties. *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396 at 398 (Va. 1984). Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. *Bridgestone/Firestone v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (Va. 1995); *Ross v. Craw*, 231 Va. 206, 212, 343 S.E.2d 312, 316 (Va. 1986).

A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used. *Id.* at 212-13, 343 S.E.2d at 316. Furthermore, contracts must be considered as a whole "without giving emphasis to isolated terms." *American Spirit Ins. Co. v Owens*, 261 Va. 270, 275, 541 S.E.2d 553, 555 (Va. 2001). Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract. *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (Va. 1995).

In this case, the Merger Agreement is clear and unambiguous, it only applies to the parties thereto and does not apply to any parties not named thein and thus this arbitration is improper as to the individual respondents as they only singed the agreement in a limited capacity.

### c. <u>Waiver of arbitration under Virginia Law.</u>

Because the right to arbitrate is a matter of contract, it is possible for parties to waive that right. When addressing the criteria applicable to the waiver of a contractual right, The Arbitratorss in Virginia have held that waiver is a party's intentional relinquishment of a known right through conduct that warrants such a relinquishment. *See Hensel Phelps Constr. Co. v. Thompson Masonry Contr., Inc.*, 292 Va. 695, 703, 791 S.E.2d 734, 737 (Va. 2016). Under Virginia law, a party may waive its right to arbitration by its acts, omissions, or conduct. *see Carrico v. Empire Today LLC*, 80 Va. Cir. 395, 397(Va. Cir. Ct. 2010)(citing *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)); *Britt Constr. Co. v. Westpack Realty Fund, VII, L.L.C.*, 60 Va. Cir. 314, 314-316 (Va. Cir. Ct. Loudoun County 2002); *see also Hanover Fire Ins. Co. v. Drake,* 170 Va. 257, 265, 196 S.E. 664 (1983). Indeed, a party may waive its right to arbitration by acting in a manner that is inconsistent with enforcing its right to arbitration, such as litigating a claim in court. *See* e.g. *Integrity Auto Specialists, Inc. v. Meyer*, 83 Va. Cir. 119, 122 (Va. Cir. Ct. Chesapeake Country 2011) (defendant sued by his employer waived right to arbitration by

litigating the claim in court); *Shoosmith Brothers, Inc. v. Hopewell Nursing Home, LLC*, 78 Va. Cir. 427, (Va. Cir. Ct. Hopewell County 2009). In addition, to find waiver, The Arbitrators looks as to whether a party seeking to enforce its right to arbitration prejudiced the other party by litigating the claim, for example by delaying the proceedings or increasing the other party's litigation costs *Britt Constr. Co. v. Westpack Realty Fund, VII, L.L.C.*, 60 Va. Cir. 314, 314-316 (Va. Cir. Ct. Loudoun County 2002)(finding party waived right to arbitration by actively litigating case and engaging in discovery, which increased other party's costs and complicated the case). The Arbitratorss in Virginia have found waiver by a party that starts or affirmatively employs The Arbitrators processes to litigate the dispute, rather than by a party that responds to a court case the other party files or refrains from pursuing the claim. *See Winston v. Tingley Constr. Co.*, 86 Va. Cir. 163, (Va. Cir. Ct. Richmond 2013).

Case law makes clear that, to determine whether waiver exists, a Court should consider whether the litigant has substantially utilized the litigation machinery to their advantage. *See, e.g., MicroStrategy, Inc. v. Lauricia,* 268 F.3d 244, 249 (4th Cir. 2001) (citing *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). Because Maslow initiated this claim in this case, served discovery and has prosecuted this claim since February 2020, it has clearly waived any rights it may have under the 2019 Merger Agreement.

Similarly, Reliability and others who have filed an action based on the very same facts and matters in Texas Courts as indicated in the pleadings and papers attached hereto, have also waived their right to any arbitration by prosecuting their claims in the Texas State Court. Wherefore, these parties are not entitled to a stay this proceeding or to compel arbitration as they have knowingly and intentionally waived their rights under the arbitration clause.

**d.** **The Claims for fraud are barred by the applicable statutes of limitations**

Under Virginia law, claims for fraud are subject to a two-year statute of limitations period. *STB Mktg. Corp. v. Zolfaghari*, 240 Va. 140, 144 (1990). In Virginia the accrual date for any tort is "the date the injury is sustained . . . and not when the resulting damage is discovered." Va. Code § 8.01–230. In this case, as admitted by the Claimant this alleged fraud occurred in 2016 when eh alleged promissory note was allegedly executed and three years before the Merger with Reliability. Thus, as a matter of law all claims for fraud related to the promissory notes were barred by the applicable status of limitations.

**e.   Claimant fails to plead a cause of action for fraud with requisite specificity.**

Under Virginia law, a viable claim for actual fraud requires: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting in damage to the party misled. *Brunckhorst Co. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (quoting *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193 (1984)); *also see State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005).

To pursue a fraud claim, Claimant must allege with specificity and particularity all the elements of fraud. *See* Fed. R. Civ. P. 9(b); *see also Arnlund v. Smith,* 210 F. Supp. at 760. Indeed, "[t]he circumstances [that must be plead under Rule 9(b)] include 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d at 781 (citation omitted); *accord Hessek v. N. Am. Mortgage Ins. Services*, 94 Fed. App'x 981 (4th Cir. 2004) ("The 'circumstances' that must be pled are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"); *Jenkins v. ICAFS, Inc.*, 84 Va. Cir. 515, 517 (Richmond Cir. Ct. 2012) ("[I]n pleading fraud with particularity, the identities of the individuals or their agents, officers, and

employees who are alleged to have perpetrated the fraud must be revealed, as well as the details of the time and place where the fraudulent acts occurred and the specific acts complained of.").

Such particularity is necessary "so that the defendant may have the opportunity of shaping his defense accordingly, and since fraud must be clearly proved it must be distinctly stated." *In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189, 201 (Fairfax 2016) (citing *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295 (1996)).

For example, in a securities fraud class action lawsuit concerning statements made in press releases, conference calls and newspaper articles related to the financial condition of the entity, the Eastern District of Virginia stated that "plaintiffs must plead specific facts concerning, for example, when each defendant or other corporate officer learned that a statement was false, how that defendant learned the statement was false, and the particular document or other source of information from which the defendant came to know that the statement was false." *In re PEC Solutions, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 29873, *11-12 (E.D.V.A. 2004).

Although fraud must be pled with particularity, Claimant only uses broad, vague and conclusory allegations against all the Respondents which are, as a matter of law, insufficient. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d at 781; *Ironworkers Local 16 Pens. V. Holb, Rogal & Hobbs*, 432 F. Supp. 2d 571 (E. D. Va. 2006)(citation omitted). Indeed, Claimant does not alleged specific facts as to the what alleged material misrepresentations or omissions were made to it, when the alleged material misrepresentations or omissions were made to it, by whom were they made to Claimant, why was there a duty by each particular Respondent to make any representations to the Claimant, whether the Claimant's alleged reliance on the alleged misrepresentations was justified, and under what circumstances where they made to the Claimant, etc. *See Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 2012 WL 3841416, at *7 (E.D. Va. Sept. 4, 2012).

Additionally, while the demand for arbitration names multiple Respondents, Claimant does not allege "specific allegations [of fact] with respect to each defendant. Indeed, the generalized allegations 'lumping' multiple defendants together are insufficient." *West Coast Roofing & Waterproofing, Inc.*, 287 F. App'x 81, 86 (11th Cir. July 24, 2008) (citation omitted); *Arnlund v. Smith*, 210 F. Supp.2d at 760.

This failure is not merely an inattentive pleading deficiency. It illustrates a general attempt to inject alleged tortious wrongdoing into the parties' business relationship and business dispute solely as a way to continue the entrenchment of the rogue members of the Board to waste the company assets while hiding behind the Indemnity Agreement that they granted themselves. They want to steal the business and they are using this forum and the other courts to buy time to waste Maslow's assets. They file this action because they realized that they have no defense to the Texas litigation to compel a shareholder meeting or the claims alleged in the Maryland counterclaim. Indeed, they filed action using Reliability's assets to stop the litigation against Speck and Tsahalis the rogue directors and officers of the company.

### f. The allegation in the Demand for Arbitration preclude reasonable reliance, which is an essential element of fraud.

An essential element of fraud is reasonable reliance. *See Brunckhorst Co. v. Coastal Atl., Inc.*, 542 F. Supp. 2d at 460 (quoting *Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193 (1984)); *also see Jared & Donna Murayama 1997 Tr. v. NISC Holdings, LLC*, 284 Va. 234, 246 (2012)**.** Here, there are no allegations by Claimant to support a conclusion that it somehow relied on any of the alleged misrepresentations to its detriment. It had no assets before the merger with Maslow and the only reason it has any value today was because of the merger with Malow, an entity that was wholly owned by Drs. Doki and Valleru. This is exactly why the only relief they are seeking is allegedly divest the shareholders of their interest, a relief that is

improper in this case either under contract principles of for fraud based on Virginia law or the terms of the Merger Agreement.

**g.  Claimants relief for fraud is barred by the Virginia Economic Loss Doctrine.**

Under Virginia's well-established economic loss doctrine, disappointments based on the breach of duties "assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618 (2004).  The rule seeks to "avoid turning every breach of contract into a tort," and mandates that, in order to recover in tort," the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 267 (2009).

Similarly, Virginia Courts have found time and again, that "[w]here the duty that gives rise to the alleged misrepresentation is one that is required by contract, there can be no recovery in tort." *Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460-61 (E.D. Va. 2008). *See also Gen. Assur. of Am., Inc. v. Overby-Seawell Co.,* 893 F. Supp. 2d 761, 780 n.30 (E.D. Va. 2012), *aff'd* 553 Fed. App'x 200 (4th Cir. 2013).

All of the Claimant's fraud allegations against Respondents, the alleged "former" shareholders of Maslow, arise out of duties imposed as a result of the alleged Merger Agreement. As such, Claimant's fraud claim does not sound in tort and therefore must be dismissed as a matter of law.

In Virginia one must look at the source of the duty to determine if the claim is properly framed as a breach of contract or as a tort. *Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 558 (1998) ("the source of the duty violated must be ascertained").  All of the Claimants' alleged claims are grounded in contract, because all of the alleged duties that were breached to support the claim for fraud do not exist apart from the alleged Merger Agreement. *Oleyar v. Kerr*, 217 Va. 88, 90 (1976).

Thus, as a matter of law, Claimant fails to state cause of action upon which relief may be granted for fraud.

**h. Claimant fails to allege a breach to support a breach of contract claim or the relief sought in the case.**

Claimant's breach of contract fails simply because it is not entitled to the alleged relief sought in its indemnity claim.

**COUNTERCLAIM**

Assuming arguendo that somehow arbitration has not been waived, then the Respondents hereby this Counterclaim and Third-Party Complaints against Reliability, its officers and directors, and the other parties to the Merger Agreement, Mr. Eberwein (and his entities) and Maslow.

**COUNT I**<br>**(Declaratory Judgment)**

226. Respondents restate and incorporates by reference all of the allegations contained in all preceding paragraphs.

227. This is a claim for declaratory judgment.

228. An actual controversy exists between the parties as to the following: (i) the rights and liabilities of the parties as Shareholders of Reliability Incorporated and as parties to the Maslow Merger Agreement and the Intercompany Promissory Notes and Guarantee by Dr. Doki; (ii) whether Counter-Claimants and Respondents, as the majority of Reliability's Shareholders are entitled to call a Special Meeting of Shareholders to terminate any members of the Board of Directors for cause or no cause; (iii) whether the termination of Tsahalis and Speck as directors is a right that Counter-Claimants and Respondents are entitled to exercise in their capacity as the majority of Reliability's Shareholders; (iv) whether Tsahalis and Speck have acted to frustrate the exercise of Counter-Claimants and Respondents, as the majority of Reliability's

Shareholders to call a Special Meeting of Shareholders; (v) whether the actions by Tsahalis and Speck to dilute the interests of majority Shareholders is *ulta vires* and unauthorized; (vi) whether any action by Tsahalis and Speck as a result of their actions in contravention to the expressed interest of the majority Shareholder of Reliability is unauthorized and utra vires; (vii) whether Naveen Doki, Shirisha Janumpally, Judos Trust, Federal Systems, Dr. Silvija Valleru, Kalyan Pathuri, and Igly Trust actually and/or substantially complied in providing notice to Reliability Incorporated herein's shareholders for the Special Meeting of the Shareholders on February 28, 2020; (viii) whether votes or other actions taken during the February 28, 2020, including the removal of Tsahalis and Speck from the Board of Directors and the election of Phakir Doki, Madhavi Doki, and Sridhar Badam, were not defective corporate actions due to defendants' failure to provide the notice required by Reliability Incorporated herein's bylaws and the Texas Business Organizations Code and are, therefore, void; (xi) whether Reliability Incorporated's Board of Directors is illegally constituted and in contraventions of the Maslow Merger Agreement and Reliability's Bylaws and any action taken by that Board, now or in the future, is void as the product of an illegally constituted Board unauthorized or approved by the majority Shareholders; (x) whether the failure to afford whether Counter-Claimants, as the majority of Reliability's Shareholders, to serve on the Board of Directors or cause a new election invalidates any and all actions taken by the present Board of Directors; (xi) whether the failure to elect Counter-Claimants as Directors or failure to allow such persons to delegate such Directors (or even vote on Directors) is grounds for rescission of the Maslow Merger Agreement; (xii) whether the Indemnification Agreement is ultra-vires, not validly authorized, and/or the product of self-interest of the Board of Directors; (xiii) whether the parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made in 2019 or prior to the maturity date of the Intercompany Promissory Notes in 2023; (xiv) whether, in

approving the Malow Merger Agreement, the Respondents and/or did not contemplate authorization for enforcement of the Intercompany Promissory Notes prior to maturity; (xv) whether there was any requirement or understanding that Maslow would require repayment of these notes in 2019; (xvii)  whether Dr. Doki's purported guarantee is void as lacking any consideration by Maslow, and/or the result of detrimental reliance and/or fraud in obtaining control of Maslow against his interest; (xvii) whether Maslow agreed, understood and contemplated, as confirmed by its verified announcements that the Intercompany Promissory Notes would not be paid, called, or collected prior to maturity; (xviii) whether Dr. Doki was not expected to make any contribution to Maslow prior to the maturity dates of the Intercompany Promissory Notes; (xix) whether and to what extent amounts owed under the Intercompany Promissory Notes were extinguished and/or reduced as a result of the IQS transaction; (xx) whether Dr. Doki is in breach his Guarantee.

229. The Arbitrators should enter a declaratory judgment declaring the following:  (i) the rights and liabilities of the parties as Shareholders of Reliability Incorporated and as parties to the Maslow Merger Agreement and the Intercompany Promissory Notes and Guarantee by Dr. Doki; (ii) Counter-Claimants and Respondents, as the majority of Reliability's Shareholders are entitled to call a Special Meeting of Shareholders to terminate any members of the Board of Directors for cause or no cause; (iii) the termination of Tsahalis and Mark Peck as Directors is a right that Counter-Claimants and Respondents are entitled to exercise in their capacity as the majority of Reliability's Shareholders; (iv) Tsahalis and Speck have acted to frustrate the exercise of Counter-Claimants and Respondents, as the majority of Reliability's Shareholders to call a Special Meeting of Shareholders; (v) the actions by Tsahalis and Speck to dilute the interests of majority Shareholders are *ulta vires* and unauthorized; (vi) any action by Tsahalis and Speck as a result of their actions in contravention to the expressed interest of the majority

Shareholder of Reliability is unauthorized and ultra vires; (vii) Naveen Doki, Shirisha Janumpally, Judos Trust, Federal Systems, Dr. Silvija Valleru, Kalyan Pathuri, and Igly Trust actually and/or substantially complied in providing notice to Reliability Incorporated's shareholders for the Special Meeting of the Shareholders on February 28, 2020; (viii) votes or other actions taken during the February 28, 2020, including the removal of Tsahalis and Speck from the Board of Directors and the election of Phakir Doki, Madhavi Doki, and Sridhar Badam, were not defective corporate actions due to defendants' failure to provide the notice required by Reliability Incorporated's bylaws and the Texas Business Organizations Code and are, therefore, void; (xi) Reliability Incorporated's Board of Directors is illegally constituted and in contraventions of the Maslow Merger Agreement and Reliability's Bylaws and any action taken by that Board, now or in the future, is void as the product of an illegally constituted Board unauthorized or approved by the majority Shareholders; (x) the failure to afford whether Counter-Claimants, as the majority of Reliability's Shareholders, to serve on the Board of Directors or cause a new election invalidates any and all actions taken by the present Board of Directors; (xi) the failure to elect Counter-Claimants as Directors or failure to allow such persons to delegate such Directors (or even vote on Directors) is grounds for rescission of the Maslow Merger Agreement; (xii) the Indemnification Agreement is ultra-vires, not validly authorized, and/or the product of self-interest of the Board of Directors; (xiii) the parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made in 2019 or prior to the maturity date of the Intercompany Promissory Notes in 2023; (xiv) in approving the Malow Merger Agreement, the Respondents and/or did not contemplate authorization for enforcement of the Intercompany Promissory Notes prior to maturity; (xv) there was no requirement or understanding that Maslow would require repayment of these notes in 2019; (xvii) Dr. Doki's purported guarantee is void as lacking any consideration by Maslow,

and/or the result of detrimental reliance and/or fraud in obtaining control of Maslow against his interest; (xvii) Maslow agreed, understood and contemplated, as confirmed by its verified announcements that the Intercompany Promissory Notes would not be paid, called, or collected prior to maturity; Dr. Doki was not required to make payment , (xviii) Dr. Doki was not expected to make any contribution to Maslow prior to the maturity dates of the Intercompany Promissory Notes; (xix) amounts owed under the Intercompany Promissory Notes were reduced and extinguished in the amount of at least $1,417,717; (xx) Dr. Doki is not in breach his Guarantee.

## COUNT II
### (Preliminary and Permanent Injunctive Relief)

230. Counterclaimants and Respondents restate and incorporates by reference all of the allegations contained in all preceding paragraphs.

231. Counter-Defendant and Respondents conduct in oppressing Counter-Claimants and Respondents requires the use of The Arbitrators's equitable powers to preserve the status quo and protect the rights of the parties. Said oppressive conduct is described herein, and includes but is not limited to the failure to allow the majority shareholders to remove or elect directors, failing to comply with the Maslow Merger Agreement regarding the appointment of Counter-Claimants as Directors, use of corporate assets to oppress, silence, and sue Counter-Claimants to give them leverage in the operation of the Company.

232. As a result of the Claimant and Counter-Respondents' unlawful actions, Counter-Claimants and Respondents will be irreparably harmed in that they will be unable to effectively deter, stop, and seek redress for legal harms caused by directors and officers of Reliability or elect directors as allowed by the Bylaws and the applicable statutes.

233. Counterclaimants and Respondents have no adequate remedy at law.

234. Only through the exercise of this Court's equitable powers can Counter-Claimants and Respondents be fully protected from the irreparable injury that Counter Respondent's

actions are causing.

235. Unless Counter-Respondents are enjoined from violating the Bylaws, the Claimant and Counter-Respondents will continue to knowingly, willfully, or recklessly, and in bad faith, breach their fiduciary duties owed to Counter-Claimants and Respondents, and keep them from effectively deterring, stopping, and seeking redress for legal harms caused by Tsahalis, Speck, Maslow, Reliability, Eberwein and Lone Star Management.

236. Unless Counter-Respondents' oppressive conduct is restrained, Counter-Claimant and Respondents will suffer immediate, substantial, and irreparable injury.

237. Such injury includes loss of credit rating, inability to exercise majority control of their Company, wasting of Company assets, and the potential sale of Company assets, which has been offered to third-parties.

238. There exists a strong likelihood that Counterclaimants will succeed on the merits of their claims, including because they are equitable owners of a majority of the Company's assets.

239. The benefits to Counterclaimants in obtaining injunctive relief are equal to or outweigh the potential harm which Counter-Respondents would incur is this Court grants the requested injunctive relief.

240. The public interest is best served by granting the injunction.

### COUNT III
### (Reformation and/or Rescission)

241. Counterclaimants a restate and incorporates by reference all of the allegations contained in all preceding paragraphs.

242. Counter-Respondents conduct, oppression, and failure to afford or allow Counter-Claimants the opportunity to serve, delegate or vote on Board of Directors, and the refusal to allow a Special Meeting, election, and/or replacement of the Board of Directors, constitutes

grounds for rescission of the Maslow Merger Agreement, and ensuing merger, and/or grounds for reformation of the Maslow Merger Agreement, which should be reformed to allow Counter-Claimants to designate eligible persons of their choosing to serve as Directors.

## COUNT IV
### (Derivative Action)

243.    Counter-Claimant Dr. Doki realleges and incorporates each and every allegation set forth in the above paragraphs of this Counterclaim as if set forth at length herein.

244.    This is a shareholder's derivative action brought for the benefit of Third-Party Defendant Reliability.

245.    This derivative action is brought on behalf of Reliability against certain members of Reliability's Board of Directors and certain of its executive officers as well as their co-conspirator Lone Star Management seeking to remedy their violations of applicable law and breaches of fiduciary duty from November 1, 2019 until the present, as identified herein.

246.    Counterclaimants and Respondents have made sufficient demand upon the Reliability, as set forth herein.

247.    To the extent that additional demand is required, such demand is futile.

248.    As direct and proximate result of the various breaches by the members of the board of directors of Reliability, Reliability has lost in excess of $100 Million in damages.

249.    All of the actions and omissions committed by the members of the Board were not in the best interests of Reliability and were solely committed for the sole purposes of entrenching Tsahalis and Speck as officers and directors of Reliability and Maslow, so that they could carry out the conspiracy and divest the majority shareholders of Reliability of their voting rights and to waste corporate assets.

250.    Further, Dr. Doki in this derivative claim, on behalf of Reliability and himself demands that Reliability to comply with its own bylaws and call a shareholder meeting for the

removal of board members, and election of a new board.

**COUNT V**
**(Fraud Against Lone Star Management, Eberwein, Speck and Tsahalis)**

251.    Counterclaimants and Respondents reallege and incorporate each and every allegation set forth in the above paragraphs as if set forth at length herein.

252.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, made the Representations to induce Counter-Claimants to proceed with the Closing on the Maslow Merger Agreement, to fund and obligate themselves in connection with transaction, and to not withdraw and rescind from said transaction.

253.    At all relevant times, Mr. Eberwein acted on behalf of Lone Star Management as a principal to further his own personal interest and interest of Lone Star Management.

254.    The contribute represented that because the Bylaws and applicable Law provided that Reliability's shareholders can remove any directors for cause or no cause, their investment in Reliability will be protected after the merger, and their requirements under the Maslow Merger Agreement, that as majority shareholders they will at least control 50% of Reliability's Board of Directors, will be secure (the "Representations").

255.    The foregoing Representations were false when made, with no intention to perform as stated.

256.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis knew, or should have known, that the Representations were false, misleading, and/or omitted material facts at the time they were made and at all material times.

257.    Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis made the Representations with the intent that Counterclaimants rely on same.

258.    Counterclaimants reasonably relied on the Representations, including

proceeding the Closing on the Merger Agreement, and contributing valuable assets towards such consummation, and by authorizing such merger.

259. Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis knew, or should have known, that Counterclaimants a would reasonably rely on the representations as they were the agents of Reliability and Maslow.

260. Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis made the Representations with negligent and/or reckless disregard for their truth or falsity.

261. Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis made the Representations with the intent to mislead and defraud Counterclaimants.

262. Counterclaimants reasonably believed the Representations to be true and accurate.

263. In reasonable reliance upon the Representations, Counterclaimants reasonably authorized the consummation and Closing of the Maslow Merger.

264. Counterclaimants' reliance on the Representations was justified and reasonable under the circumstances.

265. As a direct and proximate result of Counter-Claimants and third-party Respondents' reasonable reliance on the Representations, they have incurred direct, indirect, consequential and incidental damages in an amounts as provided for in the indemnification provisions of the Merger Agreement and applicable law.

266. Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis actions in knowingly making false and fraudulent Representations to Homeowners was were done in bad faith and in a willful and wanton manner with complete disregard for the rights of Counter-Claimants and third-party Respondents, justifying an award

of punitive damages.

## COUNT VII
### (Conspiracy)

267.     Counterclaimants and Respondents reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim and Third-Party Complaint as if set forth at length herein.

268.     Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis agreed and conspired among themselves to share and coordinate their knowledge, data, research activity, and decisions to defraud Counter-Plaintiff and Respondents into proceeding with the Maslow Merger Agreement, to tie up their equity, and enable Eberwein, Lone Star Management, Speck and Tsahalis to control the Board of Directors.

269. Mr. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis agreed and conspired among themselves to share and coordinate their knowledge, data, research activity, and to defraud Counter-Plaintiff and Respondents into proceeding with the Maslow Merger Agreement, to tie up their equity, and enable Eberwein, Lone Star Management, Speck and Tsahalis to control the Board of Directors.

## COUNT VIII
### (Tortious Interference with Business and/or Contract Expectancy and/or Prospective Business Advantage)

270.     Counterclaimants reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim.

271.     Respondents were parties to the Maslow Merger Agreement, and the Majority Shareholders of Reliability.

272. Defendants Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, knew of and even induced third-party Respondents into such business arrangement.

273. Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, as set forth in this pleading, have intentionally and willfully acted to undermine Respondents business, in a manner calculated to cause damage to the Respondents in their lawful business, with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of such third-party Respondents (which constitutes malice), and actual damage and loss has resulted.

## COUNT X
### (Constructive Trust, Resulting Trust, and/or Receivership)

274.    Counterclaimants and Respondents reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim as if set forth at length herein.

275.    Under the circumstances described herein, it would be improper and inequitable for Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis, individually and/or collectively, to continue to exercise control over Reliability or Maslow, and their retention of control is at the expense and contrary to the interests of the Majority Shareholders, including Respondents.

276. Under the circumstances herein, it work a fraud an injustice against Respondents if Eberwein, individually and as the agent of Lone Star Management, together with Speck and Tsahalis were allowed to retain control of Reliability or Maslow, including certain funds obtained from the federal government as part of the Payroll Protection Program Loan, which on information and belief are approximately $6.5 Million (the "PPPL Loan Funds").

277. Said conduct of third-party Respondents are illegal, oppressive, and fraudulent, including as to Respondents.

278. On information and belief, third-party Respondents are engaged in a plan to siphon off assets or sell assets at a discount, including the Intercompany Promissory Notes, to directly and indirectly damage Respondents.

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 135 of 150

279. Under the circumstances described herein, principles of Equity should declare that any interest Reliability, Maslow, including the PPPL Loan Funds, and other assets, including the Intercompany Promissory Notes be held in an implied trust/ constructive trust / resulting trust, for the benefit and preservation of the Companies' Shareholders.

280. In the interest of equity and justice, and as a matter of law, The Arbitrators should declare that Respondents holds an equitable lien against the shares of Maslow, including Intercompany Promissory Notes, the PPPL Loan Funds, in whole or part, and impose a implied trust/ constructive trust/ resulting trust upon any interest of third-party Respondents, including Reliability in such assets, for the benefit of Respondents, and the interest of Reliability and Maslow be subject to Respondents' rights.

281. Respondents also request that Doki or other Third-Party Plaintiff be appointed receiver of Reliability and/or Maslow, including its assets during the pendency of this lawsuit.

## COUNT XI
### (Direct Action by Stockholder Against Corporate Directors for Breach of Fiduciary Duty)

282.     Counterclaimants and Respondents reallege and incorporate each and every allegation set forth in the above paragraphs of this Counterclaim.

283.     Speck, Tsahalis and Eberwein, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

284.     By reasons of their positions as officers and/or directors and fiduciaries and because of their ability to control the business and corporate affairs of Reliability, Speck, Tsahalis and Eberwein owe the Company and its stockholders fiduciary obligations of trust, loyalty, good faith, candor and due care, and were required to do their utmost to control and manage the affairs of Reliability in a fair, just, honest and equitable manner, including to protect and honor stockholder's right to call a special meeting of shareholders for the specific purpose

61

of electing or removing directors as allowed by the organizational documents and applicable law.

285.    Speck, Tsahalis and Eberwein were required to act in furtherance of the best interests of Reliability and its stockholders so as to benefit all stockholders equally, and not in furtherance of their own personal interests or benefit.

286.    Each officer and director of Reliability owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

287.    In failing to fulfill these duties, Speck, Tsahalis and Eberwein repeatedly and continuously, throughout the Relevant Period, made material misstatements of fact regarding the Reliability Board's intent and obligations to the shareholders, to respect the shareholders' rights to appointment members of the aboard, to enforce the shareholders' right to terminate the member s of the board as allowed by the Bylaws and the applicable statutes, to protect the shareholders interest in Reliability after the Merger, not to engage in self-dealing above the interests of Reliability's shareholders.

WHEREFORE, Counterclaimants and Respondents, as a result of incurring in excess of $86 Million in losses and damages, respectfully requests that the Arbitrators enter the following relief:

A.    The Arbitrators should enter a declaratory judgment declaring the following:  (i) the rights and liabilities of the parties as Shareholders of Reliability Incorporated and as parties to the Maslow Merger Agreement and the Intercompany Promissory Notes and Guarantee by Doki; (ii) Counter-Claimants and Respondents, as the majority of Reliability's Shareholders are entitled to call a Special Meeting of

Shareholders to terminate any members of the Board of Directors for cause or no cause; (iii) the termination of Tsahalis and Speck as directors is a right that Counter-Claimants and Respondents are entitled to exercise in their capacity as the majority of Reliability's Shareholders; (iv) Tsahalis and Speck have acted to frustrate the exercise of Counter-Claimants and Respondents, as the majority of Reliability's Shareholders to call a Special Meeting of Shareholders; (v) the actions by Tsahalis and Speck to dilute the interests of majority Shareholders are *ulta vires* and unauthorized; (vi) any action by Tsahalis and Speck as a result of their actions in contravention to the expressed interest of the majority Shareholder of Reliability is unauthorized and ultra vires; (vii) Naveen Doki, Shirisha Janumpally, Judos Trust, Federal Systems, Dr. Silvija Valleru, Kalyan Pathuri, and Igly Trust actually and/or substantially complied in providing notice to Reliability Incorporated's shareholders for the Special Meeting of the Shareholders on February 28, 2020; (viii) votes or other actions taken during the February 28, 2020, including the removal of Tsahalis and Speck from the Board of Directors and the election of Phakir Doki, Madhavi Doki, and Sridhar Badam, were not defective corporate actions due to defendants' failure to provide the notice required by Reliability Incorporated's bylaws and the Texas Business Organizations Code and are, therefore, void; (xi) Reliability Incorporated's Board of Directors is illegally constituted and in contraventions of the Maslow Merger Agreement and Reliability's Bylaws and any action taken by that Board, now or in the future, is void as the product of an illegally constituted Board unauthorized or approved by the majority Shareholders; (x) the failure to afford whether Counter-Claimants, as the majority of Reliability's Shareholders, to serve on the Board of Directors or cause a new election invalidates any and all actions taken

63

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 138 of 150

by the present Board of Directors; (xi) the failure to elect Counter-Claimants as Directors or failure to allow such persons to delegate such Directors (or even vote on Directors) is grounds for rescission of the Maslow Merger Agreement; (xii) the Indemnification Agreement is ultra-vires, not validly authorized, and/or the product of self-interest of the Board of Directors; (xiii) the parties to the Vivos Intercompany Promissory Notes did not agree or contemplate that any contributions would be made in 2019 or prior to the maturity date of the Intercompany Promissory Notes in 2023; (xiv) in approving the Malow Merger Agreement, the Respondents and/or did not contemplate authorization for enforcement of the Intercompany Promissory Notes prior to maturity; (xv) there was no requirement or understanding that Maslow would require repayment of these notes in 2019; (xvii) Dr. Doki's purported guarantee is void as lacking any consideration by Maslow, and/or the result of detrimental reliance and/or fraud in obtaining control of Maslow against his interest; (xvii) Maslow agreed, understood and contemplated, as confirmed by its verified announcements that the Intercompany Promissory Notes would not be paid, called, or collected prior to maturity; Dr. Doki was not required to make payment , (xviii) Dr. Doki was not expected to make any contribution to Maslow prior to the maturity dates of the Intercompany Promissory Notes; (xix) amounts owed under the Intercompany Promissory Notes were reduced and extinguished in the amount of at least $1,417,717; (xx) Dr. Doki is not in breach his Guarantee.

B.      That the Arbitrators impose an equitable lien, constructive trust, and/or resulting trust  in favor of Respondents and against the respective interests of third-party Respondents, including Reliability and Maslow, in the shares and assets of Maslow, including Intercompany Promissory Notes, the PPPL Loan Funds, and

that Dr. Doki or other Third-Party Plaintiff be appointed receiver of Reliability and/or Maslow, including its assets during the pendency of this lawsuit, and for such other relief as may be just and equitable.

C.     That the Arbitrators rescind the Maslow Merger Agreement, and return the parties to the status quo ante, including returning all property, funds, shares of Maslow to Respondents.

D.     That the Arbitrators enter judgment in an amount as allowed by the Indemnity provisions of the Merger Agreement, in favor of the Counterclaimants against Counterclaimants, plus pre- and post-judgment interest.

E.     That the Arbitrators enter temporary, preliminary and permanent injunction mandating that Reliability immediately call a shareholder meeting for the specific purpose of allowing Reliability shareholders to remove the existing board of directors and to elect new directors as allowed by the organizational documents and applicable law; and that The Arbitrators enjoin Reliability's officers and directors from blocking the shareholders from holding such special meeting of shareholders; that the Arbitrators order that board of directors call an immediate annual meeting of shareholders pursuant to the organizational documents and applicable law; that The Arbitrators prohibit third-party Respondents from wasting assets of Maslow, including preserving any PPPL Proceeds.

F.     That the Arbitrators award such other relief as may be just and proper.

Respectfully Submitted,

**NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY (individually and in her capacity as trustee of JUDOS TRUST), KALYAN PATHURI (individually in his capacity**

**as trustee of IGLY TRUST), and FEDERAL SYSTEMS**

*By Counsel.*

**SABOURA, GOLDMAN & COLOMBO, P.C.**

_____

Elias G. Saboura-Polkovotsy
11200 Rockville Pike,
Suite 405
North Bethesda, Maryland 20852
*esboura@sabouralaw.com*
(301) 245-3230
(301) 245 3234 Direct
(301) 881-8885 Fax
*Counsel for Respondents and Counterclaimants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July 2019, the forgoing was served electronically to:

Thomas J. Fleming
Kerrin T. Klein
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019

SABOURA, GOLDMAN & COLOMBO, P.C.

_____

Elias G. Saboura-Polkovotsy
11200 Rockville Pike,
Suite 405
North Bethesda, Maryland 20852
*esboura@sabouralaw.com*
(301) 245-3230
(301) 245 3234 Direct
(301) 881-8885 Fax
*Counsel for Respondents and Counterclaimants*



# REQUEST FOR JUDICIAL INTERVENTION

**UCS-840**
(rev. 07/29/2019)

### New York Supreme COURT, COUNTY OF New York

| Index No: | Date Index Issued: | **For Court Use Only:** |
|---|---|---|

| **CAPTION** Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet. | IAS Entry Date |
|---|---|

RELIABILITY INCORPORATED

Judge Assigned

Plaintiff(s)/Petitioner(s)

-against-

NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY (individually and in her capacity as trustee of JUDOS TRUST), KALYAN PATHURI (individually in his capacity as trustee of IGLY TRUST), FEDERAL SYSTEMS

RJI Filed Date

Defendant(s)/Respondent(s)

**NATURE OF ACTION OR PROCEEDING:** Check only one box and specify where indicated.

| **COMMERCIAL** | **MATRIMONIAL** |
|---|---|
| ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.) | ☐ Contested |
| ☒ Contract | *NOTE: If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.* |
| ☐ Insurance (where insurance company is a party, except arbitration) | *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI **(UD-13)**.* |
| ☐ UCC (includes sales and negotiable instruments) | |
| ☐ Other Commercial (specify): | **TORTS** |
| *NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.* | ☐ Asbestos |
| | ☐ Child Victims Act |
| **REAL PROPERTY:** Specify how many properties the application includes: | ☐ Environmental (specify): |
| | ☐ Medical, Dental, or Podiatric Malpractice |
| ☐ Condemnation | ☐ Motor Vehicle |
| ☐ Mortgage Foreclosure (specify): ☐ Residential ☐ Commercial | ☐ Products Liability (specify): |
| Property Address: | ☐ Other Negligence (specify): |
| *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.* | ☐ Other Professional Malpractice (specify): |
| | ☐ Other Tort (specify): |
| ☐ Tax Certiorari - Section: Block: Lot: | |
| ☐ Tax Foreclosure | **SPECIAL PROCEEDINGS** |
| ☐ Other Real Property (specify): | ☐ CPLR Article 75 (Arbitration) [see **NOTE** in **COMMERCIAL** section] |
| | ☐ CPLR Article 78 (Body or Officer) |
| **OTHER MATTERS** | ☐ Election Law |
| ☐ Certificate of Incorporation/Dissolution [see **NOTE** in **COMMERCIAL** section] | ☐ Extreme Risk Protection Order |
| ☐ Emergency Medical Treatment | ☐ MHL Article 9.60 (Kendra's Law) |
| ☐ Habeas Corpus | ☐ MHL Article 10 (Sex Offender Confinement-Initial) |
| ☐ Local Court Appeal | ☐ MHL Article 10 (Sex Offender Confinement-Review) |
| ☐ Mechanic's Lien | ☐ MHL Article 81 (Guardianship) |
| ☐ Name Change | ☐ Other Mental Hygiene (specify): |
| ☐ Pistol Permit Revocation Hearing | ☐ Other Special Proceeding (specify): |
| ☐ Sale or Finance of Religious/Not-for-Profit Property | |
| ☐ Other (specify): | |

**STATUS OF ACTION OR PROCEEDING:** Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|---|---|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: |

**NATURE OF JUDICIAL INTERVENTION:** Check one box only and enter additional information where indicated.

| ☐ Infant's Compromise | | |
|---|---|---|
| ☐ Extreme Risk Protection Order Application | | |
| ☐ Note of Issue/Certificate of Readiness | | |
| ☐ Notice of Medical, Dental, or Podiatric Malpractice | Date Issue Joined: | |
| ☐ Notice of Motion | Relief Requested: | Return Date: |
| ☐ Notice of Petition | Relief Requested: | Return Date: |
| ☒ Order to Show Cause | Relief Requested: Compel Arbitration | Return Date: |
| ☐ Other Ex Parte Application | Relief Requested: | |
| ☐ Poor Person Application | | |
| ☐ Request for Preliminary Conference | | |
| ☐ Residential Mortgage Foreclosure Settlement Conference | | |
| ☐ Writ of Habeas Corpus | | |
| ☐ Other (specify): | | |

**RELATED CASES:** List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**PARTIES:** For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant; 3rd party plaintiff, etc.) | Attorneys and/or Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: RELIABILITY INCORPORATED<br><br>Role(s): Plaintiff/Petitioner | THOMAS FLEMING, OLSHAN FROME WOLOSKY, LLP, 1325 Avenue of the Americas , NEW YORK, NY  10019, 212-451-2300, tfleming@olshanlaw.com | ☐ YES  ☒ NO |  |
| ☒ | Name: DOKI, NAVEEN<br><br>Role(s): Defendant/Respondent | 4902 Finchem Court, Virginia, VA  22030 | ☐ YES  ☒ NO |  |
| ☒ | Name: VALLERU, SILVIJA<br><br>Role(s): Defendant/Respondent | 6206 Colchester Road, Virginia, VA  22030 | ☐ YES  ☒ NO |  |
| ☒ | Name: SHIRISHA JANUMPALLY (individually and in her capacity as trust...<br>Role(s): Defendant/Respondent | 4902 Finchem Court, Virginia, VA  22030 | ☐ YES  ☒ NO |  |
| ☒ | Name: KALYAN PATHURI (individually in his capacity as trustee of IGL...<br>Role(s): Defendant/Respondent | 6206 Colchester Road, Virginia, VA  22030 | ☐ YES  ☒ NO |  |
| ☒ | Name: FEDERAL SYSTEMS<br><br>Role(s): Defendant/Respondent | 4902 Finchem Court, Virginia, VA  22030 | ☐ YES  ☒ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): |  | ☐ YES  ☐ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:   07/31/2020

THOMAS J FLEMING
Signature

1454123
Attorney Registration Number

THOMAS J FLEMING
Print Name

*This form was generated by NYSCEF*

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF** New York

_____x

RELIABILITY INCORPORATED

                                        **Plaintiff(s)/Petitioner(s)**

-against-

NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY
(individually and in her capacity as trustee of JUDOS TRUST),

                                        **Defendant(s)/Respondent(s)**
_____x

**Index No:**

**RJI No. (if any):**

**UCS-840C**
**3/2011**

## COMMERCIAL DIVISION

**Request for Judicial Intervention Addendum**

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☐ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☐ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☒ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:
Equitable relief. Cancellation of shares, with a value of at least 9 million dollars.

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) and (c).**

**Dated:**     07/31/2020

                                        THOMAS J FLEMING
                                        **SIGNATURE**

                                        THOMAS J FLEMING
                                        **PRINT OR TYPE NAME**

**Caption Rider Sheet**

**Plaintiff(s)/Petitioner(s)**

vs.

NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY (individually and in her capacity as trustee of JUDOS TRUST), KALYAN PATHURI (individually in his capacity as trustee of IGLY TRUST), FEDERAL SYSTEMS

**Defendant(s)/Respondent(s)**

At I.A.S. Part ____ of the Supreme Court of the State of New York, held in and for the County of New York, at the Courthouse thereof, located at 60 Centre Street, New York, New York on the ___ day of August, 2020.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

RELIABILITY INCORPORATED

                              Petitioner,
             -against-

NAVEEN DOKI, SILVIJA VALLERU, SHIRISHA JANUMPALLY (individually and in her capacity as trustee of JUDOS TRUST), KALYAN PATHURI (individually in his capacity as trustee of IGLY TRUST), and FEDERAL SYSTEMS

                              Respondents.

---

Index No.

**ORDER TO SHOW CAUSE**

UPON reading and filing the annexed Verified Petition, sworn to July 31, 2020 (the "Verified Petition") and the exhibits thereto, and all pleadings and prior proceedings had herein:

NOW, upon motion of Olshan Frome Wolosky LLP, attorneys for Petitioner, and for good cause shown, it is hereby

ORDERED that each Respondent show cause at the Supreme Court of the State of New York in and for the County of New York, at I.A.S. Part ___ thereof at the County Courthouse located at 60 Centre Street, Room _____, New York, New York, on the ___ day of August 2020, at _____ o'clock __.m., or as soon thereafter as counsel may be heard, why an Order should not be entered:

     1.     Pursuant to CPLR § 7503(a), directing each Respondent to arbitrate before the American Arbitration Association the claims asserted in the Demand for Arbitration (the "Arbitration") annexed as Exhibit 1 to the Verified Petition;

     2.     Granting such other and further relief as the Court deems just and proper.

IT IS FURTHER ORDERED that service of a copy of this Order to Show Cause, along with the papers upon which it is based, shall be made by overnight and electronic mail to Respondents' counsel of record in the Arbitration, Elias Saboura, Esq., shall be deemed good and sufficient service thereof.

IT IS FURTHER ORDERED that all affidavits and other papers in opposition to this motion, if any, shall be served so as to be received by the attorneys for Petitioner, Olshan Frome Wolosky LLP, no later than August __, 2020 at 5:30 p.m.; and

IT IS FURTHER ORDERED that any reply papers shall be served so as to be received by the attorneys for Respondents no later than August ___, 2020 at 5:30 p.m.

ENTER:

_____

HON. _____, J.S.C.

2

# EXHIBIT B

At I.A.S. Part 54 of the Supreme Court of the
State of New York on the 10th day of August,
2020.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

RELIABILITY INCORPORATED,

                               Petitioner,

          -against-

NAVEEN DOKI, SILVIJA VALLERU,
SHIRISHA JANUMPALLY (individually
and in her capacity as trustee of JUDOS
TRUST), KALYAN PATHURI
(individually in his capacity as trustee of
IGLY TRUST), and FEDERAL
SYSTEMS,

                         Respondents.

Index No. 653529/2020

Motion Seq. 001

**ORDER TO SHOW CAUSE**

UPON reading and filing the annexed Verified Petition, sworn to July 31, 2020 (the "Verified Petition") and the exhibits thereto, and all pleadings and prior proceedings had herein:

NOW, upon motion of Olshan Frome Wolosky LLP, attorneys for Petitioner, and for good cause shown, it is hereby

ORDERED that each Respondent show cause at the Supreme Court of the State of New York in and for the County of New York, at I.A.S. Part 54 thereof at the County Courthouse located at 60 Centre Street, Room 228, New York, New York, on September 1, 2020, at 10:00 a.m., ON PAPERS ONLY, why an Order should not be entered:

        1.        Pursuant to CPLR § 7503(a), directing each Respondent to arbitrate before the American Arbitration Association the claims asserted in the Demand for Arbitration (the "Arbitration") annexed as Exhibit 1 to the Verified Petition;

        2.        Granting such other and further relief as the Court deems just and proper.

Case 1:20-cv-07109-KPF   Document 1-1   Filed 09/01/20   Page 150 of 150

IT IS FURTHER ORDERED that by August 11, 2020, service of a copy of this Order to Show Cause, along with the papers upon which it is based, shall be made by overnight and electronic mail to Respondents' counsel of record in the Arbitration, Elias Saboura, Esq., shall be deemed good and sufficient service thereof.

IT IS FURTHER ORDERED that all affidavits and other papers in opposition to this motion, if any, shall be e-filed by August 25, 2020; and

IT IS FURTHER ORDERED that any reply papers shall be e-filed by September 1, 2020 at 10:00 a.m.; and

IT IS FURTHER ORDERED that the parties **shall not** submit hard copies or appear in court on the return date.

ENTER:

_____
Jennifer G. Schecter, J.S.C.

2