UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RELIABILITY INCORPORATED,

                              Plaintiff,

                    -v.-

NAVEEN DOKI; SILVIJA VALLERU; SHIRISHA
JANUMPALLY (*individually and in her capacity
as trustee of* JUDOS TRUST); KALYAN
PATHURI (*individually and in his capacity as
trustee of* IGLY TRUST); and FEDERAL
SYSTEMS,

                              Defendants.

---

20 Civ. 7109 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

        This lawsuit is one in a series of disputes arising from a failed merger

(the "Merger") between Plaintiff Reliability Incorporated ("Reliability") and non-

party Maslow Media Group, Inc. ("Maslow").  Reliability brings this action,

pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") § 7503(a), to

compel Defendants Naveen Doki, Silvija Valleru, Shirisha Janumpally

(individually and in her capacity as trustee of Judos Trust), Kalyan Pathuri

(individually and in his capacity as trustee of Igly Trust), and Federal Systems

(collectively, "Defendants"), to arbitrate claims arising from a September 18,

2019 Merger Agreement (the "Merger Agreement"), pursuant to which

Reliability acquired Maslow.  Defendants, in turn, have moved to dismiss

Reliability's Petition to Compel Arbitration pursuant to Rules 12(b)(1), 12(b)(3),

and 12(b)(6) of the Federal Rules of Civil Procedure.  While sourced to different

provisions in Rule 12, Defendants' arguments all concern the impact *vel non* of

prior lawsuits involving Reliability and Maslow that were brought in the Circuit Court for Montgomery County, Maryland (the "Maryland Action"), and the District Court of Harris County, Texas (the "Texas Action"). For the reasons that follow, Defendants' motion to dismiss is denied.

## BACKGROUND[1]

### A.   The Parties

Reliability is a Texas corporation with its principal place of business in Maryland. (Pet. ¶ 2). Between 1971 and 2007, Reliability was principally engaged "in the design, manufacture, market and support of high-performance

---

[1]   The facts in this Opinion are drawn principally from the well-pleaded allegations of Reliability's Verified Petition to Compel Arbitration (the "Petition" or "Pet." (Dkt. #4 at 7)), and its exhibits. The Court also draws jurisdictional facts from the Declaration of Glen A. Kendall submitted in support of Defendants' Motion to Dismiss ("Kendall Decl., Ex. [ ]" (Dkt. #14)) and the Declaration of Kerrin T. Klein submitted in opposition to Defendants' Motion to Dismiss ("Klein Decl., Ex. [ ]" (Dkt. #22)). On this point, Defendants are permitted to offer extrinsic evidence showing lack of subject matter jurisdiction on a motion brought under Federal Rule of Civil Procedure 12(b)(1), *see Nicholas* v. *Trump*, 433 F. Supp. 3d 581, 584 n.2 (S.D.N.Y. 2020) (citing *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)), and the Court may consider materials outside the pleadings on a motion brought under Rule 12(b)(3), *see Water Quality Ins. Syndicate* v. *Nat'l Pollution Funds Ctr.*, No. 19 Civ. 6344 (PAE), 2020 WL 417653, at *4 (S.D.N.Y. Jan. 27, 2020) (citing *Concesionaria DHM, S.A.* v. *Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004); *Gulf Ins. Co.* v. *Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). Moreover, the exhibits appended to the Kendall and Klein Declarations include filings on the dockets of the Maryland and Texas Actions, which are public records of which the Court may take judicial notice. *See Mangiafico* v. *Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (explaining that "docket sheets are public records of which" courts may take judicial notice); *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998))).

For ease of reference, the Court refers to Defendants' opening brief as "Def. Br." (Dkt. #15); Reliability's opposition brief as "Pl. Opp." (Dkt. #21); and Defendants' reply brief as "Def. Reply" (Dkt. #23). Reliability's June 5, 2020 Notice of Intention to Arbitrate and Demand for Arbitration is referred to as the "Demand" (Pet., Ex. 1), and the September 18, 2019 Merger Agreement is referred to as the "Merger Agreement" (*id.*, Ex. 2).

equipment used to test and condition integrated circuits." (Demand ¶ 7). Reliability "shut down" this business in 2007, and continued as a "shell company" until October 2019, when it acquired Maslow, an HR and staffing firm that also offers video production services. (*Id.* at ¶¶ 1, 7).

Defendants Naveen Doki, Silvija Valleru, Shirisha Janumpally, and Kalyan Pathuri reside in Fairfax, Virginia. (Pet. ¶¶ 3-5, 8). Janumpally and Pathuri serve as the sole trustees and beneficiaries of Judos Trust and Igly Trust, respectively. (*Id.* at ¶¶ 6-7). Janumpally is also alleged to be the alter ego of Federal Systems, which is also based in Fairfax, Virginia. (*Id.* at ¶ 9). Defendants collectively own the majority of the outstanding shares of Reliability common stock, which shares they received as a result of Reliability's October 2019 acquisition of Maslow. (*Id.* at ¶ 10; Demand ¶ 23).

## B.   Maslow's Financials and Merger with Reliability

On November 9, 2016, Vivos Holdings, LLC, an entity owned and controlled by Doki and Valleru, acquired Maslow in its entirety. (Demand ¶ 20). Maslow's assets were used to finance the purchase, with the balance paid from Maslow's cash flows over the course of the following two years. (*Id.* at ¶¶ 1, 20). Following its acquisition, Maslow served as the payee on three promissory notes (the "Notes") executed with Vivos Holdings, LLC and Vivos Real Estate, LLC, another entity owned and controlled by Doki (collectively with Vivos Holdings, LLC, "Vivos"). (*Id.* at ¶ 31; *see also* Kendall Decl., Ex. B ("Vivos Intercompany Promissory Notes")). Maslow's obligations under the Notes amounted to almost $5,000,000. (*See* Demand ¶¶ 1, 31). Doki, as well as his

3

"friends and family," separately procured millions of dollars for their other businesses using Maslow's credit, and — unbeknownst to Maslow's management — listed Maslow as a guarantor to obtain a mortgage on a non-Maslow property. (*Id.*). In June 2019, Doki executed a personal guarantee to Maslow, pursuant to which he was obligated to repay $3,000,000 of the balance of Maslow's debt by December 31, 2019. (*Id.* at ¶ 2; *see also* Vivos Intercompany Promissory Notes 8).

On September 18, 2019, Reliability, an entity named "R-M Merger Sub, Inc.," Maslow, Doki, and Valleru entered into the Merger Agreement. (Demand ¶ 23). Janumpally, both individually and in her role as trustee of Judos Trust, and Pathuri, in his role as trustee of Igly Trust, then signed joinder agreements binding themselves to the Merger Agreement. (Pet. ¶¶ 5-6, 8; *id.*, Ex. 3-5). The Merger closed on October 29, 2019. (Demand ¶ 23). Under the terms of the Merger Agreement, Defendants received 260 million shares of Reliability common stock, which amounted to 94% of Reliability's issued and outstanding shares. (*Id.*; Pet. ¶ 10).

The Merger Agreement included various representations about Maslow's finances, including that "Maslow had no liabilities, obligations or commitments of any nature whatsoever …. except (a) those which are adequately reflected or reserved against in [its financial statements], and (b) those which have been incurred in the Ordinary Course of Business ….")." (Merger Agreement § 3.06; *see also id.* §§ 3.05, 3.07, 3.15). Reliability alleges that during the parties' discussions in advance of the Merger, Doki assured Jeffrey Eberwein,

4

Reliability's largest shareholder, that Maslow's loans would be repaid and its guarantees for the debts of Doki's other businesses "would be taken care of." (Demand ¶ 2). As part of these assurances, Doki executed an additional promissory note for payment of a $750,000 tax liability incurred by Maslow by December 31, 2019. (*Id.* at ¶ 33). Moreover, on October 28, 2019, in connection with the closing of the Merger, Doki, Valleru, Janumpally, Pathuri, and Federal Systems entered into an agreement (i) acknowledging that Maslow was jointly liable for certain of Doki's and Valleru's debts and (ii) pledging shares of Maslow common stock to ensure that Maslow had the capacity to repay those debts in the event that Doki or Valleru failed to do so. (*Id.* at ¶ 43).

Separately, the Merger Agreement provided that Doki, Valleru, and Janumpally would be appointed to Reliability's Board of Directors following the Merger. (Merger Agreement § 2.15(c)). However, Reliability alleges that during the parties' discussions leading up to the Merger, Doki offered to remove both his name and the names of other large investors from the list of candidates, and agreed instead that Reliability's Board of Directors could select qualified candidates. (Demand ¶¶ 2, 22). Doki also assured Eberwein that Maslow's Chief Executive Officer and Chief Operating Officer, Nick Tsahalis and Mark Speck, would remain in charge of Maslow's business. (*Id.*). Reliability further alleges that in return, it agreed that certain Defendants would be exempt from the Merger Agreement's "lock-up" requirements, which would have barred them from selling their shares of Reliability stock for a one-year period. (*Id.* at ¶ 2).

As relevant here, the Merger Agreement contains the following arbitration clause:

> (a) If there is any dispute or controversy relating to this Agreement or any of the Contemplated Transactions (each, a "Dispute"), such Dispute shall be resolved in accordance with this Section 10.10.

> (b) The Party claiming a Dispute shall deliver to each of the other Parties a written notice (a "Notice of Dispute") that will specify in reasonable detail the dispute that the claiming Party wishes to have resolved.  In any such arbitration pursuant to this Section 10.10 Reliability shall have the power to act for and to bind Merger Sub and Mr. Eberwein and Maslow shall have the power to bind the Shareholders.  If Maslow, the Shareholders and Reliability are not able to resolve the dispute within five (5) Business Days of a Party's receipt of an applicable Notice of Dispute, then such Dispute shall be submitted to binding arbitration in accordance with this Section 10.10.

> (c) Any arbitration hereunder shall be conducted in accordance with the rules of the American Arbitration Association then in effect.  Maslow and Reliability shall each select one arbitrator, and the two arbitrators so selected shall select a third arbitrator, and the three arbitrators shall resolve the Dispute.  The arbitrators will be instructed to prepare in writing as promptly as practicable, and provide to Reliability and Maslow such arbitrators' determination, including factual findings and the reasons on which the determination was based. The decision of the arbitrators will be final, binding and conclusive and will not be subject to review or appeal and may be enforced in any court having jurisdiction over the Parties.  Each party shall initially pay its own costs, fees and expenses (including, without limitation, for counsel, experts and presentation of proof) in connection with any arbitration or other action or proceeding brought under this Section 10.10, and the fees of the arbitrators shall be share equally, provided, however, that the arbitrators shall have the power to award costs and expenses in a different proportion.

> (d) The arbitration shall be conducted in New York, NY.

6

(Merger Agreement § 10.10).

Following the execution of the Merger Agreement, Doki's other businesses defaulted on the loans that Maslow had guaranteed, and Reliability discovered the existence of Maslow's mortgage guarantee.  (Demand ¶ 4). Worse yet, Defendants refused either to return the pledged Maslow shares or to put them in escrow.  (*Id.* at ¶ 44).  Reliability alleges that, as a result, "Maslow was in fact worth nothing."  (*Id.* at ¶ 4).  In spite of these apparent breaches, and in contravention of his prior concessions, Doki then sought to convene a special meeting of Reliability shareholders in order to oust the incumbent Board of Directors.  (*Id.* at ¶ 5).

## C.     The Maryland Action

On February 25, 2020, Maslow filed an action in the Circuit Court for Montgomery County, Maryland, against Vivos and Doki for breach of the Notes. (*See generally* Kendall Decl., Ex. J (the "Maryland Complaint")).  Maslow also asserted a claim against Doki for breach of his personal guarantee of one of the Notes.  (*Id.* at ¶¶ 34-38).  Unlike the Merger Agreement, the Notes did not contain any applicable arbitration clause.  (*See generally* Vivos Intercompany Promissory Notes).

On or about May 7, 2020, Vivos and Doki, as well as third-party plaintiffs Pathuri, Judos Trust, and Igly Trust (collectively, the "Maryland Defendants and Third-Party Plaintiffs") filed (i) counterclaims against Maslow; and (ii) third-party claims against Reliability, Eberwein, Tsahalis, Speck, and Lone Star Value Management, LLC ("Lone Star"), a Connecticut limited liability

company of which Eberwein was the sole member (collectively, the "Maryland Third-Party Defendants"). (*See generally* Kendall Decl., Ex. K ("Maryland Counterclaims and Third-Party Claims")). The Maryland Defendants and Third-Party Plaintiffs asserted claims for: (i) declaratory judgment, including declarations related to the Notes, the composition of Reliability's Board of Directors, and a post-Merger shareholder meeting; (ii) injunctive relief related to the appointment of directors to Reliability's Board of Directors; (iii) rescission of the Merger Agreement or modification to allow Defendants and Third-Party Plaintiffs to appoint directors to Reliability's Board of Directors; (iv) fraud, conspiracy, tortious interference, and constructive trust against Eberwein, Lone Star, Tsahalis, and Speck relating to alleged representations regarding shareholders' control of Reliability's Board of Directors; (v) breach of fiduciary duty against Eberwein, Tsahalis, and Speck; and (vi) a shareholder derivative action on behalf of Reliability. (*See id.* at ¶¶ 220-281).

On June 5, 2020, Maslow filed a motion to compel arbitration of the Maryland Counterclaims and Third-Party Claims and to stay the remaining claims pending the outcome of such arbitration. (Kendall Decl., Ex. M ("Maslow Motion to Compel")). The Circuit Court for Montgomery County denied the motion in a one-sentence order issued on July 16, 2020 (*id.*, Ex. O ("Maryland Initial Denial")), and subsequently denied Maslow's motion for reconsideration in a minute entry entered on August 26, 2020 (*id.*, Ex. P at 10 ("Maryland Denial of Reconsideration," and with the Maryland Initial Denial, the "Maryland Rulings")).

More recently, on January 4, 2021, the Circuit Court for Montgomery County denied the Maryland Defendants' and Third-Party Plaintiffs' application for injunctive relief to compel a shareholder meeting and replace Reliability's Board of Directors.  (*See* Dkt. #24 (February 4, 2021 letter from Reliability enclosing the order)).  Based on its review of the docket, the Court understands that the Maryland Action remains ongoing, with trial scheduled to commence in October.

## D.    The Texas Action

Shortly after commencement of the Maryland Action, on or about March 2, 2020, Reliability, Maslow, Tsahalis, and Speck (collectively, the "Texas Plaintiffs") commenced an action in the District Court of Harris County, Texas, by filing a Petition and Application for a Temporary Restraining Order and Temporary and Permanent Injunction against Defendants and three other Reliability shareholders (collectively, the "Texas Defendants").  (Kendall Decl., Ex. Q).[2]  The Texas Plaintiffs sought a declaratory judgment to void any votes and actions taken at a February 28, 2020 special shareholder meeting called by Defendants.  (*Id.* at ¶ 30).  On March 24, 2020, the Texas Plaintiffs amended their petition to include two additional claims for (i) a declaratory judgment that Pathuri, individually and as the trustee for Igly Trust, was improperly demanding a list of shareholders and other documents so as to notice a special meeting of shareholders, and (ii) conspiracy to defraud Reliability in connection

---

[2]    The Reliability shareholders named in the Texas Action include Doki's father, Phakir Doki (Kendall Decl., Ex. Q at ¶ 2); Doki's sister-in-law, Madhavi Doki (*id.*), and Sridhar Badam (*id.* at ¶ 15).

with the Texas Defendants' efforts to replace Reliability's Board of Directors.
(*See id.*, Ex. U at ¶¶ 39-41).

The Texas Plaintiffs were granted a temporary restraining order, which
order was subsequently extended twice before expiring on June 5, 2020.  (*See*
Kendall Decl., Ex. S (Texas Action temporary restraining orders)).  On June 12,
2020, Igly Trust filed counterclaims related to its alleged right to call a meeting
of Reliability's shareholders.  (*Id.*, Ex. W).

On July 2, 2020, the Texas Plaintiffs moved to stay the action pending
arbitration in New York.  (Kendall Decl., Ex. Z).  In their motion, the Texas
Plaintiffs stated that the issues in the Texas Action were "factually intertwined
with and ha[d] a significant relationship to the issues in the Arbitration."  (*Id.*
at ¶ 5).  On October 20, 2020, the District Court of Harris County dismissed
the claims against the Texas Defendants due to lack of jurisdiction.  (Klein
Decl., Ex. 2).  Based on its review of the docket, the Court understands that the
Texas Plaintiffs' appeal of the dismissal remains pending.  The Texas Plaintiffs'
motion for a stay was denied on October 28, 2020.  (*Id.*, Ex. 3).

### E.     The Arbitration and the Instant Petition

On June 5, 2020, Reliability commenced an arbitration before the
American Arbitration Association (the "AAA") by filing its Notice of Intention to
Arbitrate and Demand for Arbitration (the "Demand").  (Pet. ¶ 1; *see also*
Demand).[3]  Reliability's Demand asserts two claims for relief arising from the

---

[3]     As noted above, on the same day Maslow filed its motion to compel arbitration of the
Maryland Counterclaims and Third-Party Claims.

Merger Agreement.  *First*, Reliability asserts a claim for actual fraud stemming from alleged representations and omissions made by Doki.  (Demand ¶ 46). Reliability asserts that each of the remaining Defendants "joined in the fraud and/or aided and abetted the fraud."  (*Id.* at ¶ 47).  *Second*, Reliability states a related claim for breach of contract and indemnification.  (*Id.* at ¶¶ 49-51).  In its Demand, Reliability submits that Defendants breached certain representations and warranties in connection with the Merger Agreement, and that Defendants are obligated to indemnify Reliability for all losses incurred as a result of those breaches.  (*Id.*).  Specifically, Reliability alleges that Defendants breached the Merger Agreement by:

(i)  Providing Reliability with fraudulent financial statements for Maslow that included the "worthless" Notes as assets, when Doki had neither the means nor the intent to repay either the $3,000,000 balance on the Notes that he had personally guaranteed, or the $750,000 tax liability that he had separately committed to repaying (*id.* at ¶¶ 29-34);

(ii)  Omitting a $1,800,000 mortgage obligation from the financial statements and schedule of off-balance-sheet obligations provided to Reliability in advance of the Merger (*id.* at ¶¶ 35-38); and

(iii)  Failing to disclose or misrepresenting other liabilities, and failing to abide by certain obligations, including (i) representing that Maslow's payments on certain guaranteed obligations were current and that Defendants would post collateral on those debts, when Defendants had neither the ability nor intent to repay those loans; (ii) grossly understating Maslow's off-balance-sheet liabilities; (iii) failing to pay a $130,000 judgment to "HOP Capital"; and (iv) pledging shares to provide Maslow with capital to repay obligations in the event of Doki's or Valleru's default, and later refusing to return the pledged shares or put them in escrow (*id.* at ¶¶ 39-45).

Defendants responded to the Demand by filing an Answering Statement, Request for Dismissal, Counterclaim, and Third-Party Claim with the AAA on July 2, 2020. (Kendall Decl., Ex. Y). However, after submitting their Answering Statement, Defendants took the position before the AAA that the arbitration had been stayed by the Maryland Initial Denial. (Pet. ¶ 22). The AAA notified the parties that it would not proceed with the arbitration without either the parties' consent or an agreement to arbitrate the impact of the Maryland court's decision on the Demand. (*Id.*). Defendants did not consent and declined to arbitrate any threshold issues. (*Id.*).

On July 31, 2020, Reliability filed the instant Petition in the Supreme Court of the State of New York, New York County, seeking to compel arbitration pursuant to C.P.L.R. § 7503(a). Defendants responded by removing the action to this Court on September 1, 2020, on the basis of diversity jurisdiction. (*See* Dkt. #1, 4).

On September 21, 2020, Defendants submitted a letter seeking a pre-motion conference on their anticipated motion to dismiss the Petition. (Dkt. #10). Reliability opposed the request on September 24, 2020 (Dkt. #11), and the Court issued a memorandum endorsement on September 25, 2020, declining to hold a pre-motion conference and setting a briefing schedule on Defendants' motion (Dkt. #12). In accordance with that schedule, Defendants filed their opening brief, a supporting declaration, and exhibits on October 28,

2020 (Dkt. #13-15);[4] Reliability filed its opposing brief, a supporting

declaration, and exhibits on December 4, 2020 (Dkt. #21-22); and briefing was

concluded with the filing of Defendants' reply brief on December 11, 2020 (Dkt.

#23).[5]

## DISCUSSION

Defendants have asserted four bases for dismissal of the Petition

pursuant to Rules 12(b)(1), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil

Procedure. Each of these arguments presupposes that the Maryland Action

has had some impact on the Petition. *First*, Defendants argue that the Petition

should be dismissed for improper venue because Reliability violated the "first-

to-file" rule by initiating this litigation following the Maryland Initial Denial.

(Def. Br. 6-15). *Second*, they request that the Court dismiss the Petition under

Rule 12(b)(6) on the ground that it is barred by collateral estoppel. (*Id.* at 15-

17). *Third*, they assert that the Court lacks subject matter jurisdiction under

---

[4]     Reliability does not move to strike the Kendall Declaration submitted in support of
Defendants' motion, but asserts that it is "a transparent attempt to evade the Court's
page limitations" and improper as it contains both legal arguments and documents and
allegations that the Court may not consider on the instant motion. (Pl. Opp. 6-7). The
Court does not appreciate Defendants' page-saving machinations, and did not rely on
the Kendall Declaration's recitation of facts in resolving the instant motion. Instead, as
previewed above, the Court considered certain exhibits appended to the Kendall
Declaration to the extent it was permitted to do so. *See* Background n.1.

[5]     On November 20, 2020, Defendants filed a letter requesting a pre-motion conference
regarding an anticipated motion for sanctions against Reliability for its "meritless
claims." (Dkt. #16). Reliability opposed Defendants' application on December 2, 2020
(Dkt. #19), and on December 4, 2020, the Court issued a memorandum endorsement
indicating that it would consider any motions for sanctions following the resolution of
Defendants' motion to dismiss (Dkt. #20).

        Separately, following conclusion of briefing on Defendants' motion to dismiss, on
February 4, 2021, Reliability filed a letter notifying the Court that the Maryland
Defendants' and Third-Party Plaintiffs' application for injunctive relief to compel a
shareholder meeting and replace Reliability's Board of Directors had been denied.
(Dkt. #24).

the *Rooker-Feldman* doctrine.  (*Id.* at 18-19).  And *lastly*, they submit that

Reliability waived its right to arbitration by opting to litigate in state courts in

Maryland and Texas, and that the Petition should be dismissed for this

additional reason under Rule 12(b)(6).  (*Id.* at 19-23).  The Court will address

the threshold issues of subject matter jurisdiction and venue at the outset, and

then consider Defendants' arguments with respect to putative failures to state

a claim.

**A.    Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

**1.    Applicable Law**

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for

lack of subject matter jurisdiction.  "A case is properly dismissed for lack of

subject matter jurisdiction under Rule 12(b)(1) when the district court lacks

the statutory or constitutional power to adjudicate it."  *Lyons* v. *Litton Loan*

*Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v.

*United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule

12(b)(1) motions challenging subject matter jurisdiction: facial motions and

fact-based motions.  *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57

(2d Cir. 2016); *see also Katz* v. *Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir.

2017).  A facial Rule 12(b)(1) motion is one "based solely on the allegations of

the complaint or the complaint and exhibits attached to it."  *Carter*, 822 F.3d at

56.  A plaintiff opposing such a motion bears "no evidentiary burden."  *Id.*

Instead, to resolve a facial Rule 12(b)(1) motion, a district court must

14

"determine whether [the complaint and its exhibits] allege[ ] facts that"
establish subject matter jurisdiction. *Id.* (quoting *Amidax Trading Grp.* v.
*S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). And to make
that determination, a court must accept the complaint's allegations as true
"and draw[ ] all reasonable inferences in favor of the plaintiff." *Id.* at 57
(quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"Alternatively, a defendant is permitted to make a fact-based Rule
12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]."
*Carter*, 822 F.3d at 57. "In opposition to such a motion, plaintiffs must 'come
forward with evidence of their own to controvert that presented by the
defendant,' or may instead 'rely on the allegations in the[ir p]leading if the
evidence proffered by the defendant is immaterial because it does not
contradict plausible allegations that are themselves sufficient to show
standing.'" *Katz*, 872 F.3d at 119 (alteration in original) (quoting *Carter*, 822
F.3d at 57). If a defendant supports his fact-based Rule 12(b)(1) motion with
"material and controverted" "extrinsic evidence," a "district court will need to
make findings of fact in aid of its decision" as to subject matter jurisdiction.
*Carter*, 822 F.3d at 57.

### 2.   Analysis

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of
subject matter jurisdiction, and also moves to dismiss on other grounds, the
Court must consider the Rule 12(b)(1) motion first." *Almazon* v. *JPMorgan
Chase Bank, Nat'l Ass'n*, No. 19 Civ. 4871 (VEC), 2020 WL 1151313, at *6

(S.D.N.Y. Mar. 9, 2020) (citing *Rhulen Agency, Inc.* v. *Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)), *appeal dismissed*, No. 20-1138 (2d Cir. Aug. 4, 2020).  Thus, at the outset, the Court will address Defendants' argument that it lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Def. Br. 18-19).

The *Rooker-Feldman* doctrine bars a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson* v. *De Grandy*, 512 U.S. 997, 1005-06 (1994) (discussing *Dist. of Columbia Ct. of Appeals* v. *Feldman*, 460 U.S. 462 (1983), and *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)).  While the Second Circuit traditionally applied the doctrine "expansively," and "both to final state court judgments and to interlocutory state court orders," this practice was abrogated by the Supreme Court's decision in *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U.S. 280 (2005).  *See Green* v. *Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (internal citations omitted).  Heeding the Supreme Court's admonition that the *Rooker-Feldman* doctrine occupies "narrow ground," *Exxon Mobil Corp.*, 544 U.S. at 284, the Second Circuit limited its application to cases satisfying a four-part test: (i) the federal-court plaintiff must have lost in state court; (ii) the plaintiff "must complain of injuries caused by a state-court judgment"; (iii) the plaintiff "must invite district court review and rejection of that judgment"; and (iv) "the state-court judgment must have been rendered before the district court

16

proceedings commenced[.]"  *Green*, 585 F.3d at 102 (alteration, citations, and internal quotation marks omitted) (quoting *Hoblock* v. *Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)); *see generally Dorce* v. *City of New York*, 2 F.4th 82, 101 (2d Cir. 2021).  Reliability argues that these criteria are not met in full, and the Court agrees.  (*See* Pl. Opp. 17-18).[6]

Defendants submit that the Petition is barred by the Maryland Rulings, but they misapprehend the requirements of *Rooker-Feldman*.  (Def. Br. 18-19). *First*, Defendants conclusorily assert that *Reliability* lost the motion to compel arbitration and the motion for reconsideration in the Maryland Action, neglecting to note that both motions were brought by *Maslow*.  (*Id.* at 19; *see* Maslow Motion to Compel; Kendall Decl., Ex. P at 9).  Although elsewhere in their briefing Defendants assert that Reliability and Maslow are in privity (Def. Br. 11), "clear Supreme Court and Second Circuit precedent instruct that principles of privity are inapplicable to *Rooker-Feldman*."  *1199SEIU United Healthcare Workers E.* v. *PSC Cmty. Servs.*, No. 20 Civ. 3611 (JGK), 2021 WL

---

[6]     Although Reliability does not argue that the Maryland Rulings are not sufficiently final for the purposes of the *Rooker-Feldman* doctrine, the Court believes that this may provide a separate basis for finding that the doctrine does not apply.  In the wake of *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), the Second Circuit held that a party is not a "state-court loser" where "[state] proceedings were dismissed without a final order of disposition."  *Green* v. *Mattingly*, 585 F.3d 97, 102-03 (2d Cir. 2009); *see also Hassan* v. *Marks*, 735 F. App'x 19, 20 (2d Cir. 2018) (summary order) (concluding that *Rooker-Feldman* did not apply where the state court denied plaintiff's motion for summary judgment but issued no final judgment).  The Court's understanding is that the Maryland Rulings similarly may not constitute a "final judgment" in this context.  *See Am. Bank Holdings, Inc.* v. *Kavanagh*, 436 Md. 457, 478-79 (2013) ("[A]n order denying a request to compel arbitration, styled as a motion or petition, filed in an existing action ... cannot be viewed as a final judgment, unlike that situation when a Petition to Compel Arbitration filed on its own is denied, which terminates the action.").  In an abundance of caution, the Court will nonetheless address the other *Rooker-Feldman* criteria, which are not satisfied on the present record.

708584, at *11 (S.D.N.Y. Feb. 19, 2021) (citing *Lance* v. *Dennis*, 546 U.S. 459, 466 (2006); *Kosachuk* v. *Selective Advisors Grp., LLC*, 827 F. App'x 58, 61 (2d Cir. 2020) (summary order); *UBS AG, Stamford Branch* v. *HealthSouth Corp.*, 645 F. Supp. 2d 135, 147 & n.17 (S.D.N.Y. 2008)); *see also Worthy-Pugh* v. *Deutsche Bank Nat'l Tr. Co.*, No. 3:14 Civ. 1620 (AWT), 2016 WL 2944535, at *4 (D. Conn. Jan. 29, 2016) ("[T]he concept of privity is not applicable in the context of the *Rooker-Feldman* doctrine."), *aff'd*, 664 F. App'x 20 (2d Cir. 2016) (summary order).  While the Second Circuit has recently rejected a characterization of the Supreme Court's decision in *Lance* as "establish[ing] that only named parties meet *Rooker-Feldman*'s first requirement[,]" *Dorce*, 2 F.4th at 103 & n.24 (discussing 546 U.S. at 466 n.2), the Court nonetheless expects that even a finding that Reliability and Maslow are in privity would be "insufficient to render [Reliability] a state-court loser for *Rooker-Feldman* purposes[,]" *Kosachuk*, 827 F. App'x at 61.  Although this may alone provide a sufficient basis for finding that the *Rooker-Feldman* doctrine does not deprive this Court of jurisdiction, the Court will address the second and third requirements in the interest of completeness.[7]

---

[7]     While the Second Circuit has stated that a finding of privity is "insufficient" to deem a party a state-court loser, it has indicated that a finding that parties are alter egos could "suppl[y] a basis for invoking *Rooker-Feldman*." *Kosachuk* v. *Selective Advisors Grp., LLC*, 827 F. App'x 58, 61 (2d Cir. 2020) (summary order).  However, Defendants have made no argument that Reliability is an alter ego of Maslow.  That said, the Court acknowledges that Reliability was not "a simple passive observer" in the Maryland Action, *id.*, but was rather a named third-party defendant (*see* Maryland Counterclaims and Third-Party Claims).  Moreover, Maslow's Motion to Compel sought, *inter alia*, a finding that Reliability was bound to arbitration.  (*See* Maslow Motion to Compel ¶ 10).  *Cf. Dorce* v. *City of New York*, 2 F. 4th 82, 102-03 (2d Cir. 2021) (holding that "[s]omeone who loses an ownership interest in property through a state *in rem* foreclosure proceeding against the property has lost in state court" for the purposes of *Rooker-Feldman*).  Nonetheless, even were this sufficient to establish that Reliability was

*Second*, Defendants contend that the injury alleged in Reliability's Petition was caused by the Maryland Rulings. With respect to this factor, the applicability of the doctrine "turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen* v. *Brown*, 481 F.3d 89, 98 (2d Cir. 2007) (emphases in original); *see also Hoblock*, 422 F.3d at 87 ("[A] plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of *Rooker-Feldman*."). Here, the Court does not understand Reliability to be complaining of injuries *caused by* the Maryland Rulings. The Maryland Rulings concerned a motion to compel arbitration of counterclaims and third-party claims asserting that Maslow, Reliability, Eberwein, Tsahalis, Speck, and Lone Star (i) made pre-Merger misrepresentations about Doki's and Valleru's ability to appoint members to Reliability's Board of Directors (Maryland Counterclaims and Third-Party Claims ¶¶ 58-80), and (ii) following the Merger, sought "to entrench Tsahalis and Speck as directors and officers of Reliability and Maslow" (*id.* at ¶¶ 119-120). In contrast, in the instant litigation Reliability brings a petition to compel arbitration to determine whether Doki, Valleru, and the other Defendants fraudulently induced the Merger and breached the Merger Agreement through

---

a "state-court loser," the second and third requirements of the *Rooker-Feldman* doctrine have not been met.

a series of misrepresentations largely related to Maslow's financial statements and off-balance sheet obligations. (Demand ¶¶ 29-45). As Reliability's injuries from this alleged conduct "existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings," the second element required for the application of the *Rooker-Feldman* doctrine is not present here. *See McKithen*, 481 F.3d at 98; *see also Almazon*, 2020 WL 1151313, at *7 (finding that claims were not barred by *Rooker-Feldman* where they alleged injuries caused by defendant's pre-judgment actions).

*Third*, Defendants submit that the Petition invites this Court to invalidate the Maryland Rulings. (Def. Br. 19). For similar reasons to those just discussed, the Court does not read the Petition to ask that it review and reject the findings of the Maryland state court. In the Maryland Action, Maslow sought to compel arbitration of counterclaims and third-party claims brought by a broader group of defendants and third-party plaintiffs — some of whom were not signatories to the Merger Agreement. In contrast, here Reliability seeks to arbitrate a distinct set of claims against individuals and entities who — it is undisputed — entered into, or otherwise joined, the Merger Agreement. (*See* Pet. ¶¶ 2-9; Kendall Decl. ¶¶ 25, 27). Reliability neither seeks to undue the Maryland Rulings nor "assign[s] error to the state court." *Almazon*, 2020 WL 1151313, at *7.

For these reasons, the *Rooker-Feldman* doctrine does not apply, and this Court retains subject matter jurisdiction over the Petition. *See Sykes* v. *Bank of Am.*, 723 F.3d 399, 403-04 (2d Cir. 2013) (concluding that plaintiff's

complaint did not fall within the scope of *Rooker-Feldman* where plaintiff "[did] not complain of injuries caused by a state court judgment, nor [did] he challenge the validity or enforcement of the … order itself").

## B.  Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(3)

### 1.  Applicable Law

The Court next addresses Defendants' arguments in favor of dismissal for improper venue.  "The decision whether to dismiss an action for improper venue is committed to the court's sound discretion."  *Assa Realty LLC* v. *Sol. Grp. Corp.*, No. 17 Civ. 177 (KBF), 2017 WL 2241524, at *1 (S.D.N.Y. May 22, 2017) (quoting *Blauschild* v. *Tudor*, 31 F. Supp. 3d 527, 530 (E.D.N.Y. 2014)); *accord Minnette* v. *Time Warner,* 997 F.2d 1023, 1026 (2d Cir. 1993).  When a motion to dismiss for improper venue is made pursuant to Rule 12(b)(3), the plaintiff has the burden of establishing venue.  *Person* v. *Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006).  However, "the Court accepts facts alleged in the complaint as true and draws all reasonable inferences in plaintiff's favor."  *Id.* (brackets removed) (quoting *Caremark Therapeutic Servs.* v. *Leavitt*, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2005)).  To defeat the motion, the plaintiff need only make a *prima facie* showing of venue.  *Gulf Ins. Co.* v. *Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) (citing *CutCo Indus.* v. *Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986)).

### 2.  Analysis

Although Defendants submit that the first-to-file rule provides a basis for dismissal of the Petition under Rule 12(b)(3), their arguments implicate broader

doctrines regarding federal courts' treatment of duplicative litigation.  (*See* Def. Br. 6-15).  The Court ultimately finds that neither the first-to-file rule nor these other doctrines bar Reliability from bringing the instant litigation.  For ease of analysis, the Court considers Defendants' arguments as they are presented, under the rubric of Rule 12(b)(3), while recognizing not all of their arguments, strictly speaking, are challenges to proper venue.  *See, e.g.*, *Perrigo Co.* v. *Merial Ltd.*, 215 F. Supp. 3d 1329, 1335 (N.D. Ga. 2016) (concluding that defendant's motion for transfer under § 1404(a) and seeking application of the "first-to-file" rule, was not a motion to dismiss for improper venue under Rule 12(b)(3)).[8]

---

[8]    At the outset, the Court briefly addresses Reliability's contention that Defendants waived the right to challenge venue.  Reliability asserts that the Merger Agreement bars any challenge to venue in this Court, as it provides that any in-scope action "may be instituted in the federal courts of the United States of America or the courts of the states of Texas, New York and Maryland."  (Pl. Opp. 19; Merger Agreement § 10.11(b)). In Reliability's view, Defendants consented to this Court's venue when they entered into the Merger Agreement, and cannot now assert a first-to-file or duplicative litigation challenge.  (Pl. Opp. 19).  The Court disagrees, given that the non-exclusive Arbitration Clause identifies both federal district courts and the state court of Maryland as possible venues for litigation.  *See Stone & Webster, Inc.* v. *Ga. Power Co.*, 965 F. Supp. 2d 56, 64 (D.D.C. 2013) ("[W]hile [the agreement] contains a permissive forum selection clause establishing this district as a proper forum, this is in no way dispositive of the first-to-file analysis, as it is by its terms *non-exclusive*." (emphasis in original)); *cf. Citicorp Leasing, Inc.* v. *United Am. Funding, Inc.*, No. 03 Civ. 1586 (WHP), 2004 WL 102761, at *6 (S.D.N.Y. Jan. 21, 2004) ("[S]ince [this] action was first-filed, and since the guarantees contain a permissive forum selection clause identifying New York as a possible venue, this factor weighs strongly against transfer.").

That said, while Defendants do not argue that Reliability has failed to plead venue in this District, but rather, focus their arguments on the first-to-file and duplicative litigation rules, in the interest of completeness, the Court finds that Reliability has made a *prima facie* showing of venue.  *First*, as noted above, the Merger Agreement contemplates the commencement of litigation "in the federal courts of the United States of America" as well as the state courts of New York and other states.  (Merger Agreement § 10.11(b)).  *Second*, the Merger Agreement's Arbitration Clause designates "New York, NY" as the venue for arbitration.  (*Id.* § 10.10(d)).  *See Drs. Assocs., Inc.* v. *Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) ("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction.").

### a.   The First-to-File Rule Is Inapplicable

The first-to-file rule provides that "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *D.H. Blair & Co.* v. *Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). The rule applies "where proceedings involving the same parties and issues are pending simultaneously in different federal courts." *Sotheby's, Inc.* v. *Minor,* No. 08 Civ. 7694 (BSJ), 2009 WL 73134, at *1 (S.D.N.Y. Jan. 6, 2009).

The Court rejects Defendants' argument that the Petition should be dismissed pursuant to the first-to-file rule, as the litigation in Maryland is proceeding in *state* rather than *federal* court. *See Lan Sang* v. *Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) ("The first-to-file doctrine applies where there is concurrent *federal* litigation, not where a federal court contends with concurrent state litigation." (quoting *Port Auth. of N.Y. & N.J.* v. *Kraft Power Corp.,* No. 11 Civ 5624 (HB), 2012 WL 832562, at *1 (S.D.N.Y. Mar. 13, 2012))); *Port Auth. of N.Y. & N.J.,* 2012 WL 832562, at *1 (collecting cases); *Radioactive, J.V.* v. *Manson,* 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001) ("The first-to-file doctrine applies to concurrent federal litigation — not concurrent state/federal litigation."). As "the weight of authority in this Circuit is that the first-filed rule only applies when a Court is faced with concurrent federal actions," the Court finds that the rule is not applicable here. *See*

*generally Sunwealth Global HK Ltd.* v. *Pinder Int'l, Inc.*, No. 20 Civ. 1436 (ER),

2021 WL 1145245, at *6 (S.D.N.Y. Mar. 23, 2021).[9]

### b. Neither the Duplicative Litigation Rule Nor *Colorado River* Abstention Requires Dismissal of the Petition

Defendants make the related argument that the Petition should be

dismissed as duplicative of the ongoing litigation in Maryland.  (Def. Br. 9-14).

In particular, Defendants maintain that the Petition violates the rule against

"claims-splitting" or duplicative litigation.  (Def. Reply 5-7).  However, like the

first-to-file rule, the rule against claims-splitting also applies only to duplicative

suits in federal court.  *See Curtis* v. *Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir.

2000) ("As part of its general power to administer its docket, a district court

may stay or dismiss a suit that is duplicative of another *federal* court suit."

(emphasis added)); *see also Colo. River Water Conservation Dist.* v. *United

States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, ... though

no precise rule has evolved, the general principle is to avoid duplicative

litigation.")

The Supreme Court has observed that "[g]enerally, as between state and

federal courts, the rule is that 'the pendency of an action in the state court is

no bar to proceedings concerning the same matter in the Federal court having

---

9       Defendants observe that there are two exceptions to the first-to-file rule: "[i] where the
        balance of convenience favors the second-filed action, and [ii] where special
        circumstances warrant giving priority to the second suit."  *Emps. Ins. of Wausau* v. *Fox
        Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (internal citations and quotation marks
        omitted).  As the first-to-file rule is inapplicable to this case, the Court need not address
        Defendants' arguments that the "balance of convenience" favors Maryland.  (*See* Def.
        Br. 9-15).

jurisdiction[.]" *Colo. River*, 424 U.S. at 817 (quoting *McClellan* v. *Carland*, 217 U.S. 268, 282 (1910)). That said, in *Colorado River* the Supreme Court established an exception to this rule for "exceptional" circumstances. *Id.* at 818. Under this exception, known as *Colorado River* abstention, district courts may abstain from the exercise of federal jurisdiction based upon "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817 (quoting *Kerotest Mfg. Co.* v. *C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)); *see also Woodford* v. *Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522-23 (2d Cir. 2001) (discussing the application of *Colorado River* abstention). Although Defendants do not address the requirements of *Colorado River* abstention in their briefing, the Court understands this exception to be the only potential basis for deeming the instant Petition duplicative, and will discuss its application here.

"An analysis of whether a court should abstain under *Colorado River* begins with a determination of whether the concurrent federal and state proceedings are 'parallel' in nature." *Fernandez* v. *City of New York*, No. 17 Civ. 2431 (GHW) (SN), 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing *Dittmer* v. *Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). If this threshold inquiry is met, courts then consider the following factors:

> [i] whether the controversy involves a *res* over which one of the courts has assumed jurisdiction; [ii] whether the federal forum is less inconvenient than the other for the parties; [iii] whether staying or dismissing the federal action will avoid piecemeal litigation; [iv] the order in

> which the actions were filed, and whether proceedings
> have advanced more in one forum than in the other;
> [v] whether federal law provides the rule of decision; and
> [vi] whether the state procedures are adequate to
> protect the plaintiff's federal rights.

*Woodford*, 239 F.3d at 522 (internal citations omitted) (citing *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 22-23, 25-27 (1983); *Colo. River*, 424 U.S. at 813, 817-18). In applying these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.* (alteration in *Woodford*) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16).

The Court finds that this action and the Maryland Action are *not* parallel for purposes of *Colorado River* abstention. Before concluding that federal and state proceedings are "parallel," courts must find that "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.* v. *Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Dittmer*, 146 F.3d at 118). "[P]arallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields* v. *Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (quoting *In re Comverse Tech., Inc. Derivative Litig.*, No. 06 Civ. 1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006) (emphasis in original)).

Here, the state court's adjudication of the claims at issue in the Maryland Action will not dispose of Reliability's claims in this case. In the Maryland Action, Maslow asserts claims related to breaches of the Notes, which agreements preceded the Merger Agreement at issue in this matter. (*See*

26

Maryland Complaint).  As summarized above, the Maryland Defendants and Third-Party Plaintiffs assert that Maslow, Reliability, and others participated in a scheme to maintain control over Reliability's Board of Directors, and made pre-Merger misrepresentations about Doki's and Valleru's ability to appoint members to Reliability's Board.  (*See* Maryland Counterclaims and Third-Party Claims).  In consequence, the Maryland Defendants and Third-Party Plaintiffs seek, *inter alia*, either the rescission of the Merger Agreement or its reformation to allow them to designate members of the Board of Directors.  (*Id.* at ¶ 236). In the instant action, by contrast, Reliability seeks damages and indemnification arising from Defendants' alleged misrepresentations primarily regarding Maslow's financial statements and off-balance sheet obligations. (*See* Demand ¶¶ 29-45).  It is evident that the Maryland state court's adjudication of the claims, counterclaims, and third-party claims before it will not resolve the instant Petition.  The ongoing Maryland Action "is not 'parallel' to this case simply because some of the parties are the same and the claims arise out of the same set of facts."  *Kirby McInerney LLP* v. *Lee Med., Inc.*, No. 17 Civ. 4760 (KBF), 2017 WL 4685101, at *3 (S.D.N.Y. Oct. 16, 2017) (deeming petition to compel arbitration not "parallel" to state litigation where the federal case involved "a different set of parties, a different set of issues, and different relief sought").[10]  As but one example, Reliability's claims that

---

[10]   While the Maryland Defendants and Third-Party Plaintiffs seek rescission of the Merger Agreement, and the Petition seeks indemnification under the Agreement, this overlap does not suffice to establish the proceedings as parallel.  *See Renaissance Fin. Sec. Corp.* v. *DHB Cap. Grp., Inc.*, No. 96 Civ. 8157 (RO), 1997 WL 777365, at *1-3 (S.D.N.Y. Dec. 17, 1997) (declining to abstain from exercising jurisdiction over plaintiff's claim

Defendants made pre-Merger misrepresentations regarding Maslow's capitalization will not be resolved by any determinations in the Maryland Action as to whether Reliability and the other Third-Party Defendants engaged in misconduct with respect to Reliability's and Maslow's corporate governance. In short, the claims at issue in the Maryland Action "in no way 'mirror[]'" the claims at issue in the instant litigation. *Dalzell Mgmt. Co.* v. *Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 598 (S.D.N.Y. 2013); *cf. Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28 (indicating that abstention is appropriate where "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties"). The Court thus finds that the federal and state proceedings are not parallel for the purposes of *Colorado River* abstention, and given Defendants' failure to satisfy this threshold issue, it will not proceed to consider the discretionary factors.

In sum, the Court finds that the first-to-file rule and duplicative litigation rule are inapplicable, and that Defendants have not demonstrated the "exceptional circumstances" necessary to warrant *Colorado River* abstention. Accordingly, the Court denies Defendants' Rule 12(b)(3) motion.

---

that it was induced to enter into agreement, where defendant sought rescission of agreement in state court suit); *see also Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 816 (1976) ("[T]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction."); *cf. Carter* v. *36 Hudson Assocs., LLC*, No. 09 Civ. 4328 (DLC), 2010 WL 2473834, at *5 (S.D.N.Y. June 17, 2010) ("The possibility of inconsistent rulings on the same indemnification agreements or underlying construction issues can be adequately addressed through application of claim preclusion principles. The burden that such secondary litigation imposes on the parties and either the federal or state court does not constitute an extraordinary circumstance warranting abstention.").

**C.     Defendants' Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

**1.     Applicable Law**

Lastly, the Court addresses Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  *Twombly*, 550 U.S. at 555.  The Court must accept as true all well-pleaded factual allegations in the complaint.  *See Iqbal*, 556 U.S. at 678.

In making Rule 12(b)(6) determinations, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference ... and documents possessed by or known to the plaintiff and upon which [it] relied in bringing the suit." *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *accord Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d

147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### 2.   Analysis

Defendants assert two bases for dismissal under this component of Rule 12: (i) the Petition is precluded by the Maryland Rulings (Def. Br. 15-17), and (ii) Reliability waived its right to arbitration through its participation in the Texas and Maryland Actions (*id.* at 19-23).  Both are unavailing.

### a.   The Petition Is Not Barred by Issue Preclusion

The Court will first address Defendants' arguments regarding issue preclusion, which arguments echo other proffered bases for dismissal discussed above.  The preclusive effect of a prior judgment is dictated by the doctrines of claim preclusion (sometimes referred to as *res judicata*) and issue preclusion (sometimes referred to as collateral estoppel).  *See Taylor* v. *Sturgell*, 553 U.S. 880, 892 (2008).  Courts in this Circuit apply the law of the jurisdiction in which the earlier action took place to determine whether the earlier action has preclusive effect on claims or issues.  *See Anderson News, L.L.C.* v. *Am. Media, Inc.*, 680 F.3d 162, 191 (2d Cir. 2012) ("[I]n order to determine the preclusive effect of a state-court decision, a federal court must look to the law of that state and should not give the state-court decision any greater preclusive effect than the courts of that state would give it[.]"); *see also Owens* v. *Treder*, 873 F.2d 604, 607 (2d Cir. 1989) ("The federal court must ... apply the collateral estoppel rules of the state which rendered the judgment.").

30

Thus, Maryland preclusion law determines whether the Maryland Rulings bar litigation of Reliability's Petition.[11]

Under Maryland law, collateral estoppel requires that "in a second suit *between the same parties*, even if the cause of action is different, any determination of fact that was actually litigated and was essential to a valid and final judgment [be] conclusive." *Standard Fire Ins. Co.* v. *Berrett*, 395 Md. 439, 456-57 (2006) (emphasis in original) (citations omitted). The Maryland Court of Appeals has approved the following four-part test for determining whether collateral estoppel applies where the parties in the two actions are not identical:

(i)    Was the issue decided in the prior adjudication identical with the one presented in the action in question?

(ii)   Was there a final judgment on the merits?

(iii)  Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

(iv)   Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Id.* at 458 (citations omitted). Reliability argues in particular that the issues decided in the Maryland Action are not identical to those presented by the instant Petition, and the Court agrees. (*See* Pl. Opp. 14-17).

---

[11]    Although Defendants' opening brief asserts that New York law on collateral estoppel applies (Def. Br. 15-17), their reply brief appears to concede that the Court should apply Maryland preclusion law (Def. Reply 8 (citing *LaFleur* v. *Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("A federal court must apply the collateral estoppel rules of the state that rendered a prior judgment on the same issues currently before the court[.]"))).

Defendants argue that the Maryland state court was asked to decide precisely the same issue now before the Court.  In their telling of events, "Reliability requested that the Maryland State Court determine the arbitrability of the Defendants' claims for declaratory relief and for relief based on allegations of fraud and breach of contract related to the Merger Agreement." (Def. Br. 16 (citing Maslow Motion to Compel)).  But this argument overlooks several key distinctions between the instant Petition and the motions that resulted in the Maryland Rulings.  *First*, at issue in the Maryland Action was the arbitrability of the counterclaims and third-party claims brought by a broader group of defendants and third-party plaintiffs.  (*See* Maslow Motion to Compel ¶ 10 (listing the parties to the case and identifying whether they are subject to the Merger Agreement's Arbitration Clause)).  In their opposition to Maslow's motion to compel arbitration, the Maryland Defendants and Third-Party Plaintiffs themselves observed that the Arbitration Clause was not applicable to a number of their constituents.  (Kendall Decl., Ex. N at 4).

*Second*, as the Court has discussed throughout this Opinion, the Maryland Rulings pertained to the arbitrability of claims arising from the conduct of Reliability, Maslow, and other individuals and entities who were not parties to the Merger Agreement.  (*See, e.g.*, Maryland Counterclaims and Third-Party Claims ¶¶ 58, 60-76 (discussing, *inter alia*, Speck's misrepresentations to the Defendants and Third-Party Plaintiffs)).  In particular, the claims pertained to Maslow and the Third-Party Defendants' pre-Merger representations as to the appointment of directors, and their post-

32

Merger conduct with respect to the Board.  (*See generally id.*).  Here, the Petition asks the Court to compel arbitration of claims arising largely from Defendants' pre-Merger representations as to Maslow's capitalization and off-balance sheet liabilities.  (*See* Demand ¶¶ 29-45).

Defendants correctly observe that the briefing submitted in opposition to Maslow's motion to compel arbitration made arguments similar to certain arguments made in the instant motion — namely, that Maslow and Reliability waived any right to arbitration by initiating the Maryland Action and the Texas Action, respectively.  (*Compare* Kendall Decl., Ex. N at 8, *with* Def. Br. 20-23). However, the Maryland Rulings did not address that argument.  Rather, the Circuit Court of Montgomery County merely "Ordered that the Petition is DENIED" (*see* Maryland Initial Denial), and subsequently issued a minute entry denying Maslow's motion for reconsideration (*see* Maryland Denial of Reconsideration).  On this record, the Court is unable to find that the "precise issue" raised by Reliability's Petition "was raised and resolved" in the Maryland Action.  *Batson* v. *Shiftlett*, 325 Md. 684, 706 (1992) ("If anything is left to conjecture as to what was necessarily decided there can be no collateral estoppel.").  For all of these reasons, the Court is unable to find that the Petition is barred under collateral estoppel.

### b.   Reliability Did Not Waive Any Right to Arbitration

Finally, the Court addresses Defendants' argument that Reliability waived any right it may have to arbitrate this dispute as a result of its conduct in the Maryland and Texas Actions.  In brief, Defendants assert that

Reliability's and Maslow's initiation of separate lawsuits in the state courts of Maryland and Texas, followed by Reliability's decision to enforce the Merger Agreement's Arbitration Clause three months later, resulted in the waiver of Reliability's right to arbitrate.  (Def. Br. 19-23).  Reliability rejoins that the Maryland and Texas Actions concern distinct and unrelated claims that did not fall within the scope of the Arbitration Clause, and that the Court should thus reject Defendants' waiver argument.  (Pl. Opp. 12-13).[12]

The Second Circuit has determined that "waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate," reasoning that "[f]inding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated *any* issue relating to the underlying contract containing the arbitration clause."  *Drs. Assocs., Inc.* v. *Distajo*, 107 F.3d 126, 133 (2d Cir. 1997); *see also Murray* v. *DCH Toyota City*, No. 20 Civ. 7383 (PMH), 2021 WL 1550074, at *4 (S.D.N.Y. Apr. 20, 2021) ("A party does not waive an arbitration clause … by its litigation of unrelated issues in a separate action.").  As the Court has found throughout this Opinion, Reliability has not previously litigated the fraud and breach of contract claims at issue here.  The differences between the claims at issue in the Maryland Action and the Petition have been discussed at some length.  In the Texas Action, Reliability, in

---

[12]   Reliability makes the additional argument that the parties are bound to arbitrate under the Merger Agreement.  (Pl. Opp. 10-12).  The Court need not resolve this argument on Defendants' motion to dismiss, but will consider it should Defendants raise such a challenge regarding Reliability's Petition.

conjunction with Tsahalis and Speck, sought to enjoin Defendants and other shareholders from calling a special shareholder meeting and replacing Reliability's Board of Directors.  (*See generally* Kendall Decl., Ex. Q).[13]  In contrast, Reliability's claims here arise primarily from Defendants' representations made prior to the consummation of the Merger regarding Maslow's capitalization and off-balance sheet liabilities.  *Cf. Gidatex, S.r.L.* v. *Campaniello Imports, Ltd.*, 13 F. Supp. 2d 420, 428 (S.D.N.Y. 1998) (finding arbitrable claims distinct from claims asserted in court where the former involved one party's conduct "prior to the termination" of the contractual relationship, and the latter "concern[ed] the parties' conduct after their contractual relationship had ended").  To the extent the claims at issue in the Maryland and Texas Actions stem from the Merger and its subsequent fallout, that is not a sufficient basis for finding that Reliability waived any right to pursue the instant Petition.  *See Murray*, 2021 WL 1550074, at *4 ("Though the transaction underlying both this action and the State Court Action are the same, they are simply not the same dispute and do not embrace the same or even similar legal issues.").  Accordingly, Reliability has not waived any right to arbitrate the claims asserted in its Petition.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is DENIED.  The Clerk of Court is directed to terminate the motion at docket

---

[13]     As noted in Maslow's Motion to Compel in the Maryland Action, Speck is not bound by the Merger Agreement.  (Maslow Motion to Compel ¶ 10).

entry 13.  The parties are directed to submit a joint letter regarding their

proposed next steps in this matter on or before August 25, 2021.

       SO ORDERED.

Dated:      August 4, 2021
           New York, New York

                                  KATHERINE POLK FAILLA
                              United States District Judge